ISSUED TO ATTORNEY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

**FILED**

2005 OCT 12 PM 3: 30

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO

HOWARD FRANK, Individually and On
Behalf Of All Others Similarly Situated,

Plaintiff,

vs.

DANA CORPORATION, MICHAEL J. BURNS
AND ROBERT C. RICHTER,

Defendants.

Civil Action No. TOLEDO

**3:05CV7393**

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL
SECURITIES LAWS

**JURY TRIAL DEMANDED**

**JUDGE JAMES G. CARR**

Plaintiff Howard Frank ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of defendant Dana Corporation ("Dana" or the "Company") public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Dana. and advisories about the Company, and information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.    This is a federal class action on behalf of all persons and entities who purchased or otherwise acquired the securities of Dana between March 23, 2005 and September 14, 2005, inclusive (the "Class Period"), and who were damaged thereby,

1

seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20A of the Exchange Act, (15 U.S.C. §§78j(b), 78t(a) and 78t-1(a), and Rule 10b-5 promulgated thereunder(17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in a substantial part in this Judicial District. Additionally, the Company maintains its principal executive office in this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff Howard Frank, as set forth in the accompanying certification, incorporated by reference herein, purchased Dana common stock during the Class Period at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Dana designs and manufactures products for every major vehicle producer in the world. Dana is a partner to automotive, commercial, and off-highway vehicle customers, which collectively produce more than 60 million vehicles

2

annually. A leading supplier of axle, driveshaft, engine, frame, chassis, and transmission technologies, Dana employs 46,000 people in 28 countries. Dana is located in Toledo, Ohio.

8. Defendant Michael J. Burns ("Burns") served as Dana's Chief Executive Officers and Chairman of the Board at all times relevant during the Class Period.

9. Defendant Robert C. Richter served as Dana's Chief Financial Officer at all times relevant during the Class Period.

10. Defendants Burns and Richter are collectively referred to hereinafter as the "Individual Defendants." During the Class Period, each of the Individual Defendants, as the top senior executive officers and/or directors of Dana were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the investing public.

11. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Dana, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly

3

involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein and were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

12.     As officers and controlling persons of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and was traded on the NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, or to refrain from trading based on inside information with respect thereto. Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.     The other Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the

4

misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Dana, each of the Individual Defendants had access to the adverse undisclosed information about Dana's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Dana and its business issued or adopted by the Company materially false and misleading.

14.     Each of the defendants is liable as a participant in a course of business that operated as a fraud or deceit on purchasers of Dana securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Dana's business, operations, management and the intrinsic value of Dana's securities; and (ii) caused Plaintiff and other members of the Class to purchase Dana securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Dana between March 23, 2005 and September 14, 2005, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Dana common shares were actively traded

5

on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Dana or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented or omitted material facts about the business, operations and management of Dana; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

6

Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS WERE ISSUED BY DEFENDANTS

21.     On March 23, 2005, Dana announced that it has revised its first-quarter

2005) earnings outlook to a range of 11 to 13 cents per share, from its previously

announced range of 17 to 23 cents per share.

22.     In this same March 23, 2005 press release Dana's Chairman and CEO

Michael J. Burns said the reduction is primarily attributable to three factors:

Higher-than-expected material costs, including the effect of the increased cost of steel to Dana's suppliers and other factors;

A current component shortage from a principal supplier that has resulted in reduced shipments of heavy-duty axles; and

Lower-than-expected North American light-vehicle production rates on key platforms

-

Mr. Burns added, "We are hopeful that we will see less pressure on material price increases during the balance of the year, but we can't count on this. We are accelerating our cost-reduction efforts to pull forward savings to offset the potential impact of continued pressure on material costs. Regarding the component shortage that has reduced heavy-duty axle shipments, we are working closely with the supplier to resolve the situation and are confident that we will see a substantial improvement in the second quarter. However, given the uncertain outlook for the light-vehicle industry in general, as well as on commodity prices, we feel it is prudent to lower our 2005 full-year guidance to $1.30 to $1.45 per share, from our previous guidance of $1.40 to $1.62 per share."

23.     On April 20, 2005, Dana announced its 2005 first-quarter sales were

$2.5 billion, compared to $2.3 billion during the same period last year. Net income for

the quarter totaled $18 million, or 12 cents per share, versus $65 million, or 43 cents per

share, for the period in 2004. The press release stated in relevant part as follows:

7

First-quarter 2004 net income included $13 million from the discontinued automotive aftermarket businesses that were sold in November, 2004. Additionally, first-quarter 2004 net income included $2 million of unusual net gains from the sale of Dana Credit Corporation assets, while unusual transactions in the first quarter of 2005 did not have a significant impact on net income.

Dana Chairman and CEO Mike Burns said 2005 first-quarter earnings were impacted by several external factors. "The single greatest factor impacting our earnings was roughly $32 million in additional steel costs that we incurred compared to the first quarter of 2004," he said. "This is an after-tax number and is net of what we've recovered from our customers.

"In addition, this year's results were affected by a component shortage from a principal supplier, which resulted in reduced shipments of heavy-duty axles in March," Mr. Burns said. "The component shortage also affected the operating efficiency in our Heavy Vehicle group and led to significantly higher levels of inventory on other related components.

"Finally, the performance of our Automotive Systems Group was impacted by lower production on many of our key light vehicle platforms in North America. "Against this challenging backdrop, we are stepping up our focus on those items within our control," Mr. Burns said. "This means accelerating our cost-reduction actions to deliver savings to the bottom line, despite external challenges. We are also working hard to grow our top line. During the quarter, we were awarded net new business that will add approximately $60 million to full-year 2005 sales."

\* \* \*

Outlook

Commenting on the company's near-term outlook, Mr. Burns said, "Our full-year guidance remains $1.30 to $1.45 per share."

He continued, "As we put the recent component shortage behind us, and address other operational issues that have held back margin expansion in the Heavy Vehicle group over the past two quarters, we expect to more fully benefit over the remainder of the year from the strong demand anticipated in the North American commercial vehicle market.

"In the case of the Automotive Systems Group, the dominant issue has been the effect of higher steel prices," Mr. Burns added. "The good news is that the market price for raw steel has decreased in recent months and demand appears to be moderating. Although the price we pay for forgings and other parts with high steel content has been slow to follow the decrease for a variety of reasons, we remain hopeful that we'll see less pressure on steel and other material price increases during the balance of

8

the year. Therefore, if light-duty production schedules for the balance of the year do not change significantly, we expect that our accelerated cost reduction efforts will lead to improved performance in this group as well."

24.     On May 5, 2005, Dana filed with the SEC its quarterly report for the second quarter ended March 31, 2005. The Form 10-Q reiterated the financial results previously announced on April 20, 2005. The Company's Form 10-Q was signed and certified pursuant to Sarbanes Oxley by defendants Richter and Burns. Sarbanes-Oxley Act of 2002 required a statement affirming review thereof, as well as confirmation that they had evaluated Dana's disclosure controls are procedures and that they were designed and utilized to ensure the disclosure of material information relating to Dana

25.     On July 17, 2005, Prudential Equity Group, LLC issued a report entitled: "Increased Confidence In Our Outlook After Meeting with Dana's Management". The report stated: "After meeting with Dana's management this week, our confidence is increased in the positive changes enacted by the new CEA (now in his second year) and in our outlook for 2006 earnings."

26.

27.

28.

29.

30.     On July 20, 2005, Dana issued a press release announcing its financial result for the second quarter ended June 30, 2005. The press release started by touting that the second quarter results "showed significant improvement over results for the first three months of the year." The press release further reported in relevant part as follows: Sales of $2.6 billion were up 6 percent from the first quarter of 2005;

> The addition of $215 million in net new business for the years 2005 to 2007 raised total net new business for this period to $1.3 billion;

9

Higher sales and cost savings drove operating profit improvements of 53 percent in the Automotive Systems Group and 48 percent in the Heavy Vehicle Technologies and Systems Group; and

Net income, exclusive of unusual items, increased to $53 million, or 35 cents per share, compared to $18 million, or 12 cents per share, during the first three months of 2005. Unusual items in the second quarter included a net charge of $5 million related to enactment of new Ohio tax legislation and a $3 million net gain from the sale of certain Dana Credit Corporation (DCC) assets. With these unusual items, net income totaled $51 million, or 34 cents per share.

In the face of continuing industry-wide challenges, Dana people have made significant progress in strengthening our company," said Dana Chairman and CEO Mike Burns. "Specifically, our lean manufacturing and value engineering programs are delivering tangible results as evidenced by the substantial profit improvement from last quarter.

"Our cost reduction and efficiency programs are essential. But equally important to achieving our goals is our aggressive pursuit of steady top-line growth," Mr. Burns said. "To this end, we are extremely pleased to report that we have added another $215 million in the second quarter to our increasingly strong -- and diverse -- book of new business."

Second-Quarter Results

Second-quarter sales in 2005 were $2.6 billion, compared to $2.3 billion during the same period last year. Earnings from continuing operations for the quarter, excluding unusual items, totaled $53 million, or 35 cents per share, compared to $59 million, or 39 cents per share, on a similar basis during the second quarter of 2004.

Net unusual charges for the second quarter of 2005 totaled $2 million. This amount included a net charge of $5 million resulting from a change in the basis of Ohio corporate taxation enacted on June 30. The accounting treatment of this change impacted the company's deferred tax assets. This charge was partially offset by a $3 million gain from the company's ongoing divestiture of DCC leasing assets.

The second quarter of 2004 included net unusual gains of $33 million associated with the sale of DCC assets and a tax benefit that we expected to realize on the sale of the automotive aftermarket operations that was completed in November 2004. Reported second-quarter 2004 net income, including net unusual gains, totaled $110 million, or 73 cents per share.

Business Unit Performance

10

The Heavy Vehicle Technologies and Systems Group continued to benefit from the strong commercial and off-highway markets. Its sales grew by 21 percent in the second quarter compared to the same period last year. Currency translation added $11 million to the group's sales for the second quarter of 2005. Automotive Systems Group sales for the second quarter of 2005 were up 10 percent versus the same period last year, with currency translation contributing $62 million.

Heavy Vehicle profits were up 19 percent compared to the second quarter of 2004, while Automotive Systems profits were down 15 percent over the same period. Second-quarter profits - particularly those of the Automotive Systems Group - were negatively impacted by approximately $27 million, after tax and net of customer recoveries, in additional steel costs Dana incurred compared to the second quarter of 2004. Additionally, 2005 profit after tax for the Heavy Vehicle group was favorably impacted by $4 million related to a decrease in the group's liability for warranty to reflect lower average claims costs.

2005 First-Half Results

Dana's six-month consolidated sales for 2005 were $5.1 billion. Income from continuing operations for the first half of 2005, excluding unusual items, was $71 million, or 47 cents per share. Including a net charge of $2 million for unusual items, net income for the six months was $69 million, or 46 cents per share.

In comparison, Dana's six-month consolidated sales for the first half of 2004 totaled $4.6 billion and income from continuing operations, excluding unusual items, was $109 million, or 72 cents per share. In this period, Dana reported income from discontinued operations of $48 million, or 32 cents per share, representing the automotive aftermarket businesses divested in November 2004. The $48 million included a $20 million tax benefit expected to be realized on the divestiture and a $3 million charge for divestiture-related expenses. Also during the first half of 2004, the company reported gains on the sale of DCC assets totaling $18 million. Including unusual items, net income for the first half of 2004 was $175 million.

Looking Ahead

"We are encouraged by the profit improvement we've achieved since last quarter," Mr. Burns said. "And we believe there is considerable opportunity to achieve additional cost savings and process efficiencies as our efforts gain more momentum.

"Production schedules for North American heavy trucks continue to be stronger than expected and, as a result, we are raising our estimate for full-year 2005 production to 310,000 units from 293,000 units. The off-

highway market segments we serve are also expected to remain strong for the rest of the year," he said. "We're also expecting to benefit from subsiding steel costs, which will be particularly important to the Automotive Systems Group.

"However," Mr. Burns continued, "given the uncertainty surrounding North American light vehicle production in the second half of the year, we are lowering our 2005 production forecast to 15.5 million units from 15.7 million units. We are also concerned about the possible impact on sales if the dollar continues to gain strength. As a result, our earnings expectations for the full year remain unchanged at a range of $1.30 to $1.45 per share."

31. On July 29, 2005, Dana filed with the SEC its quarterly report for the second quarter ended June 30, 2005. The Form 10-Q reiterated the financial results previously announced on July 20, 2005. The Company's Form 10-Q was signed and certified pursuant to Sarbanes Oxley by defendants Richter and Burns. Sarbanes-Oxley Act of 2002 required a statement affirming review thereof, as well as confirmation that they had evaluated Dana's disclosure controls are procedures and that they were designed and utilized to ensure the disclosure of material information relating to Dana.

32. On September 15, 2005 Dana announced that it has revised its 2005 full-year earnings outlook to a range of $90 million to $105 million, or approximately 60 to 70 cents per share, from its previously announced range of $196 million to $219 million, or $1.30 to $1.45 per share and would likely restate its second quarter 2005 financial results. The press release reported in relevant part the following:

The company is assessing whether, as the result of the change in earnings outlook, it will be required to write down its U.S. deferred tax assets. A write-down of U.S. deferred tax assets and the consequent inability to record similar tax benefits in the future would not have a cash impact, but would have a direct negative impact on the revised 2005 full-year earnings outlook set forth above. At June 30, the company's U.S. deferred tax assets totaled approximately $740 million. The revised outlook includes approximately $60 million of tax benefits on domestic losses in the second half.

Dana Chairman and CEO Michael J. Burns said that this reduction reflects a reassessment of the company's full-year outlook after reviewing its

12

preliminary results through the end of August. These results indicate that the company is being negatively impacted by continued higher-than-expected costs for steel and other materials, as well as increased energy costs. In addition, the company's Commercial Vehicle business has been unable to achieve projected cost reductions and is experiencing significant manufacturing inefficiencies. For these reasons, the company now expects that the Commercial Vehicle unit's performance in the balance of the year will be substantially below previous projections. Although less significant, results in the company's Automotive Systems business have been impacted by lower-than- anticipated light-vehicle production volumes on vehicles with significant Dana content.

"We are considering a number of significant measures, both operational and strategic, to improve our financial performance," Mr. Burns said. "We are acting swiftly and will make further announcements regarding our plans as soon as appropriate."

The company is also assessing the impact of the reduced earnings outlook on its ability to comply with certain covenants contained in its five-year bank facility and is initiating conversations with its banks in this regard.

Company Likely to Restate Second-Quarter 2005 Financial Statements

Dana also announced that it will likely restate its second-quarter 2005 financial statements, primarily to correct inappropriate recognition of price increases in its Commercial Vehicle business during the second quarter.

Based on a preliminary internal review, the company believes that the potential restatement could result in an after-tax reduction of approximately $10 million to $15 million in second-quarter income. The actual amount is subject to the completion of the review process. The company's independent registered public accounting firm has been advised of the company's preliminary findings to date and is also reviewing the situation.

33.     In reaction to this announcement, the price of Dana stock fell dramatically,

from $12.78 to $9.86.

34.     On September 16, 2005, a Morgan Stanley Equity Research report stated

"Despite the incredibly favoravle commercial and off-highway market conditions, Dana

is set to fall well short of the '$2.00 –plus earnings' per share goal that was promised at

the time ArvinMeritor's $18 per share bid was turned down. Adverse conditions in the

13

1

light vehicle business are certainly responsible in part. However, we are increasingly inclined to believe that Dana's guidance setting exercise has simply been too aggressive."

35. The statements relating to the Company's financial condition set forth above were materially false and misleading when made, in violation of Section 10(b) and Rule 10b-5, because by the beginning of the Class Period, Dana's profits were being negatively impacted by an increase in the price of raw materials – steel, in particular. In order to assure the market that the Company's business was performing according to plan, and would continue to perform well even if steel prices did not decline materially, defendants artificially inflated Dana's net income through improper accounting and, in addition, issued earnings guidance that lacked any reasonable basis given the Company's true performance and prospects, which were known to defendants but not the investing public.

36. The market for Dana's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Dana's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Dana securities relying upon the integrity of the market price of Dana's securities and market information relating to Dana, and have been damaged thereby.

37. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Dana 's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material

14

adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately the damages sustained by Plaintiff and other members of the Class which resulted from their purchases of Dana stock at artificially inflated prices during the Class Period.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

39.     At all relevant times, the market for Dana securities was an efficient market for the following reasons, among others:

(a)     Dana stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Dana filed periodic public reports with the SEC and the NYSE;

(c)     Dana regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Dana was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40.     As a result of the foregoing, the market for Dana securities promptly digested current information regarding Dana from all publicly available sources and

15

reflected such information in Dana stock price. Under these circumstances, all purchasers of Dana securities during the Class Period suffered similar injury through their purchase of Dana securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Dana who knew that those statements were false when made.

## FIRST CLAIM

Violation Of Section 10(b) of
The Exchange Act Against And Rule 10b-5
Promulgated Thereunder Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the

16

investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Dana securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

44. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Dana securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Dana as specified herein.

46. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Dana value and performance and continued substantial growth, which included the making of, or the participation in the making of untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Dana and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in

17

transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Dana securities during the Class Period.

47. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

48. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Dana operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations

18

and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Dana securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Dana publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Dana securities during the Class Period at artificially high prices and were damaged thereby.

50.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Dana was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Dana securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

19

52. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Dana within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

20

56.     As set forth above, Dana and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(A)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(B)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C)    Awarding Plaintiff and the Class their reasonable costs and

expenses incurred in this action, including counsel fees and expert fees; and

Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 7, 2005

MAGUIRE & SCHNEIDER, LLP

By
~~Keith Schneider, Esquire~~
250 Civic Center Drive
Suite 500
Columbus, Ohio 43215
(614) 224-1222
Trial Attorneys for Plaintiffs

**OF COUNSEL:**

Mark C. Gardy, Esq
Nancy Kaboolian
ABBEY GARDY, LLP
212 East 39th Street
New York, New York 10016
(212) 889-3700
Attorneys for Plaintiff

22