IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Howard Frank, Individually and On  Case No. 3:05cv07393
    Behalf of All Others Similarly Situated,

        Plaintiff,

vs.  ORDER

Dana Corporation, *et al.*,

        Defendants.

    This is a federal class action against Michael Burns, the former CEO, and Robert Richter, the former CFO of Dana Corporation, a Toledo, Ohio, supplier of automobile components. Plaintiffs allege that the individual defendants deceived the investing public about Dana's business operations, management, and the intrinsic value of Dana's securities. Plaintiffs further allege this deceit caused Howard Frank, the named plaintiff, and others similarly situated to purchase Dana securities at artificially inflated prices. Plaintiffs charge the individual defendants with being aware of errors in and fraudulently falsifying Dana's financial results.

    The defendants have filed a motion to dismiss. Pursuant to the Private Securities Litigation Reform Act [PSLRA], 15 U.S.C. § 78u-4(b)(3)(B), discovery is stayed automatically during the pendency of a motion to dismiss, except "to prevent undue prejudice" to the party seeking discovery.

    Pending is plaintiffs' motion to vacate the default PSLRA stay of discovery. The plaintiffs seek to obtain documents that Dana has turned over to the Securities and Exchange Commission [SEC] in response to a request by the SEC for such documents.

    For the reasons that follow, the motion to vacate the stay of discovery shall be denied.

**Background**

Plaintiffs bring this case on behalf of all persons and entities purchasing securities of Dana between April 21, 2004, and September 14, 2005 (the "Class Period").

On September 15, 2005, defendants Burns and Richter announced that Dana would revise its 2005 full year earnings outlook. Three weeks later, on October 10, 2005, Burns and Richter announced they were retracting their FY05 EPS guidance, eliminating nearly $1 billion of Dana's deferred tax assets, and restating the Company's financial statements for FY04 and the first two quarters of FY05 due to "material weaknesses in Dana's internal controls over financial reporting." Dana's previously reported assets and earnings had been overstated by $920 million, or 70%, during the Class Period.

Plaintiff Frank filed this case on October 15, 2005. This and subsequent complaints were consolidated on January 18, 2006.[1] By that point, defendants had announced Dana's Third Quarter FY05 results, reporting a net loss of $1.27 billion. Not long after, on March 3, 2006, Dana filed for bankruptcy. Three days later, Richter announced his retirement, and Burns received an incentive bonus payment for seeing the Company through bankruptcy.

Meanwhile, on February 1, 2006, Dana disclosed that the SEC had commenced a formal investigation into its accounting practices. Plaintiffs now request that the documents made available to the SEC also be made available to plaintiffs in the present case.

**Discussion**

**I. PSLRA Stay of Discovery: Statutory History**

---

[1] Plaintiffs filed the present Consolidated Class Action Complaint on August 15, 2006.

2

The legislative history of the automatic stay of discovery mandated by § 78u-4(b)(3)(B) of the PSLRA indicates that, by enacting the discovery stay, Congress intended to discourage plaintiffs from filing securities class actions for the purpose of causing corporate defendants to settle their claims, regardless of their apparent or actual merit, rather than bear the costs of discovery. *See, e.g.,* H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736.  As Congress explained:

> The cost of discovery often forces innocent parties to settle frivolous securities actions. According to the general counsel of an investment bank, "discovery costs account for roughly 80% of total litigation costs in securities fraud cases." In addition, the threat that the time of key employees will be spent responding to discovery requests, including providing deposition testimony, often forces coercive settlements.

*Id*.

Congress also wanted to keep plaintiffs from using discovery to determine whether they could plead viable claims, where otherwise, without discovery, a complaint as filed would be vulnerable to a motion to dismiss. *See* S.Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693.

Congress did, however, provide discovery could occur, where particularized discovery was necessary either to: 1) preserve evidence or 2) prevent undue prejudice to the moving party. 15 U.S.C. § 78u-4(b)(3)(B).

## II. Particularity of Request

Defendants allege that plaintiffs' discovery request is not sufficiently "particularized" to justify lifting the stay. I disagree. Plaintiffs' request is limited to documents already assembled and produced for the SEC in its investigation of the same events that give rise to this lawsuit. *See In re Worldcom, Inc. Sec. Litig.*, 234 F.Supp.2d 301, 306 (S.D.N.Y. 2002) ("defendants cannot call upon

the ambiguous notion of 'particularized' discovery to bend Section 78u-4(b)(3)(B) to a purpose for which it was not intended.").

Plaintiff's request is for a "clearly defined universe of documents"; namely, those previously given to the SEC surrounding a similar information request. *Id*. A request for documents previously produced in connection with related investigations is particularized under the PSLRA. *In re Delphi Corp. Sec., Derivative, & ERISA Litig.,* 2007 WL 518626, *5 (E.D. Mich.) ("Lead Plaintiffs have adequately specified the target of the requested discovery: They only request the production of materials that have already been assembled and produced to Delphi's internal investigators and the federal authorities."); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) ("The Lead Plaintiff's request is limited to the closed universe of materials that FirstEnergy has already produced for government investigators and the federal grand jury."). Therefore, plaintiffs' request for the documents provided to the SEC is sufficiently particularized to allow a lift of the PSLRA stay of discovery.

### III. Discovery is Not Necessary to Prevent Undue Prejudice

Plaintiffs allege that lifting the stay of discovery is both permitted and mandated by § 78u-4(b)(3)(B), which expressly authorizes discovery to "prevent undue prejudice," even when a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is pending.

As a general rule, discovery is not allowed during the pendency of a motion to dismiss because the purpose of such motion "is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). The PSLRA alters the conventional approach under Rule 12 by allowing

discovery under exceptional circumstances: namely, where *undue* prejudice would result if discovery were not allowed. 15 U.S.C. s. 78u-4(b)(3)(B).

Although the PSLRA alters somewhat the conventional approach under Rule 12(b), it does so in a restrictive, rather than an open-ended manner. That discovery is not to be granted freely under the PSLRA, even though it may be allowed in some instances where it otherwise might not be permitted, does not mean that the policy against discovery during the pendency of a motion to dismiss is to be ignored or disregarded.

This is particularly so in light of the general history and purpose of the PSLRA. The statute was enacted expressly to curb the use of threats of extensive and expensive discovery by class-action plaintiffs. *See, e.g., Statement of Managers - The "Private Securities Litigation Reform Act of 1995,"* 141 Cong.Rec. H13699, H13701 (daily ed. Nov. 28, 1995); H.Rep. 104-369, 104th Cong. 1st Sess. at 59 [*Statement of Managers*]. It was intended to cure, not to create abuses, especially with regard to discovery.

Thus, the touchstone is not whether denying discovery creates a risk of prejudice, but rather whether such prejudice is "undue." This, the legislative history indicates, requires a showing of "exceptional circumstances." *Statement of Managers*, at 63.

"'[U]ndue prejudice' means improper or unfair detriment." *Medical Imaging Ctrs. of America, Inc. v. Lichtenstein*, 917 F.Supp. 717, 720 (S.D. Cal. 1996). It is "prejudice that is improper or unfair under the circumstances." *In re CFS-Related Sec. Fraud Litig.*, 179 F.Supp.2d 1260, 1265 (N.D. Okla. 2001).

The Ninth Circuit expressly rejected the contention [and ruling by the trial court in *In re Rational Software Sec. Litig.*, 28 F.Supp.2d 562, 567 (N.D. Cal. 1998)] that undue prejudice results

5

under the PSLRA where a plaintiff was alleging fraud and facts relating to the alleged fraudulent acts were beyond his ken. *SG Cowen Sec. Corp. v. United States Dist. Court*, 189 F.3d 909, 913 (9th Cir. 1999). "[A]s a matter of law," the court stated, "failure to muster facts sufficient to meet the Act's pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay under § 78u-4(b)(3)(B)." *Id.* "To so hold," the court concluded, "would contravene the purpose of the Act's heightened pleading standards." *Id*.

Other courts have likewise held that the PSLRA precludes discovery intended to remedy the defects of a complaint being challenged in a motion to dismiss. *See In re CFS-Related Sec. Fraud Litig.*, 179 F.Supp.2d 1260, 1266 (N.D. Okla. 2001) ("a plaintiff cannot seek a lifting of the PSLRA's discovery stay to obtain evidence to bolster its securities fraud allegations"); *In re Odyssey Healthcare Inc. Sec. Litig.*, 2005 WL 1539229, at *2 (N.D. Tex.) ("Because the exception [to the discovery stay] only covers 'undue' prejudice, this harm cannot consist of disadvantage that is inherent in the stay itself, such as the possibility of dismissal when an amended complaint based on newly discovered facts might have survived."); *Sarantakis v. Gruttaduria*, 2002 WL 1803750, *1 (N.D.Ill.) (automatic stay designed "to avoid the situation in which a plaintiff sues without possessing the requisite information to satisfy the PSLRA's heightened pleading requirements, then uses discovery to acquire that information and resuscitate a complaint that would otherwise be dismissed."); *accord*, *Cremeen v. Schaefer*, 2005 WL 4703651, *1 (D. Kan.).

Balanced against this contention is whether withholding discovery would enable the defendants to be "unfairly shielded from liability." *In re Fannie Mae Sec. Litig.*, 362 F.Supp.2d 37, 39 (D.D.C. 2005); *accord, Vacold LLC v. Cerami*, 2001 WL 167704, *7 (S.D.N.Y.) (whether discovery would "unfairly insulate defendants from liability for securities fraud"). It would appear

that *some* discovery is allowed under the PSLRA precisely because of the problems inherent in alleging fraud with the requisite degree of particularity required generally by Fed. R. Civ. P. 9(b) and the heightened pleading standard of § 10(b) of the PSLRA in particular. Thus, relaxation of the strictures on discovery otherwise appertaining to motions to dismiss is both permitted and understandable.

The focus remains, however, on whether there is an "unfair" risk the culpable defendants will evade liability. Such might be the case where plaintiffs alleged that the defendants have affirmatively concealed a determinative fact, as in *Vacold*, 2001 WL at *7 (plaintiffs sought only to learn when defendants expressed an interest in and agreed to invest in two companies). Such might also be the case where the discovery sought is of a third party, rather than of the defendants, the intended beneficiaries of the discovery stay under the PSLRA, and there is extrinsic corroboration in the record of the alleged fraud, as in *In re Flir Systems, Inc. Sec. Litig.*, 2000 WL 33201904, *2 (D. Or.).

The plaintiffs' strongest argument in favor of the discovery they seek is that what they want is readily available and has already been provided to the SEC, and its production entails no further intrusion into the affairs or time of the company or defendants. Other courts have upheld discovery of documents submitted in response to SEC requests. *In re LaBranche Sec. Litig.*, 333 F.Supp.2d 178, 183 (S.D.N.Y. 2004); *In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301 (S.D.N.Y. 2002). Those cases involved, however, circumstances in which settlement negotiations either were underway, *WorldCom*, 234 F. Supp.2d at 305, or the defendants had already made settlement payments. *LaBranche*, 333 F. Supp.2d at 183.

Discovery of documents produced to governmental agencies or in other litigation involving the same defendants has likewise been allowed where failure to level the field would adversely affect the PSLRA plaintiffs' ability to recover, given the numbers and claims of other litigants with cases against the same defendants. *See In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 2007 WL 518626, *7 (E.D. Mich.) (stay lifted "'to prevent the securities plaintiffs from being left with nothing if their litigation did not keep pace with the bankruptcy and other proceedings.'") (citing *Singer v. Nicor, Inc.*, 2003 WL 22013905, *2 (N.D. Ill.)); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 252 (D. Md. 2004).

Where there has been no risk that PSLRA plaintiffs will be frozen out of discovery negotiations, and the case is otherwise "garden variety," discovery of documents provided to the SEC has generally not been allowed. The decision in *Ross v. Abercrombie & Fitch,* 2006 WL 2869588, *3 (S.D. Ohio), exemplifies this view:

> [T]his appears to the Court to be a "garden variety" case where the only thing which has happened, apart from ordinary litigation activities, is that the SEC has opened a formal investigation and requested that documents be produced to it . . . that is simply not the type of circumstance leading to undue prejudice to the plaintiffs.

That appears to be the situation here.

The prejudice faced by the plaintiffs in this case is the same as that faced by every plaintiff in any case in which discovery would or might strengthen the factual allegations of a complaint and enhance the likelihood of surviving a motion to dismiss. Indeed, that probably is the situation in many, if not most of the commonplace cases in which a defendant seeks dismissal on the basis of the insufficiency of the factual allegations in a complaint. The prejudice that will result is not, in these circumstances undue.

As I understand the interplay between the conventional "no discovery" approach under Rule 12(b) and the "undue prejudice" standard for lifting a discovery stay under the PSLRA, plaintiffs here have to show some unusual, remarkable, or peculiar prejudice, as distinct from the ordinary risk of dismissal if they must stand on the allegations of their complaint alone.

On the record before me, I perceive no such extraordinary prejudice from refusing to permit access to those documents. This is so, even if I presume, as I do, that there might be something in those documents that could help fill in the alleged or actual gaps in the factual allegations of plaintiff's complaint.

## Conclusion

Ultimately, the discovery sought here would contravene the purpose of the PSLRA to limit discovery pending a motion to dismiss, as well as the customary restrictions on discovery pending adjudication of a Rule 12(b)(6) motion to dismiss. It is, therefore,

ORDERED THAT plaintiffs' motion to lift the PSLRA stay of discovery be, and the same hereby is denied.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge