IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Howard Frank, Individually and On                  3:05CV7393
       Behalf of All Others Similarly Situated,

       Plaintiff,

v.                                                                       ORDER

Dana Corporation, *et al.*,

       Defendants.

       This is a federal class action brought on behalf of all persons and entities that purchased securities of Dana between April 21, 2004, and October 7, 2005 (the "Class period"). Defendants are the current Chief Executive Officer (CEO), Michael Burns, and the former Chief Financial Officer (CFO), Robert Richter, of Dana Corporation, an automotive parts manufacturer. Plaintiff Frank alleges that Burns and Richter were aware of, and involved in fraud at Dana including filing by Dana of false Securities and Exchange Commission (SEC) filings and the issuance of misleading press releases and conference calls with analysts and false signed certificates pursuant to § 302 of the Sarbanes-Oxley Act of 2002. 15 U.S.C. § 7241. Plaintiff alleges Burns and Richter caused Dana to use a variety of accounting manipulations to falsify its financial results, harming Frank and others who purchased Dana securities at artificially inflated prices. The accounting irregularities were self-reported by Dana when it restated its finances in 2005.

       This court has jurisdiction pursuant to 27 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa. Currently pending is defendants' motion to dismiss the consolidated complaint. For the reasons that follow, the motion shall be granted.

**Background**

Plaintiff's class is composed of individuals who purchased Dana's publicly traded stock during the Class period. Among the members of this class are the SEIU Pension Master Trust, West Virginia Laborer's Pension Trust Fund, and Plumber and Pipefitters National Pension Fund.

Dana is a leading supplier of axle, driveshaft, engine, frame, chassis, and transmission technologies, for major vehicle producers domestically and throughout the world. In the mid-1990's, when the auto industry declined rapidly, Dana struggled. Over the next years, Dana acquired other operations, restructured, and rebuffed a take-over attempt. On February 17, 2004, Dana announced its financial results for fiscal year 2003, reporting a 220% increase in net income. A month later, on March 1, 2004, Defendant Burns became the CEO and Chairman of Dana's Board.

During the Class period of April 21, 2004 to October 7, 2005, Burns and Richter, by virtue of their status in the company, were privy to non-public information concerning the business and finances of Dana. Plaintiff alleges the defendants knew or recklessly disregarded negative information about Dana, and concealed this information from the investing public. Plaintiff alleges these misrepresentations and omissions, violated the requirements and obligations of defendants as officers and controlling persons of a publicly-held company whose securities were registered with the SEC pursuant to the Exchange Act, and were governed by federal securities laws.

Plaintiff ultimately alleges the defendants deceived the investing public about Dana's business operations and management and the intrinsic value of Dana's securities, and that this deceit caused Frank and others similarly situated to purchase Dana securities at artificially inflated prices.

Burns became CEO of Dana in March, 2004. A year later, on March 23, 2005, Dana announced it had revised its First Quarter 2005 earnings outlook to a range of $.11 - $.13/share,

rather than the previously announced range of $.17 - $.23 cents/share. In a related press release, Burns attributed this reduction to higher-than-expected material costs, primarily steel, and lower than expected light vehicle production rates. On April 20, 2005, Dana announced its 2005 First Quarter sales were $2.5 billion, as compared to $2.3 billion for the same period in 2004.

On May 25, 2005, Dana filed its quarterly report with the SEC for the First Quarter 2005, ending March 31. This Form 10-Q reiterated the financial results made public on April 20, 2005. Richter and Burns signed all 10-Q forms submitted by Dana during the Class period, pursuant to Sarbanes-Oxley.

On July 20, 2005, Dana announced its financial result for the Second Quarter 2005, ending June 30. The press release showed sales of $2.6 billion, up 6% from the First Quarter of 2005. On July 29, Dana filed its quarterly report, Form 10-Q, for the Second Quarter 2005 with the SEC.

On September 15, 2005, Dana announced it would revise its 2005 full year earnings outlook, and would likely restate its Second Quarter 2005 financial results. Dana's previously reported assets and earnings had been overstated by $920 million. This announcement came six weeks after defendants claimed Dana had generated a 275% quarter to quarter earnings increase. The defendants announced the change was due to increased steel costs and Dana's inability to adequately cut costs. Three weeks later, October 10, 2005, defendants announced they were retracting their fiscal year 2005 Earnings Per Share (EPS) guideline, eliminating nearly $1 billion of Dana's deferred tax assets, and restating the Company's financial statements for fiscal year 2004 and the first two quarters of 2005 due to "material weaknesses in Dana's internal controls over financial reporting." Dana restated its fiscal year 2004 and First and Second Quarter 2005 financial statements, eliminated $4 million of after tax net income, and confirmed that Dana's previously reported quarterly net

income had been overstated by as much as 70%. In early 2006, defendants announced Dana's Third Quarter 2005 results, reporting a net loss of $1.27 billion.

On March 3, 2006, Dana filed for bankruptcy. Three days later Richter announced his retirement, and Burns received an incentive bonus payment for seeing the Company through bankruptcy.

Plaintiff clams that the statements made in the Class period relating to the Company's financial condition were materially false and misleading and in violation of § 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Plaintiff alleges that Dana's profits were being negatively impacted by an increase in the price of raw materials, steel in particular, from the start of the Class period. Plaintiff alleges the defendants artificially inflated Dana's net income through improper accounting and issuing unrealistic earnings guidance in order for Dana's stock to continue to perform well in spite of the increases in the price of steel. Because of the allegedly false statements and failures to disclose, Dana's securities, plaintiff contends, traded at artificially inflated prices during the Class period.

Plaintiff alleges, specifically, that during the Class period defendants caused each division of Dana to budget for 6% growth even when most Dana operations were only growing modestly, and many of its plants were operating at a loss. Defendants also allegedly concealed that the decision to transfer operations to Europe resulted in enormous shipping costs for items shipped by air from Europe to customers in the United States.

In each quarterly report, defendants made assurances that they had conducted a thorough evaluation of the effectiveness of the Company's "disclosure controls and procedures" and that those controls and procedures reasonably assured Dana's financial results were accurately reported. These

4

reports were the Form 10-Q documents. Defendants also certified that the internal controls were effective by executing certifications pursuant to §§ 302 and 906 of the Sarbanes-Oxley Act. These certifications were included in each of the Company's Reports on Form 10-Q and Dana's fiscal year 2004 Report on Form 10-K.

Plaintiff asserts that the defendants violated: 1) § 10(b) of the Exchange Act and SEC Rule 10b-5; and 2) § 20(a) of the Exchange Act. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; 15 U.S.C. § 78t(a).

## Standard of Review

### A. Motion to Dismiss under Rule 12(b)(6)

As with any motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, LTD.*,   U.S.   , 127 S.Ct. 2499, 2509 (2007). When ruling on a Rule 12(b)(6) motion, a court must also construe the complaint in a light most favorable to the nonmoving party. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

### B. Pleading Securities Fraud

For a violation of the Exchange Act, the plaintiff must plead: 1) a misrepresentation or omission of a material fact; 2) made with scienter; 3) in connection with the purchase or sale of a security; 4) relied on by plaintiff; and 5) proximately causing plaintiff's loss. 15 U.S.C. § 78j(b). *See also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 580 (2005); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir. 2001). Control person liability under § 20(a) is contingent on the plaintiff's ability to first prove an underlying § 10(b) violation. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 696 (6th Cir. 2004).

5

The pleadings will be reviewed under the heightened standard for fraud claims prescribed by Fed. R. Civ. P. 9(b), which requires claims of fraud be plead with particularity: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Generalized and conclusory allegations of fraudulent conduct do not satisfy Rule 9(b). *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir.2001) (quotations omitted).

It should be noted that the Private Securities Litigation Reform Act of 1995 (PSLRA) also requires a heightened pleading standard for securities fraud allegations. Under the PSLRA, any allegation that defendant made a false or misleading statement must:

> (1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and
>
> (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. §§ 78u-4(b)(1)-(b)(2).

Thus, plaintiff must provide specific facts in support of the allegations of fraud, as well as provide support for allegations of the required state of mind- facts creating a strong inference of scienter. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 565 (6th Cir. 2001).

On June 21, 2007, the Supreme Court addressed, in *Tellabs, Inc, supra*, how to treat a Rule 12(b)(6) motion to dismiss a § 10(b) action, and specifically, how to define a "strong inference" of scienter. Under *Tellabs*, this Court must consider the complaint in its entirety, as well as documents incorporated into the complaint by reference, such that the inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs, supra,* 127 S.Ct. at 2509.

6

Furthermore, in determining the existence of scienter, this Court must "take into account plausible opposing inferences." *Id.* In brief,

> the inference of scienter must be more than merely "reasonable"or "permissible" - it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id.* at 2510.

Therefore, under *Tellabs*, plaintiff must establish an inference of scienter that is more plausible and powerful than competing inferences of defendants' state of mind. *See id.*

## Discussion

### I. Claim 1: Violation of Section 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) of the Exchange Act forbids:

> the use or employ, in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

SEC Rule 10b-5 implements Section 10(b) by declaring the following unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b-5.

### A. Specific Allegations

### 1. Overly Optimistic Forecasts

Plaintiff alleges that during the Class period, Dana's prospects and earnings guidance were based on overly optimistic and unrealistic forecasts of future results. Burns and Richter set a company-wide goal of obtaining a 6% increase in profit, beginning in the first quarter of 2004. Plaintiff alleges that, in particular, the Lima, Ohio and Statesville, North Carolina plants were operating at a loss, and ultimately, defendants were aware that half of Dana's plants operated at a loss during 2004 and 2005. Despite such knowledge, or with reckless disregard of that information, defendants, according to plaintiff's allegations, Richter and Burns retained and publicized a patently unrealistic and misleading goal of a 6% increase.

### 2. Overstatement of Dana's Deferred Tax Asset

Dana made an October, 2005, write-off of Dana's deferred tax asset.[1] Plaintiff alleges Burns and Richter engaged in securities fraud by not reducing the stated value of this asset in earlier periods. Plaintiff claims Dana could only keep the deferred tax asset on its books if it was "more likely than not" that some or all of the asset would be realized in the "foreseeable future." Statement of Financial Accounting Standards No. 109. Plaintiff asserts that if the "more likely than not" test is not satisfied, a valuation allowance should be applied to reduce the amount of the deferred tax asset. Plaintiff alleges the amount of the deferred tax asset was over reported, because Burns and Richter ignored negative factors that would have reduced the tax asset. Instead of increasing the valuation allowance to reduce the tax asset, Richter and Burns decreased Dana's valuation allowance by about 40% during the Class period. This lower valuation allowance enabled Dana to report higher EPS figures during the Class period.

---

[1] A "deferred tax asset" is a future tax liability or asset resulting from timing differences between accounting standards and the tax code.

Each quarter Burns and Richter submitted a Form 10-Q and Form 10-K attesting they had evaluated factors that could influence Dana's valuation analysis, and determined there was no need for an increase in the allowance.

Dana consulted its auditors, PricewaterhouseCoopers, about the deferred tax asset issue in October, 2005. PricewaterhouseCoopers opined that the financial statements containing the deferred tax asset were presented fairly, in all material respects.

### 3. Accounting Irregularities Preceding the Restatement

Plaintiff alleges Dana's financial restatement evidences securities fraud, and that Generally Accepted Accounting Principles (GAAP) violations in filings also constitute securities fraud. Plaintiff points to monthly Policy Committee meetings, monthly and quarterly reports detailing the financial performance of individual plants, and internal accounting weekly "tracker reports" from each plant. Plaintiff attests that production reports were submitted via email by each plant to Division Controllers at the Toledo headquarters, and that the directors received quarterly Supplemental Accounting Data (SAD) reports with explanations of each plant's budget and its actual performance.

Plaintiff fails, however, to reference any specific conversation, document, report or meeting showing that Burns and Richter knew or recklessly disregarded facts from which they should have known of the fraud or accounting errors. Plaintiff is correct that a Restatement, under Accounting Principles Board Opinion (APB) No. 20, is a "correction of errors in previously issued financial statements." *See also In re Goodyear Tire & Rubber Co. Sec. Litigation*, 436 F.Supp.3d 873, 894 (N.D. Ohio 2006) ("By definition then, a restatement says that the prior financial statement was false."). The mere existence of these errors without a showing (or, at least, an allegation) that the

9

statements were knowingly false when made to the market, does not, however, establish scienter on the part of the directors in making and repeating those statements. *Id.*

### 4. Dana's Inadequate Internal Controls

Plaintiff also alleges that Burns and Richter knowingly caused Dana to issue quarterly and annual financial statements that did not disclose the significant and material deficiencies that existed in the Company's internal accounting controls. Furthermore, plaintiff alleges the financial statements did not comply with the GAAP. It should be noted, however, that there is no strict liability in a § 10(b) claim – the existence of non-compliant financial statements does not create the necessary element of scienter. *In re Goodyear Tire & Rubber Co. Sec. Litigation*, *supra,* 436 F.Supp.3d at 894.

### B. Analysis

### 1. Scienter

Scienter is a "mental state embracing intent to deceive, manipulate or defraud." *In re Comshare, Inc. Sec. Litigation*, 183 F.3d 542, 548 (6th Cir. 1999). Plaintiff must plead a "strong inference that the defendant[s] acted at least recklessly" in making false statements, or with knowledge of their falsity. *Helwig, supra,* 251 F.3d at 551. Recklessness under the PSLRA is "a mental state apart from negligence and akin to conscious disregard." *In re Comshare, supra*, 183 F.3d at 550. "While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Id.* Subsequent revelations that financial statements were false cannot, standing alone, create this strong inference of scienter. *In re Goodyear Tire & Rubber Co. Sec. Litigation*, *supra,* 436 F.Supp.3d at 894.

Plaintiff must plead facts giving rise to a strong inference of scienter – complaints containing conclusory allegations are properly dismissed. *Helwig, supra*, 251 F.3d at 551. As with a typical

Rule 12(b)(6) motion, the Court is still required to draw inferences in favor of the plaintiff; however, the Court is required to accept plaintiff's inferences of scienter only if those inferences are the most plausible of competing inferences. *Tellabs, supra,* 127 S.Ct. at 2510.

## 2. Conclusory Allegations

Plaintiff alleges the Restatement itself shows the defendants fraudulently made overly optimistic forecasts, improperly recognized a deferred tax asset, made various accounting irregularities, and Dana had inadequate internal controls. However, as noted by the Sixth Circuit, complaints containing conclusory allegations are insufficient. *Helwig, supra*, 251 F.3d at 565.

In this case, plaintiff asserts merely that the defendants' actions, as shown by their own account, were fraudulent, and offers as proof defendants own account of their actions. Plaintiff appears to be applying a *de facto* inference of scienter.

The financial restatement details mistakes in Dana's accounting. The restatement does not, however, establish scienter– i.e., that Richter and Burns knew the accounts and statements were false and, despite that knowledge, intentionally deceived the public into believing Dana's numbers were accurate.

Plaintiff points to some specific statements that ultimately were shown to have been misleading. For example, under Sarbanes Oxley, the CFO and CEO must file a report affirming they reviewed the Form 10-Q and evaluated the company's disclosure controls and procedures. These reports also affirm that the company's disclosure actions were designed and used to ensure disclosure of material information relating to the company.

Burns and Richter signed these reports during the Class period, even though there were mistakes in accounting that were not being disclosed to the public, mistakes that ultimately would

11

have a large impact on the buying power of Dana's shares. Plaintiff, however, fails to plead with requisite particularity that the reports were *intentionally* misleading.

### 2. Position Alone is Not Sufficient

Plaintiff also alleges the defendants had knowledge, and intentionally mislead the public, because as high-level executives and directors they had significant contact with the internal reports and data on finances such that they should have been aware the numbers and quotes they were giving were materially false and misleading. Managerial position alone is not sufficient to establish scienter. *PR Diamonds*, *Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004) ("fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information").

### 3. Anonymous Sources are Inadequate

Plaintiff cites anonymous sources to establish scienter. In the wake of *Tellabs*, at least one court has been hesitant to place reliance on an anonymous source when the Supreme Court has required courts to consider all possible motives, and only to recognize scienter if it is "cogent" and "compelling." *Dennis Higginbotham, v. Baxter International Inc.*, — F.3d —, —, 2007 WL 2142298, *2 (7th Cir.) ("It is hard to see how information form anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist.").

Plaintiff never cites his sources; instead he refers generally to "tracker reports" and consolidated "production reports," which he has not seen. Similarly, plaintiff claims that monthly profit and loss reports were emailed to the Division Controller in Toledo, and were the subject of

weekly and monthly meetings held by Richter. Plaintiff, however, does not provide any of the reports, nor references any witnesses to those meetings.

Plaintiff discusses SAD reports from individual plants, alleging that they showed operational losses. But he has not seen those reports; nor does he allege that the defendants saw them or that, with knowledge of their contents, they knowingly nonetheless issued press releases and filed documents that were false.

Plaintiff likewise alleges that Dana's public earnings per share guidance, forecasts, and income projections were contradicted by internal documents; but there has been no proof these documents exist, or defendants reviewed them.

Finally, plaintiff states that information about the price of steel and the auto industry, information that negatively impacted Dana's sales and functioning, were matters of public record and thus no internal source was required for such information to come to the defendants' attention. While some such information may have been in the public domain, that is not sufficient to show scienter on the defendants' part about Dana's financial problems, that accounting inaccuracies occurring, and that their own statements to the public concerning Dana were false.

Plaintiff failed to identify sources such as to plead with the particularity required by the PSLRA and Rule 9(b). *See In re Keithley Instruments, Inc. Securities Litigation*, 268 F.Supp.2d. 887, 899-90 (N.D. Ohio 2002). Furthermore, without proof about the adverse content of reports that became known to the defendants, plaintiff cannot establish scienter.

### 4. No Allegations of Insider Trading

Finally, it is noteworthy that plaintiff does not allege insider trading on the defendants' part. While such trading is not required to establish a § 10(b) claim of fraud, it can be a strong indicator

13

of fraud-related knowledge and intent. *See, e.g., Ross v. Abercrombie & Fitch Company*, — F. Supp.2d —, — 2007 WL 2284477, *14 (S.D. Ohio) ("In addition, the Court finds that the allegations regarding the timing and extent of the individual Defendants' sales of stock further substantiate a strong inference of scienter"). While following the edict of the Supreme Court in *Tellabs, supra*, 127 S.Ct. at 2511, that "allegations must be considered collectively" and "the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint," the absence of insider trading still supports the conclusion that plaintiff fails to allege scienter sufficiently to overcome the defendants' motion to dismiss.

### 5. Enormity of the Fraud

In the Sixth Circuit, the magnitude of the financial fraud is not a factor in determining defendants' scienter. *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) ("Allowing an inference of scienter based on the magnitude of fraud would eviscerate the principle that accounting errors alone cannot justify a finding of scienter. . . . It would also allow the court to engage in speculation and hindsight, both of which are counter to the PSLRA's mandates.") (internal quotation omitted).

### 6. Evaluation of All Factors

This Court, ultimately, must evaluate all these factors together and ask, "would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs, supra,* 127 S.Ct. at 2511. Plaintiff asserts that various documents informed defendants of Dana's financial difficulties, but he cites no specific basis for such knowledge. Although the positions of Burns and Richter as CEO and CFO are relevant, they alone cannot establish scienter. On the other hand, although the lack of insider trading, and therein a palpable lack in motive for making knowingly fraudulent statements, is relevant, that alone also cannot eliminate plaintiff's claims. Ultimately,

14

however, an assessment of all the factors, coupled with the absence of specific facts in the context of otherwise conclusory allegations, persuades me that plaintiff has failed adequately to allege scienter.

## II. Claim 2: Violation of § 20(a) of the Exchange Act

Plaintiff alleges the defendants acted as controlling persons of Dana within the meaning of § 20(a) of the Exchange Act, which provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce that act or acts causing the violation or cause of action.

15 U.S.C. §78t(a).

For a § 20(a) claim, plaintiff must establish:

> the "controlled person" must have committed an underlying violation fo the securities laws or rules and regulations promulgated thereunder. Second, the "controlling person" defendant in a Section 20(a) claim must have directly or indirectly controlled the person liable for the securities law violation.

*PR Diamonds, Inc.*, *supra*, 364 F.3d at 697.

First, Dana or its employees must have violated securities laws. *Id.* This most basic element of the test is not met. As plaintiff's claim that the directors violated § 10(b) of the Exchange Act fails, there is no remaining underlying violation on which to base a § 20(a) claim. Plaintiffs do not sufficiently plead a violation of securities law by Dana, its employees, or the individual defendants. Whether defendants acted as controlling persons with "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person," which they largely did through their positions as directors, this control is not sufficient to establish liability as there is no plead and established underlying violation. 17 C.F.R. § 240.12b-2.

Furthermore, even if plaintiff can establish the directors controlled individuals who themselves could be proven to knowingly and willingly have violated the Exchange Act, plaintiff has not proven the requisite state of mind to hold the directors liable for any underlying actions necessary to establish a § 20(a) claim. Plaintiff argues that by virtue of their positions as controlling persons, defendants are liable under § 20(a). Defendants, however, are not liable if they acted in good faith and did not induce the violations. 15 U.S.C. § 78t(a). Plaintiffs have failed previously to show scienter, and cannot establish that Burns and Richter were not acting in good faith, nor that they induced the fraud prevalent at Dana. Plaintiff's § 20(a) claim fails.[2]

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT the defendants' motion to dismiss be, and the same hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

---

[2] Plaintiff also claims the statutory "safe harbor" provision of the PSLRA is inapplicable. 15 U.S.C. § 78u-5(c)(1)(A). This Court having determined plaintiff's complaint fails adequately to plead scienter, the applicability of the safe harbor provision is moot. Whether the statements were forward-looking or not, plaintiff has not shown they were made with intent to defraud or recklessness regarding the facts.