UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

| | | |
|---|---|---|
| HOWARD FRANK, Individually and On Behalf of All Others Similarly Situated, | : | Civil Action No. 3:05-cv-07393-JGC |
| | : | |
| Plaintiff, | : | Class Action |
| | : | |
| vs. | : | CHIEF JUDGE JAMES G. CARR |
| | : | |
| DANA CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS CONSOLIDATED COMPLAINT

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
(212) 940-8800

-and-

Cooper & Walinski, L.P.A.
900 Adams Street
Toledo, OH 43624
(419) 241-1200

Of Counsel:
Joel W. Sternman
Anthony L. Paccione
Julie Pechersky
Daniel A. Edelson

# TABLE OF CONTENTS

Introduction.................................................................................................................1

Preliminary Statement ..............................................................................................1

Statement of the Case ...............................................................................................4

    A.   The Parties .......................................................................................................4

    B.   Summary of the Complaint...............................................................................5

          1.   Overly Optimistic Forecasts And Forward Looking Statements............................6

          2.   Deferred Tax Assets ................................................................................6

          3.   Accounting Irregularities .........................................................................7

          4.   Inadequate Internal Controls...................................................................8

Legal Standards .........................................................................................................8

Argument ...................................................................................................................10

POINT I  THE COMPLAINT'S SCIENTER ALLEGATIONS ARE LEGALLY
           INSUFFICIENT ...........................................................................................10

The *Tellabs* Decision ...............................................................................................11

The *Helwig* Factors..................................................................................................12

    A.   As to the Failure to Allege Insider Trading ....................................................13

    B.   As to Allegations Regarding Unspecified "Reports" ......................................14

    C.   As to Temporal Closeness Between Misstatements and Corrective Disclosures...........18

    D.   As to Defendants' Positions at Dana ..............................................................19

    E.   As to Defendants' Expectation of Personal Financial Benefits.....................20

    F.   As to Defendants' SOX Certifications ...........................................................21

    G.   As to the Magnitude of the Restatement and the Valuation Allowance.........................22

    H.   As to Richter's Retirement and the SEC Investigation .................................23

    I.   Conclusion ......................................................................................................23

POINT II  DEFENDANTS' FORWARD LOOKING STATEMENTS ARE
           PROTECTED BY THE PSLRA'S SAFE HARBOR PROVISIONS.........................25

    A.   Statements Concerning EPS Forecasts, Cost Savings Initiatives, Steel Prices
          and U.S. Deferred Tax Assets Were Forward-Looking ...............................26

i

1.   All of Defendants' Public Statements Were Accompanied by Meaningful
     Cautionary Language ............................................................................................27

2.   The Cautionary Language Accompanying the Forward-looking Statements
     Was Sufficient As a Matter Of Law ....................................................................28

B.  The Complaint Does Not Adequately Allege That Defendants
    Made Any Forward-looking Statement With Actual Knowledge
    Of Its Falsity ...............................................................................................................30

POINT III  THE COMPLAINT DOES NOT STATE CONTROL PERSON CLAIMS
           UNDER SECTION 20(A) .........................................................................................32

CONCLUSION.................................................................................................................................33

## TABLE OF AUTHORITIES

### CASES

*Abrams v. Baker Hughes, Inc.*,
   292 F.3d 424 (5th Cir. 2002) ..................................................................................15

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
   512 F.3d 46 (1st Cir. 2008) ...............................................................................20, 25

*Amalgamated Bank v. Coca Cola*,
   No. Civ. A. 1:05-CV-1226,
   2006 WL 2818973 (N.D. Ga. Sept. 29, 2006) ........................................................28

*Berlin Fin. Ltd. v. MPW Indus. Servs. Group, Inc.*,
   No. 2:07-cv-442,
   2008 WL 161309 (S.D. Ohio Jan. 15, 2008) ....................................................14, 16

*Caiafa v. Sea Containers Ltd.*,
   525 F. Supp. 2d 398 (S.D.N.Y. 2007) ....................................................................17

*Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
   497 F.3d 546 (5th Cir. 2007) ..................................................................................22

*Cozzarelli v. Inspire Pharmaceuticals Inc.*,
   549 F.3d 618 (4th Cir. 2008) .........................................................................20, 22-23

*ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ...................................................................................21

*Elam v. Neidorff*,
   544 F.3d 921 (8th Cir. 2008) ............................................................................11, 18

*Fidel v. Farley*,
   392 F.3d 220 (6th Cir. 2004) ............................................................................18, 22

*Frank v. Dana Corp.*,
   547 F.3d 564 (6th Cir. 2008), *vacating and remanding*
   525 F. Supp. 2d 922 (N.D. Ohio 2007) .....................................................................1

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) .........................................................................15, 22

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ............................................................................21-23

*Goplen v. 51job, Inc.*,
   453 F. Supp. 2d 759 (S.D.N.Y. 2006) ....................................................................17

*Grillo v. Tempur-Pedic Int'l, Inc.*,
  553 F. Supp. 2d 809 (E.D. Ky. 2008) ............................................................... 13, 17

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) (en banc), *cert. denied*,
  536 U.S. 935 (2002)............................................................................................ *passim*

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ............................................................................... 16

*In re AMDOCS Ltd. Sec. Litig.*,
  390 F.3d 542 (8th Cir. 2004) ............................................................................... 26

*In re Apple Computer, Inc.*,
  127 Fed. Appx. 296 (9th Cir. 2005)..................................................................... 30

*In re BearingPoint, Inc. Sec. Litig.*,
  525 F. Supp. 2d 759 (E.D. Va. 2007) ............................................................. 17, 23

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004) .................................................................. 32

*In re Century Bus. Servs. Sec. Litig.*,
  No. 1:99CV02200,
  2002 WL 32254513 (N.D. Ohio June 27, 2002) .................................................. 25

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008) ............................................................ 11-12, 22-23

*In re Comshare, Inc. Sec. Litig.*,
  183 F.3d 542 (6th Cir. 1999) ............................................................................... 25

*In re Duane Reade Inc. Sec. Litig.*,
  No. 02 Civ. 6478,
  2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003)..................................................... 32

*In re Elan Corp. Sec. Litig.*,
  543 F. Supp. 2d 187 (S.D.N.Y. 2008) ............................................................. 20-21

*In re Empyrean Bioscience, Inc. Sec. Litig.*,
  255 F. Supp. 2d 751 (N.D. Ohio 2003) ......................................................... 16-17, 31

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
  436 F. Supp. 2d 873 (N.D. Ohio 2006) ......................................................... 10, 22-23

*In re Hutchinson Tech., Inc. Sec. Litig.*,
  536 F.3d 952 (8th Cir. 2008) ............................................................................... 12

*In re Keithley Instruments, Inc. Sec. Litig.,*
  268 F. Supp. 2d 887 (N.D. Ohio 2002) ................................................................31

*In re Kindred Healthcare, Inc. Sec. Litig.,*
  299 F. Supp. 2d 724 (W.D. Ky. 2004).......................................................27, 32

*In re Leapfrog Enters., Inc. Sec. Litig.,*
  527 F. Supp. 2d 1033 (N.D. Cal. 2007).......................................................27, 29

*In re Loral Space & Commc'ns Ltd.,*
  No. 01 Civ. 4388,
  2004 WL 376442 (S.D.N.Y. Feb. 27, 2004).................................................17, 32

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.,*
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) ...................................................................28

*In re Skechers U.S.A., Inc. Sec. Litig.,*
  273 Fed. Appx. 626 (9th Cir. 2008).......................................................................16

*In re Tibco Software, Inc.,*
  No. C 05-2146,
  2006 WL 1469654 (N.D. Cal. May 25, 2006).......................................................28

*In re Wet Seal, Inc. Sec. Litig.,*
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................31

*Indiana Elec. Workers Pension Trust Fund IBEW v. Shaw Group, Inc.,*
  537 F.3d 527 (5th Cir. 2008) .....................................................................12, 19, 22

*Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.*
  *Omnicare, Inc.,*
  527 F. Supp. 2d 698 (E.D. Ky. 2007) .............................................................. 24-25

*Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc.,*
  246 Fed. Appx. 780 (3d Cir. 2007)..................................................................21, 26

*Ley v. Visteon Corp.,*
  543 F.3d 801 (6th Cir. 2008) .......................................................................*passim*

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
  547 U.S. 71 (2006)....................................................................................... 9-10

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.,*
  540 F.3d 1049 (9th Cir. 2008) .................................................................. 12, 19-20

*Miller v. Champion Enters., Inc.*,
   346 F.3d 660 (6th Cir. 2003),
   *aff'g In re Champion Enters. Inc. Sec. Litig.*,
   144 F. Supp. 2d 848 (E.D. Mich. 2001) ........................................................................28, 30

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ...........................................................11, 13, 20, 23

*New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
   537 F.3d 35 (1st Cir. 2008)...................................................................................12

*PR Diamonds, Inc. v. Chandler*,
   364 F.3d 671 (6th Cir. 2004) ...................................................4, 9, 13, 19, 20, 32

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) .........................................................................15, 21

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................................27

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*,
   75 F.3d 801 (2d Cir. 1996) ..................................................................................16

*SEC v. Steadman*,
   967 F.2d 636, 642 (D.C. Cir. 1992).....................................................................33

*Stavros v. Exelon Corp.*,
   266 F. Supp. 2d 833 (N.D. Ill. 2003)...................................................................27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308,
   127 S. Ct. 2499 (2007).................................................................................*passim*

*Weiss v. Amkor Tech., Inc.*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) ..................................................................29

*Zaluski v. United Am. Healthcare Corp.*,
   527 F.3d 564 (6th Cir. 2008) ...................................................... 10, 11, 25-26, 30

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................... 11, 16, 21-23

## STATUTES AND RULES

Federal Rules of Civil Procedure 9 & 12(b)(6).......................................................1, 9

Private Securities Litigation Reform Act of 1995
   15 U.S.C. §78u-4, *et seq* (2009). ...............................................................*passim*

Sarbanes-Oxley Act of 2002 Section 302,
    15 U.S.C. § 7241 (2009) ............................................................................ 3, 4, 21-22, 24, 34

Securities Exchange Act of 1934 Section 10(b),
    15 U.S.C. § 78j(b) (2009) ...................................................................................... *passim*

Securities Exchange Act of 1934 Section 20(a),
    15 U.S.C. § 78t(a) (2009) ............................................................................................ 5, 32

Securities Exchange Act of 1934 Rule 10b-5,
    17 C.F.R. § 240.10b-5 (2009) .................................................................................... 5, 23

**OTHER AUTHORITIES**

*Black's Law Dictionary* 793 (8th ed. 2004) ...................................................................... 24

H.R. Conf. Rep. No. 104-369 (1995) ........................................................................... 8-10

**INTRODUCTION**

Michael J. Burns ("Burns") and Robert C. Richter ("Richter")[1] respectfully submit this Memorandum of Law in support of their renewed Motion to Dismiss the Consolidated Class Action Complaint dated August 15, 2006 (the "Complaint"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4, *et seq.* ("PSLRA"), as applied in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007), for failure to state a claim and to plead securities fraud with the requisite particularity.

**PRELIMINARY STATEMENT**

This Court previously dismissed the Complaint and there is no reason why it should not do so again. Even though this matter was remanded by the Sixth Circuit, as a result of which this renewed motion is being filed, nothing in the Sixth Circuit's Opinion suggests that a different result should be reached.[2] The Complaint is unchanged; it is the same ninety-plus pages of repetitive allegations combining a series of public statements relating to Dana with the unsupported – and unsupportable – conclusion that, <u>at the time those statements were made</u>, Burns and Richter, Dana's Chief Executive and Chief Financial Officers, respectively, knew or were reckless in not knowing that those statements were materially false and misleading.

---

[1] Despite appearing in the caption, Dana Corporation ("Dana") is not a party to the action (¶ 33). References to "¶ __" are to the paragraphs of the Complaint, a copy of which is Exhibit A to the Declaration of Anthony L. Paccione dated April 1, 2009 ("Paccione Dec.") submitted herewith.

[2] The Sixth Circuit remanded this case seemingly because this Court's August 21, 2007 Opinion contained two phrases that more closely tracked pre-*Tellabs* pleading standards than the *Tellabs* language itself. *See* 547 F.3d 564, 571 (6th Cir. 2008), *vacating and remanding* 525 F. Supp. 2d 922, 928, 930 (N.D. Ohio 2007). But such references clearly were inadvertent, given that the parties had submitted supplemental briefs on the then recent *Tellabs* decision. This Court's Opinion included numerous references to *Tellabs* and concluded with the proper articulation of the *Tellabs* standard. *See e.g.*, 525 F. Supp. 2d at 932, citing *Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2511 (no "reasonable person [would] deem the inference of scienter at least as strong as any opposing inference . . . . [A]n assessment of all the factors, coupled with the absence of specific facts in the context of otherwise conclusory allegations, persuades me that plaintiff has failed adequately to allege scienter.")

Properly viewed, the Complaint is nothing more than an attempt to plead securities fraud claims solely by virtue of the fact that Dana restated its financial results and failed to meet its projections.  But falsity does not equal securities fraud, and mistakes or negligence of senior corporate management in reporting results are not enough to subject them to the burden of defending federal securities fraud claims asserted against them.  Boilerplate allegations or neutral facts that might hint at the possibility that corporate officers acted with the intent to violate the federal securities laws also are insufficient.  Rather, as mandated by the PSLRA, securities fraud complaints must set forth particularized facts sufficient to support a "strong inference" of scienter.  The Complaint here alleges no particularized facts supporting the assertion that Burns or Richter knew or were recklessly indifferent to facts from which they should have known that any of the statements at issue, including those subsequently addressed in Dana's Restatement, were false when made.  Significantly, the Complaint sets forth no meaningful reference to any source of Plaintiffs' accusations: not one confidential witness is identified nor one document described with particularity sufficient to support the Complaint's baseless accusations.

Fairly read, the Complaint here is based entirely upon the very same type of allegations that are routinely dismissed because they fail to support the strong inference of scienter required by the PSLRA.

First, the Complaint's references to unspecified information – whether presented in internal reports or discussed at meetings – are not sufficiently particularized to allege a strong inference of scienter.  Because all public companies operate on the basis of internal reports and meetings, numerous courts have held that securities fraud plaintiffs may not proceed by simply pointing to unspecified "reports" or "meetings" claimed to contain information inconsistent with the company's public disclosures.  Accordingly, under the PSLRA, plaintiffs must set forth

particularized facts such as the substance of the reports, when and by whom those reports were prepared, defendants' access to that inconsistent information and, importantly, the sources from which plaintiffs obtained their "facts" as to the foregoing.   The allegations in the present Complaint do not ever approach these standards.

Second, the Complaint's remaining assertions, as to the Restatement, Sarbanes-Oxley certifications, potential bonus compensation, and other post-Class Period occurrences, whether viewed separately or collectively, fail to support even a reasonable inference of scienter, let alone a strong inference that is plausible, cogent and at least as compelling as any opposing inference, namely that, in fact, Defendants did not know nor could they have known of any information inconsistent with their public statement at any time during the Class Period.

Third, the allegations that center on forward-looking statements fall within the safe harbor provisions of the PSLRA and the Complaint's failure to set forth particularized facts supporting the claim that Defendants had actual knowledge that those statements were false when made renders such allegations legally insufficient.

The pleading requirements of the PSLRA are not optional; complaints that fail to meet the requisite standards must be dismissed. See 15 U.S.C. § 78u-4(b)(3)(A) ("[T]he court shall . . . dismiss the complaint if the [pleading] requirements . . . are not met.") Here, Plaintiffs do little more than plead "fraud by hindsight," seeking to force Burns and Richter to settle or to defend against baseless securities fraud claims – exactly what Congress sought to avoid when it enacted the PSLRA.   As noted in Tellabs, "[p]rivate securities fraud actions, [] if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law." 551 U.S. at ___, 127 S. Ct. at 2504. Here, the Complaint pleads nothing to support any reasonable inference – let alone the requisite strong inference –

that Defendants violated the federal securities laws.  As the Sixth Circuit has emphasized, "[t]he purpose of the Reform Act is to screen out lawsuits having no factual basis, to prevent harassing strike suits, and to encourage attorneys to use greater care in drafting their complaints."  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 700 (6th Cir. 2004); *see Ley v. Visteon Corp.*, 543 F.3d 801, 806-07 (6th Cir. 2008).

## STATEMENT OF THE CASE

### A.   THE PARTIES

Plaintiffs are three institutional investors, the SEIU Pension Master Trust, West Virginia Laborer's Pension Trust Fund, and Plumbers and Pipefitters National Pension Fund (¶¶ 30-32). They purport to represent purchasers of Dana's publicly traded securities between April 21, 2004 and October 7, 2005 (the "Class Period") (¶ 1).

Non-party Dana is a "supplier of systems and components for global light, commercial and off-highway vehicle manufacturers around the world" (¶ 33).  As set forth in its Form 10-K for the period ending December 31, 2005 (Paccione Dec. Ex. B at 3), Dana employed approximately 44,000 people and operated 116 major facilities in 28 countries.  On March 3, 2006, Dana filed for bankruptcy protection, joining various other companies in its industry in bankruptcy (Paccione Dec. Ex. C).

Throughout the Class Period, Burns was Dana's CEO and Chairman of its Board of Directors (¶ 11), and Richter was Dana's CFO (¶ 35).  In such capacities, they signed Dana's SEC filings, participated in the issuance of press releases and conference calls with analysts, and signed certificates pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7241 (2009) ("SOX") (¶¶ 11, 34-35).

4

**B.**     **SUMMARY OF THE COMPLAINT**

On September 15, 2005, Dana disclosed that it was likely to restate certain of its results (¶ 20) and, three weeks later, further disclosed that, among other things, it would restate its "financial statements for FY04 and the first two quarters of 2005" and eliminate its deferred tax asset (¶ 22). Relying almost exclusively upon disclosures in the Restatement, the Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a) (2009), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (2009), based on various statements attributed to Burns and Richter that are alleged to have been materially false or misleading when made.

Rather than provide particularized facts as required by the PSLRA, the Complaint generally alleges that Burns and Richter were aware of, and involved in, the claimed fraud "by virtue of their high-level positions within the Company" (¶ 37). It repeatedly and without any supporting facts baldly asserts that they "participated in the issuance of false and misleading statements" (¶¶ 34-35) and that, somehow, they "caused Dana" to use a variety of "accounting manipulations" to falsify its financial results (*e.g.*, ¶¶ 2, 3, 13, 43).[3] These unspecified allegations can be categorized as follows: (1) overly optimistic forecasts; (2) Dana's deferred tax asset; (3) various accounting irregularities; and (4) inadequate internal controls. These categories are discussed *seriatim.*

---

[3] All of these supposed "accounting manipulations" were self-reported by Dana (while Burns and Richter were its CEO and Chairman and its CFO respectively) when it restated its financials in 2005 (Paccione Dec. Ex. GG). It is these same voluntarily reported "accounting manipulations" that Plaintiffs seek to convert to securities fraud claims.

### 1.    OVERLY OPTIMISTIC FORECASTS AND FORWARD LOOKING STATEMENTS

The Complaint's first set of claims is largely premised upon the assertion that, during the Class Period, Dana's forward-looking prospects and earnings guidance were based upon overly optimistic and unrealistic forecasts of future results (¶¶ 52-55).  It alleges, without any support from any document or confidential witness, that beginning in the first quarter of 2004, Burns and Richter set a "company-wide goal of obtaining a 6% increase in profit" and that unnamed "[p]ersonnel" – not Burns or Richter – "directed that the forecasts be increased to meet defendants' company-wide goal" (¶ 53).  The Complaint sets forth a scattershot listing of internal reports (giving them names like "tracker reports" or "SADs") to which Burns and Richter had access, that, it claims, contained information that put Burns and Richter on notice that Dana's forecasts were not achievable (¶¶ 44-51).  However, the Complaint neither discloses nor otherwise provides particularized facts setting forth the content of any such report nor how these reports might show the unreasonableness of any projection, forecast or guidance of Dana.  Nor does the Complaint describe how, when, or whether Burns or Richter reviewed or even received these reports (assuming that any reports containing information inconsistent with public statements attributable to Burns and Richter in fact existed).  The Complaint also fails to address the specific cautionary language accompanying these forward-looking statements, which affords them protection under the safe harbor provisions of the PSLRA.

### 2.    DEFERRED TAX ASSETS

The Complaint asserts that a valuation allowance taken as of September 30, 2005 against Dana's U.S. deferred tax assets should have been taken in earlier periods (¶¶ 60-69).  A U.S. deferred tax asset, which arises from timing differences between accounting standards and the

Internal Revenue Code, may continue to be maintained so long as it is "more likely than not" that the asset will be realized in the "foreseeable future" (¶¶ 61, 63).  According to the Complaint, Burns and Richter fraudulently ignored adverse information indicating that the "more likely than not" test could not be met during the Class Period (¶ 66).  However, this myopic allegation ignores the fact that the decision to maintain Dana's U.S. deferred tax assets during the Class Period was, among other things, not only based upon a judgment and estimate of future events, but was also coupled with disclosures triggering protections afforded by the PSLRA to forward-looking statements.  In addition, Dana's auditor, PricewaterhouseCoopers ("PwC"), opined, at all relevant times during the Class Period, that the financial statements containing the deferred tax assets were presented fairly, in all material respects (Paccione Dec. Ex. D at 43-44).

### 3.   ACCOUNTING IRREGULARITIES

Using the fact that Dana restated its public filings, and acknowledged material weakness in its internal controls, the Complaint sets forth conclusory allegations that Burns and Richter knew or recklessly disregarded facts from which they should have known of various accounting irregularities throughout the Class Period (*see* ¶¶ 72-76).  Strikingly absent from these assertions is any meaningful allegation linking Burns or Richter to knowledge or awareness of a single one of these matters prior to the end of the Class Period.  Instead, the Complaint merely asserts that "Defendants made a practice of manipulating accrual accounts" and "engaged in a variety of other accounting manipulations" (¶ 75), while making no reference to, for example, credible information from anyone in a position to describe the substance of conversations, documents, or meetings tending to support the *ipse dixit* statement that Burns and Richter must have known of or recklessly disregarded information from which they should have known of accounting irregularities that did not come to light until after the end of the Class Period.

### 4.   INADEQUATE INTERNAL CONTROLS

Finally, the Complaint alleges that "Burns and Richter knowingly caused the Company to issue quarterly and annual financial statements which did not disclose the existence of the significant and material deficiencies in the Company's internal accounting controls and falsely asserted that Dana's financial statements complied with GAAP" (¶ 90).  As with the allegations concerning accounting irregularities, the Complaint fails to allege any particularized facts to support the assertion that Burns or Richter knew or recklessly disregarded facts from which they should have known of any problem with Dana's internal controls during the Class Period.

<div align="center">*     *     *</div>

As shown below, none of the foregoing allegations, nor anything else set forth in the Complaint, whether viewed separately or collectively under the PSLRA and *Tellabs*, suffices to meet the stringent pleading requirements applicable to the claims asserted herein, namely that Plaintiffs set forth particularized facts sufficient to support a strong inference of scienter that is plausible, cogent and at least as compelling as any plausible, nonculpable inference supported by the fact that are alleged.

### LEGAL STANDARDS

Securities fraud claims such as those at issue here are subject to heightened judicial scrutiny, particularly at the pleading stage.  Congress, in enacting the PSLRA, "implement[ed] procedural protections to discourage frivolous litigation." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 547 (6th Cir. 2001) (en banc), *cert. denied,* 536 U.S. 935 (2002) (internal quotations omitted). Congress passed the PSLRA to curtail the filing of meritless lawsuits in response to "significant evidence of abuse in private securities lawsuits."  H.R. Conf. Rep. No. 104-369, at 31 (1995); *see also Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2504 (Congress enacted the PSLRA "[a]s a check against abusive litigation by private parties . . . .")

Accordingly, "Title I of the Reform Act, captioned 'Reduction of Abusive Litigation,' represents Congress' effort to curb these perceived abuses." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006). "The effort to deter or at least quickly dispose of those suits whose nuisance value outweighs their merits placed special burdens on plaintiffs seeking to bring federal securities fraud class actions." *Id.* at 82; *see Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2504.

The PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate or defraud." *Id.* (internal quotations omitted). Thus, under the PSLRA, complaints must:

> (1)   specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed[; and]
>
> (2)   state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. §§ 78u-4(b)(1), (2).

In addition, Section 10(b) claims are subject to the particularity requirements of Fed. R. Civ. P. 9(b). Thus, complaints must (1) specify the statements that plaintiffs contend were fraudulent, (2) identify the speakers, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Ley*, 543 F.3d at 806-07 (citing *PR Diamonds*, 364 F.3d at 681).

The PSLRA also establishes "a safe harbor for forward-looking statements, to encourage issuers to disseminate relevant information to the market without fear of open-ended liability." H.R. Conf. Rep. No. 104-369, at 32; *see* 15 U.S.C. § 78u-5(c); *accord Merrill Lynch*, 547 U.S. at 81-82. Although claims that an estimate or opinion was fraudulent, based simply upon the fact

that such a statement later needed to be revised, had consistently been rejected by the courts as non-actionable "fraud by hindsight," Congress recognized that a "[f]ear that inaccurate projections [would] trigger the filing of securities class action lawsuit[s] has muzzled corporate management." H.R. Conf. Rep. No. 104-369, at 26; *see also Merrill Lynch*, 547 U.S. at 81 (supporters of the PSLRA argued that "abuses" of securities class actions, among other things, "chilled any discussion of issuers' future prospects"). Absent proper allegations of actual knowledge, the PSLRA affords significant protection from liability for a company's projections of revenues, earnings and other so called forward-looking statements where, as here, they are accompanied by "meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i).

<div align="center">

ARGUMENT

**POINT I**

THE COMPLAINT'S SCIENTER ALLEGATIONS ARE LEGALLY INSUFFICIENT

</div>

To state a claim under Section 10(b), a plaintiff must allege, "in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (internal quotations omitted).

Scienter is the "linchpin" of Section 10(b) claims. *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 892 (N.D. Ohio 2006). Plaintiffs must plead specific facts to support scienter, a mental state embracing intent to deceive, manipulate or defraud. *See Tellabs,* 551 U.S. at ___, 127 S. Ct. at 2507; *Ley*, 543 F.3d at 806-07. As shown below, the facts alleged in the Complaint do not give rise to a strong inference of scienter.

THE *TELLABS* DECISION

Prior to *Tellabs*, various Circuits had articulated different standards by which to measure whether a PSLRA complaint adequately alleged a strong inference of scienter. *Tellabs* resolved this conflict, holding that "[t]o qualify as 'strong' within the intendment of § 21D(b)(2) [of the PSLRA], we hold, an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2504-05. To determine whether a complaint alleges facts that give rise to this requisite "strong inference," "a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 2510. While "[t]his formulation is slightly different than that previously used in the Sixth Circuit . . . both Justice Scalia and Justice Alito have noted [that] the difference between requiring the most plausible inference and requiring an equally plausible inference will rarely affect the outcome of a case." *Ley*, 543 F.3d at 810 (citing *Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2514, 2516).

Thus, in order to state a claim against Burns and Richter individually, the Complaint must "allege facts from which a reasonable person *would* infer that it is at least as likely as not that the individual high-ranking defendants either orchestrated the alleged fraud (and thus always knew about it), or . . . were otherwise severely reckless in not learning of the claimed fraud during that period." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1247 (11th Cir. 2008).

In the wake of *Tellabs*, the Sixth Circuit, as well as a host of other Circuits, have consistently held complaints strikingly similar to the Complaint here insufficient under the PSLRA. *See Ley*, 543 F.3d 801 (6th Cir.); *Zaluski*, 527 F.3d 564 (6th Cir.); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009); *Elam v. Neidorff*, 544 F.3d 921 (8th Cir. 2008); *Mizzaro*, 544 F.3d 1230 (11th Cir.); *In re Ceridian Corp. Sec. Litig.*, 542 F.3d

240 (8th Cir. 2008); *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537

F.3d 35 (1st Cir. 2008); *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir.

2008); *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952 (8th Cir. 2008); *Indiana Elec.*

*Workers Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527 (5th Cir. 2008).

## THE *HELWIG* FACTORS

*Tellabs* reaffirmed the continued viability of the principle articulated in *Helwig*, namely,

that scienter should be evaluated with reference to the totality of the circumstances set forth in

the complaint viewed as a whole. *Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2509. In *Helwig*, the

Sixth Circuit listed nine factors that, while not exhaustive, are viewed as "helpful in guiding

securities fraud pleading."[4] *Helwig*, 251 F.3d at 552. Specifically, under *Helwig,* in determining

whether, in the "totality of the circumstances," a complaint adequately pleads a strong inference

of scienter, a court should consider:

> (1)    insider trading at a suspicious time or in an unusual amount;
>
> (2)    divergence between internal reports and external statements on the same subject;
>
> (3)    closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;
>
> (4)    evidence of bribery by a top company official;
>
> (5)    existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;
>
> (6)    disregard of the most current factual information before making statements;
>
> (7)    disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;

---

[4] Subsequent to *Tellabs*, the Sixth Circuit reconfirmed the fact that the *Helwig* factors "while not exhaustive, are probative of scienter in securities fraud cases." *Ley*, 543 F.3d at 810.

(8)    the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and

(9)    the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Id.* Five of the *Helwig* factors, (1), (4), (5), (7) and (8), are not at issue here and, significantly, the absence of insider trading "weighs heavily" against drawing a strong inference of scienter. Moreover, as addressed below, the allegations with respect to the remaining factors, are patently insufficient to raise a "strong inference" of scienter.   In short, the Complaint simply fails to support any plausible or reasonable inference of Defendants' supposed fraudulent intent, let alone one that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at ___, 127 S. Ct. at 2510.

## A.    AS TO THE FAILURE TO ALLEGE INSIDER TRADING

Insider trading is uniformly recognized as a particularly critical factor in alleging fraudulent intent. *See, e.g.*, *PR Diamonds*, 364 F.3d at 691 (upholding dismissal of Section 10(b) claim for lack of scienter; describing insider trading as one of the "fixed constellations of facts that courts have found probative of securities fraud" and noting "that the absence of inside sales dulls allegations of fraudulent motive" (internal quotations omitted)).

Without alleging any insider sales, Plaintiffs speculate that Burns and Richter engaged in a fraudulent scheme, risking their professional reputations and exposing themselves to personal liability.   Clearly, the absence of alleged insider trading weighs heavily against a strong inference of scienter. *See, e.g.*, *Mizzaro*, 544 F.3d at 1253 (affirming dismissal, noting that failure to allege insider stock sales "weighs against inferring scienter"); *Grillo v. Tempur-Pedic Int'l, Inc.*, 553 F. Supp. 2d 809, 822 (E.D. Ky. 2008) ("fact that the CEO and CFO sold no stock during the purported fraud . . . undermines the inference of scienter").

**B.**   **AS TO ALLEGATIONS REGARDING UNSPECIFIED "REPORTS"**

In order to plead a strong inference of scienter, both the PSLRA and Rule 9(b) require the Complaint to set forth particularized facts as to alleged internal reports, such as report titles, when they were prepared, who prepared them, to whom they were directed, their content, and the sources from which plaintiffs obtained this information.

The Complaint here does nothing more than refer to the existence of monthly and quarterly reports "outlining each plant's performance and its variances from the budget" (¶ 47). Because allegations as to these reports are made on information and belief, they must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Despite this prerequisite, the Complaint fails to refer to any source for its conclusory assertions that these reports contained information inconsistent with public statements attributable to Defendants. For this reason alone, Plaintiffs' claims are insufficiently pleaded. *See Berlin Fin. Ltd. v. MPW Indus. Servs. Group, Inc.*, No. 2:07-cv-442, 2008 WL 161309, at *7 (S.D. Ohio Jan. 15, 2008) (dismissing complaint, noting that "the facts that support allegations based on information and belief [are] critical under paragraph (b)(1). Not only must it be determined whether those facts are pleaded 'with particularity,' 15 U.S.C. § 78u-4(b)(1), but it must also be decided whether those facts sufficiently support Plaintiffs' information and belief" (internal quotations omitted)).

The Complaint's description of these supposed reports is as follows:

- "Richter also participated in the preparation and dissemination of financial and operational reports which were discussed at the monthly [and] [a]nnual [] meetings" (¶ 46);

- "Burns and Richter received detailed information from each of the Company's plants on a monthly (and quarterly) basis outlining each plant's performance . . . . Each plant's internal accounting department prepared daily and weekly "tracker reports" . . . [w]hich were consolidated monthly into "production reports," which were part of each plant's monthly profit and loss reports. . . . The monthly profit and loss reports were submitted on a monthly basis by each plant via email to the respective Division Controller in Toledo and were the subject of weekly and monthly meetings conducted under defendant Richter's supervision . . . . [A] recurring topic of discussion on these calls was the inability of individual plants to meet their budgets . . . ." (¶ 47);

14

- "Dana's individual plants also provided SAD reports, which were profit and loss reports analyzed on a quarterly basis.  The SAD reports contained detailed explanations for the variances between the plant's actual performance and its budget" (¶ 48);

- "Defendants Burns and Richter received regular reports throughout the Class Period on each plant's performance" (¶ 50).

The Complaint does not provide any particularized facts as to the substance of these reports, especially the information that was inconsistent with statements attributable to Defendants, nor any basis on which to infer that Burns or Richter had access to such inconsistent information prior to the close of the Class Period.  Significantly, the Complaint neither attaches, quotes from or summarizes any report, nor does it provide information from anyone in a position to describe their substance or explain how that substance became known by Burns and Richter.

Courts routinely dismiss Section 10(b) claims supported only by conclusory allegations that defendants had access to internal documents contradicting their public statements.  *See, e.g., Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1264-65 (11th Cir. 2006) (affirming dismissal of complaint alleging that defendants "attended monthly operations meetings in Arizona and 'every aspect of the [] business was discussed in detail, including the aggressive channel stuffing and mounting problems with accounts receivable . . . [without] alleg[ing] what was said at the meeting, to whom it was said, or in what context"); *Pugh v. Tribune Co.,* 521 F.3d 686, 694-95 (7th Cir. 2008) (plaintiffs cannot draw inference of scienter from fact that individual defendants had access to fraudulent reports); *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 431-32 (5th Cir. 2002) (affirming dismissal of complaint and noting that "[a]n unsupported general claim about the existence of confidential corporate reports that reveals information contrary to reported accounts is insufficient to survive a motion to dismiss;" allegations that defendants received "daily, weekly, and monthly financial reports that apprized them of the company's true financial

status [lacked] corroborating details regarding the contents of allegedly contrary reports, their authors and recipients"); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (characterizing "Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales [a]s insufficient to survive a motion to dismiss"); *Zucco Partners*, 552 F.3d at 1000 (affirming dismissal of complaint and noting that allegations that "senior management [] closely reviewed the accounting numbers . . . and that top executives had several meetings in which they discussed quarterly inventory numbers" not sufficiently particularized); *In re Skechers U.S.A., Inc. Sec. Litig.*, 273 Fed. Appx. 626, 628 (9th Cir. 2008) (affirming dismissal of complaint, holding insufficient allegations that "each of the defendants was receiving weekly updated projections . . . and knew that Skechers faced a sharp decline in [] sales" because complaint "fail[ed] to describe with any detail the contents of these interim reports, who drafted them, or how the confidential witnesses were in a position to know that the defendants received the alleged reports"); and *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) (affirming dismissal of complaint and noting that "[a]lthough the complaint asserts that managers at Baxter's headquarters knew about the contracts . . . they appeared in a computer database available throughout the firm – there is a big difference between knowing about the reports [] and knowing that the reports are false").

*See also Berlin Fin. Ltd.*, 2008 WL 161309, at *7 (S.D. Ohio Jan. 15, 2008) (dismissing complaint and stating that "the facts that support allegations based on information and belief [are] critical under paragraph (b)(1). Not only must it be determined whether those facts are pled 'with particularity,' 15 U.S.C. § 78u-4(b)(1), but it must also be decided whether those facts sufficiently support Plaintiffs' information and belief" (internal quotations omitted)); *In re*

*Empyrean Bioscience, Inc. Sec. Litig.*, 255 F. Supp. 2d 751, 759 (N.D. Ohio 2003) (dismissing complaint where no basis of information alleged); *Grillo*, 553 F. Supp. 2d at 819 ("[m]erely stating that the Defendants had access to and receipt of internal financial reports without any proof of the adverse content of those reports is not a basis for a strong inference of scienter"); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 413 (S.D.N.Y. 2007) (dismissing complaint, noting that senior management's regular receipt of inventory reports was insufficient to establish scienter); *In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 773 (E.D. Va. 2007) (dismissing complaint and holding that simply reviewing corporate reports and approving payments are normal functions of a corporate executive and do not amount to allegations of intent or recklessness); *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006) (allegations that defendants "had access to adverse undisclosed financial information through internal corporate documents, meetings and reports" insufficient to plead scienter); *In re Loral Space & Commc'ns, Ltd. Sec. Litig.*, No. 01 Civ. 4388, 2004 WL 376442, at *10 (S.D.N.Y. Feb. 27, 2004) (dismissing complaint alleging that defendants had access to weekly and monthly reports contradicting projections because plaintiffs did not adequately identify sources of information as to the internal documents).

Allegations that "tracker reports" and "production reports" were compiled by each plant and "discussed" at weekly or monthly meetings and that Dana's plants prepared supplemental accounting reports are not enough because the Complaint fails to allege facts sufficient to show that any such reports contained information inconsistent with public statements attributable to Burns or Richter, that they received and reviewed such reports, or that they participated in the purported meetings where specific inconsistent information was discussed (¶¶ 47-48). Thus, even though companies such as Dana generate numerous reports, and the CEOs and CFOs of

such companies review certain of those reports, the Complaint is fatally flawed because it fails to plead <u>when</u> any report with inconsistent information was prepared, that Burns and Richter actually received them, <u>what</u> information the reports contained, and <u>how</u> that "detailed information" or those "variances" (never alleged to be either positive or negative) show that that the EPS forecasts were false when made (*see, e.g.*, ¶ 96(l); ¶ 107(a); ¶ 124(a)).   In short, the Complaint's unparticularized and conclusory allegations concerning reports containing, and meetings discussing, information inconsistent with statements attributable to Burns or Richter are insufficient to support a strong inference of scienter.  .

### C.   AS TO TEMPORAL CLOSENESS BETWEEN MISSTATEMENTS AND CORRECTIVE DISCLOSURES

Absent a factual basis for the assertion that defendants knowingly disregarded available facts, temporal closeness between a misstatement and a later corrective disclosure does not support a strong inference of scienter. *Fidel v. Farley*, 392 F.3d 220, 232 (6th Cir. 2004) (dismissing Section 10(b) claim and holding that "inferring scienter from the temporal proximity" is "nothing more than speculation," absent particularized factual allegations that inconsistent information was in front of defendants at time alleged misstatement was made). Here, the Complaint lacks any factual support indicating that Burns or Richter knew that any Dana disclosure was false when made.  The lack of factual particularization concerning when any internal reports were received by Burns and Richter and how those reports were inconsistent with the statements at issue undercuts Plaintiffs' ability to rely on this factor. *See Elam*, 544 F.3d at 930 (citing *Fidel* and holding that one-month period between positive statements and negative announcement did not support finding of scienter because "plaintiffs' allegations rest on nothing more than hindsight").

In any event, even assuming that this factor weighs in favor of a finding of scienter, it is just one factor out of many and would not, given the totality of the circumstances here, enable Plaintiffs to meet the *Tellabs* test.

**D.     AS TO DEFENDANTS' POSITIONS AT DANA**

The Complaint alleges that, "[a]s part of his duties, Burns directed Dana's business, dealt with the Company's largest customers, knew about the actual revenue and costs being experienced by the Company and approved in principle accounting treatments utilized by defendants to falsify Dana's reported financial results" (¶ 34). Similarly, the Complaint alleges that Richter "worked directly with defendant Burns in overseeing Dana's operations and knew about Dana's actual performance and approved in principle the accounting treatments used to boost the Company's reported results" (¶ 35). Based thereon, Plaintiffs speculate that because Defendants "held the top executive positions at the Company and were responsible for directing and managing the Company's business and approving material corporate decisions, including those relating to internal controls and financing" (¶ 44), they had access to material information inconsistent with their public statements.

But the foregoing allegations are nothing more than assertions that, by virtue of their status at Dana and the fact that a restatement subsequently was issued, Burns and Richter must have known that various statements attributable to them were false when made. The Sixth Circuit has squarely held that these types of allegations fail to support an inference of scienter. *See PR Diamonds*, 364 F.3d at 687-88 (affirming dismissal with prejudice of Section 10(b) claim because, among other things, scienter could not be inferred from defendants' positions as company officers); *accord Indiana Elec. Workers*, 537 F.3d at 535 (reversing denial of motion to dismiss, noting that allegations that "defendants must have known of the irregularities because of their executive positions" insufficient to plead scienter); *Metzler*, 540 F.3d at 1068 (affirming

dismissal of complaint, noting that "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud"); *Mizzaro*, 544 F.3d at 1251 ("we indulge at least some skepticism about allegations that hinge entirely on a theory that senior management 'must have known' everything that was happening at a company as large as Home Depot . . .").

### E.   AS TO DEFENDANTS' EXPECTATION OF PERSONAL FINANCIAL BENEFITS

According to the Complaint, a "substantial percentage of defendants' compensation was based upon Dana's *reported* net income and earnings per share during 2004-2006" (¶3 n.1). Significantly, the Complaint does not allege that Defendants ever received bonus compensation or the conditions under which they might qualify for such.

The Sixth Circuit has held that courts must distinguish motives common to corporations and executives generally from motives to commit fraud. *See Ley*, 543 F.3d at 813 (citing *PR Diamonds*, 364 F.3d at 690). Thus, to adequately allege motive, a complaint must illustrate that defendants reaped concrete and personal benefits from the purported fraud. *ACA Fin. Guar. Corp. v. Advest, Inc.,* 512 F.3d 46, 67 (1st Cir. 2008) (affirming dismissal of complaint); *accord Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 627 (4th Cir. 2008) (affirming dismissal of complaint and holding that "motivations to raise capital or increase one's own compensation are common to every company and thus add little to an inference of fraud"). Allegations that individual defendants received bonuses linked to company performance are not sufficient to plead scienter in a Section 10(b) action because it would lead to the absurd conclusion that most executives commit securities fraud. *See In re Elan Corp. Sec. Litig.*, 543 F.

Supp. 2d 187, 216 (S.D.N.Y. 2008) (executive compensation or maximizing bonuses does not support a strong inference of scienter).

Similarly, the desire to retain or increase the value of a company are basic motivations of running a successful corporation and also do not support an inference of fraudulent intent. *See Ley*, 543 F.3d at 813-14 (allegations of motive to raise additional capital did not support scienter); *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 ("evidence of a personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter"); *Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc.*, 246 Fed. Appx. 780, 785-86 (3d Cir. 2007) (affirming dismissal of complaint and holding that allegations that company falsified its earnings to maintain credit line insufficient).

As previously noted, the Complaint does not even allege that Defendants received bonuses linked to company performance, let alone detail "how intimately the bonuses were tied to [Dana's] financials." *Zucco Partners*, 552 F.3d at 1004 (affirming dismissal of complaint alleging that executive bonuses "based in part" on company's financial performance, but failing to provide specific details of bonuses); s*ee ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009) (affirming dismissal of complaint and holding that allegations that individual defendants had requisite motive because they received bonuses based on corporate earnings do not strengthen inference of intent to defraud); *Pugh*, 521 F.3d at 695 (affirming dismissal of complaint and rejecting unsupported assertion that "defendants were motivated to allow 'lax' internal controls to inflate revenues, which would allow them to receive bonuses").

### F.    AS TO DEFENDANTS' SOX CERTIFICATIONS

Following *Tellabs*, the Sixth Circuit held that Sarbanes-Oxley certifications are not supportive of scienter. *See Ley*, 543 F.3d at 812 (SOX certifications, standing alone, do not

support scienter).   Indeed, all Circuits addressing this issue have "unanimously agreed that allowing Sarbanes-Oxley certifications to create an inference of scienter in 'every case where there was an accounting error or auditing mistake made by a publicly traded company' would 'eviscerate the pleading requirements for scienter set forth in the PSLRA.'" *Zucco Partners*, 552 F.3d at 1004 (9th Cir.) (quoting *Garfield*, 466 F.3d at 1266 (11th Cir.)); *accord In re Ceridian Corp.*, 542 F.3d at 248 (8th Cir.); *Indiana Elec. Workers*, 537 F.3d at 545 (5th Cir.); *Cozzarelli*, 549 F.3d at 628 n.2. (4th Cir.); *Glazer Capital Mgmt.*, 549 F.3d at 748 (9th Cir.).

The Complaint does not allege particularized facts supporting the existence of any "red flag" or knowledge by Burns or Richter supporting a strong inference that they knew or recklessly disregarded facts from which they should have known that their SOX certifications were false when made.  As stated in *Garfield*, 466 F.3d at 1266, "[t]he plain language of Sarbanes-Oxley evidences no congressional intent to alter the pleading requirements set forth in the PSLRA."  Accordingly, "a Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements." *Id.*  The Fifth Circuit reached the identical conclusion in affirming the dismissal of a complaint, holding that where, as here, plaintiffs do not "clearly explain the link between [] statements about the internal controls and the actual accounting and reporting problems that arose," SOX certifications "do not permit an inference of scienter." *Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 555 (5th Cir. 2007).

G.    AS TO THE MAGNITUDE OF THE
      RESTATEMENT AND THE VALUATION ALLOWANCE

In the Sixth Circuit, the magnitude of the financial fraud is not a factor in determining defendants' scienter. *Fidel*, 392 F.3d at 231; *see In re Goodyear*, 436 F. Supp. 2d at 903-04 ("[T]o infer scienter from the magnitude of the errors would require hindsight, speculation, and

conjecture."); *accord In re Ceridian*, 542 F.3d at 246 (rejecting plaintiffs' argument that "the sheer number of violations and the magnitude of the restatements[] give rise to an inference" of fraudulent intent because "Section 10(b) and Rule 10b-5 prohibit fraud, not accounting malpractice"); *Mizzaro*, 544 F.3d at 1247-48 (affirming dismissal of complaint where amended complaint "relie[d] exclusively on the widespread nature of the fraud, and the purported amount of the fraud, to draw a strong inference that the individual defendants (all high-ranking officials) acted with the requisite scienter").

### H.   AS TO RICHTER'S RETIREMENT AND THE SEC INVESTIGATION

The "bare fact" of Richter's retirement "cannot support [the Complaint's] allegations of scienter." *Zucco Partners*, 552 F.3d at 1002 (allegation that CEO retired "just prior to the disclosure of [] improper accounting and lack of financial controls" not supportive of scienter). "[T]o assume fraudulent acts have transpired based on the mere fact that executives have left a company is an unwarranted inferential leap." *In re BearingPoint*, 525 F. Supp. 2d at 777-78.

The Complaint's allegations regarding the SEC investigation are likewise unavailing. The mere existence of a governmental agency investigation fails to support an inference of scienter, especially where, as here, the SEC has brought no charges against nor made any finding of wrongdoing by Burns or Richter. *See Cozzarelli*, 549 F.3d at 628 n.2; *see also Glazer Capital Mgmt.*, 549 F.3d at 748-49 (company's settlement agreements with SEC and DOJ did not support scienter inference on part of CEO because "there is nothing in either settlement agreement that would support the conclusion that [*CEO*] had actual knowledge of the violations").

### I.   CONCLUSION

"[A] plaintiff alleging fraud in a §10(b) action . . . must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference." *Tellabs*, 551 U.S. at ___, 127

S. Ct. at 2513.  The combination of allegations in the Complaint fails to raise a strong inference of Defendants' recklessness or actual knowledge.  As noted by the Sixth Circuit, "[s]trong inferences [] involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact." *Helwig*, 251 F.3d at 553; *see also Black's Law Dictionary* 793 (8th ed. 2004) (defining an "inference" as a "conclusion reached by considering other facts and deducing a logical consequence from them").  The facts that the Complaint actually pleads – there was a restatement, Defendants were members of senior management, internal reports were available, SOX certifications were signed – are neutral and do not support a plausible, cogent or compelling inference of scienter. The allegations on which Plaintiffs premise scienter – that Burns and Richter received information in internal reports and at meetings inconsistent with public statements attributed to them, rendering those statements knowingly false  when made – are wholly conclusory and speculative and lack any particularized factual basis sufficient to support any plausible, cogent or compelling inference of scienter.

In short, the Complaint utterly fails to allege facts from which a reasonable person would infer that it is at least as likely as not that Burns or Richter either orchestrated any alleged fraud or otherwise were reckless in not becoming aware of information indicating that Dana's financial statements or statements as to its projections, its internal controls, the accuracy of its accounting or the circumstances under which it continued to carry deferred tax assets on its books were false when made.  Distilled to its essence, the Complaint seeks to pursue securities fraud claims solely because Dana restated its financial results, disclosed certain weaknesses in its internal controls, failed to achieve its earnings guidance and took a valuation allowance against its deferred tax assets.  This is nothing more than and attempt to "'reverse engineer' a securities fraud action based on bad corporate news." *Indiana State Dist. Council of Laborers & Hod Carriers Pension*

& *Welfare Fund v. Omnicare, Inc.*, 527 F. Supp. 2d 698, 712 (E.D. Ky. 2007) (dismissing

Section 10(b) claim); *see also In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999)

(affirming dismissal of complaint and noting, "Plaintiffs' claim that a subsequent revelation of

the falsehood of previous statement implies scienter lacks merit"); *Advest*, 512 F.3d at 62

(affirming dismissal of complaint because "[a] plaintiff may not plead fraud by hindsight; *i.e.*, a

complaint may not simply contrast a defendant's past optimism with less favorable actual

results" (internal quotations omitted)); *In re Century Bus. Servs. Sec. Litig.*, No. 1:99CV02200,

2002 WL 32254513, at *16 (N.D. Ohio June 27, 2002) ("alleged 'hindsight admissions' by the

defendants provide little indication that any earlier statements were fraudulent, rather than

merely erroneous").

## POINT II

### DEFENDANTS' FORWARD LOOKING STATEMENTS ARE PROTECTED BY THE PSLRA'S SAFE HARBOR PROVISIONS

Many of the statements about which Plaintiffs complain are forward looking and not

actionable. *See, e.g.,* ¶¶ 92, 96, 101, 111, 114, 115, 121, 123(a).  These allegations relate to:

- predictions concerning Dana's earnings per share ("EPS") (*e.g.*, ¶ 92: "There will always be bumps in the road but we remain committed to achieving our goal of earnings per share of at least $1.90 in 2004.")

- predictions regarding the price of steel and the efficacy of cost savings initiatives (*e.g.*, ¶ 115: "we remain hopeful that we'll see less pressure on steel and other material price increases during the course of the year"); and

- predictions that Dana would generate sufficient U.S. income to avoid taking a valuation allowance against its U.S. deferred tax assets (*e.g.*, ¶123(a): "based on our current evaluation, we believe that realization is more likely than not achievable through a combination of improved operating results and changes in our business operating model." )

Statements such as these, that are identified as forward-looking and are accompanied by

meaningful cautionary language, are protected by the PSLRA's safe harbor provisions unless the

Complaint sets forth allegations sufficient to show that, at the time the statements were made, defendants had actual knowledge that they were materially false or misleading. *Zaluski*, 527 F.3d at 572 (citing *Helwig*, 251 F.3d at 547-48). Here, because (1) the statements at issue were accompanied by meaningful cautionary language; and (2) the Complaint fails adequately to allege that Burns or Richter had actual knowledge that they were false or misleading when made, those statements are protected by the PSLRA. *See* 15 U.S.C. § 78u-5(c)(1).[5]   The conclusory and boilerplate paragraph near the end of the Complaint (¶148) is nothing but an afterthought unsupported by particularized facts as required by the PSLRA.

## A.   STATEMENTS CONCERNING EPS FORECASTS, COST SAVINGS INITIATIVES, STEEL PRICES AND U.S. DEFERRED TAX ASSETS WERE FORWARD-LOOKING

Statements regarding EPS forecasts, cost savings initiatives, steel prices and its deferred tax assets are forward-looking statements (*see, e.g.,* ¶ 121(b):   "We believe that there is considerable opportunity to achieve additional cost savings and process efficiencies as our efforts gain more momentum;" "We're also expecting to benefit from subsiding steel costs, which should benefit the Automotive Systems Group;" "Given the uncertainty surrounding North American light vehicle production in the second half of the year, we are lowering our 2005 production forecast to 15.5 million units from 15.7 million units.")

Courts routinely recognize the inherent difficulties in predicting future aspects of a company's business and dismiss claims based upon them. *See Key Equity*, 246 Fed. Appx. at 785 n.8 (to the extent earnings projections were actionable they were accompanied by adequate cautionary language); *In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 548 (8th Cir. 2004) (affirming dismissal of complaint because "[defendant] merely needed to issue sufficient warnings that relate[d] directly to that which the plaintiffs have been misled" (internal quotations

---

[5] Under 15 U.S.C. § 78u-5(c)(1), a person cannot be held liable for a forward-looking statement if the statement is "(i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements . . . ; or (ii) immaterial; or [(iii)] the plaintiff fails to prove that the forward looking statement . . . was made with actual knowledge by [the speaker] that the statement was false or misleading . . . ."

omitted)); *Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004) (affirming dismissal where cautionary language accompanied forward-looking statements concerning future earnings); *In re Leapfrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1047 (N.D. Cal. 2007) (dismissing securities fraud complaint where defendants' forward-looking statement accompanied by "specific cautionary statements (or cautionary statements incorporated by reference) explaining the risks associated with the subject matter of plaintiffs' claims"); *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 843-44 (N.D. Ill. 2003) (dismissing securities fraud complaint because EPS projections in press releases, interviews and elsewhere were subject to cautionary language in SEC filings); *In re Kindred Healthcare, Inc. Sec. Litig.*, 299 F. Supp. 2d 724, 738 (W.D. Ky. 2004) (dismissing securities fraud claim, in part on grounds that forward-looking statements by company regarding adequacy of reserves were non-actionable).

### 1.   ALL OF DEFENDANTS' PUBLIC STATEMENTS WERE ACCOMPANIED BY MEANINGFUL CAUTIONARY LANGUAGE

All of Dana's SEC filings, press releases and analyst calls were accompanied by, or incorporated by reference, meaningful cautionary language. Each SEC filing identified in the Complaint (¶¶ 95, 100, 106, 113, 118, 123) essentially warned that actual results could differ materially from those projected because, among other things, of the cyclical nature of the global vehicular industry; competitive pressures on sales and pricing; and increases in production or material costs (including that of steel) that could not be recouped in product pricing  (Paccione Dec. Exs. D-K).

Each of the press releases referenced in the Complaint (¶¶ 91-92, 97, 102-04, 111, 114-15, 121), including the releases of April 21, 2004, July 21, 2004, October 20, 2004, February 23, 2005, April 20, 2005 and July 20, 2005 (Paccione Dec. Exs. L-Q), warned of the precise risks associated with the forward-looking statements included therein.  The press releases further cautioned that risk factors included "increases in commodity costs, including steel, that cannot be recouped in product pricing; the ability of our customers and suppliers to achieve their projected

sales and production levels; competitive pressures on our sales and pricing; the continued success of our cost reduction and cash management programs and of our long-term transformation strategy for the company" (*Id.*)

Finally, each conference call referenced in the Complaint (¶¶ 93, 98, 105, 112, 116, 122) began with warnings that forward-looking "statements are based on our current knowledge and involve certain assumptions, uncertainties, and risks.  Our actual results could differ materially from those which are anticipated or projected due to factors that we will be discussing today and others that are discussed in our SEC reports" (Paccione Dec. Exs. R-W).

The press releases and analyst calls incorporated by reference the cautionary language of the SEC filings.  Courts recognize that cautionary language may be incorporated into a conversation or document containing the purportedly misleading forward-looking statement. *Miller v. Champion Enters. Inc.,* 346 F.3d 660, 677-78 (6th Cir. 2003) (letter alleged to contain false statements contained meaningful cautionary language because it incorporated risk disclosures in company's Form 10-K); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.,* 423 F. Supp. 2d 364, 402 n.11 (S.D.N.Y. 2006) (incorporation of SEC filing into conference call sufficient for purposes of PSLRA's safe harbor provision); *Amalgamated Bank v. Coca-Cola Co.*, No. Civ.A. 1:05-CV-1226, 2006 WL 2818973, at *6 (N.D. Ga. Sept. 29, 2006) (same); *In re Tibco Software, Inc.,* No. C 05-2146, 2006 WL 1469654, at *26 (N.D. Cal. May 25, 2006) (same).

### 2.    THE CAUTIONARY LANGUAGE ACCOMPANYING THE FORWARD-LOOKING STATEMENTS WAS SUFFICIENT AS A MATTER OF LAW

Dana's SEC filings, press releases and analyst calls all contained precise and specific warnings on the very issues about which Plaintiffs now complain (¶¶ 96, 101, 107, 119, 124), including steel prices, raw material costs and deferred tax assets.  For example, the Complaint alleges that Defendants misled investors about the future price of steel (¶ 114).  In fact, Dana

made clear that its earnings forecasts were subject to uncertainty concerning the future price of steel and/or industry-wide steel surcharges and raw material price increases.[6]

Also, the Complaint alleges that Defendants misled investors about Dana's ability to raise prices because it was dependent on relatively few customers (*e.g.*, ¶¶ 66(d), 99(c)). Here again, Dana repeatedly warned investors that only a few of its customers accounted for a large share of Dana's business and that there was industry-wide pressure to decrease prices to stay competitive.[7] Finally, contrary to the allegations of the Complaint, ¶ 124 (m), Dana explicitly noted that realization of its U.S. deferred tax assets was not assured.[8]

Thus, absent allegations sufficient to support a strong inference that Defendants actually knew that statements attributable to them as to Dana's forecasts, predictions and other statements of optimism about the future were materially false or misleading when made, those statements, all of which were accompanied by meaningful cautionary statements about risks that could affect future performance, are not actionable. *See In re Leapfrog*, 527 F. Supp. 2d at 1047 (holding that cautionary language was sufficient to trigger safe harbor provisions where defendants explained "the risks associated with the subject matter of plaintiffs' claims in, *inter alia*, its 'Risk Factors' section of its forms 10-K and 10-Q"); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 955 (D. Ariz. 2007) (dismissing securities fraud claim because, among other reasons, cautionary language regarding "unpredictable nature of the [] industry; volatility of consumer demand . . . timing and volume of orders . . . dependence on raw material and

---

[6] *E.g.*, Paccione Dec. Ex. E at 5 (Feb. 25, 2004 10-K), Ex. F at 20 (Apr. 29, 2004 10-Q), Ex. G at 23 (July 26, 2004 10-Q), Ex D at 5, 8, 16-17 (Mar. 9, 2005 10-K), Ex. I at 19 (May 6, 2005 10-Q), Ex. J at 23 (July 29, 2005 10-Q), Ex. L (Apr. 21, 2004 Press Release), Ex. M (July 21, 2004 Press Release), Ex. N (Oct. 20, 2004 Press Release), Ex. O (Feb. 23, 2005 Press Release), Ex. P (Apr. 20, 2005 Press Release)).

[7] *E.g.*, Paccione Dec. Ex. E at 5, 14 (Feb. 25, 2004 10-K), Ex. F at 19 (Apr. 29, 2004 10-Q), Ex. G at 23 (July 26, 2004 10-Q), Ex. H at 24 (Nov. 9, 2004 10-Q), Ex. D at 5, 8 (Mar. 9, 2005 10-K), Ex. I at 19 (May 6, 2005 10-Q)).

[8] *E.g.*, Paccione Dec. Ex. G at 10 (July 26, 2004 10-Q), Ex H at 11 (Nov. 9, 2004 10-Q), Ex. D at 9 (Mar. 9, 2005 10-K), Ex. I at 10 (May 6, 2005 10-Q), Ex. J at 11 (July 29, 2005 10-Q)).

equipment suppliers" was sufficient to satisfy the PSLRA).  Courts have found the PSLRA's safe harbor provisions (as well as the "bespeaks caution" doctrine) protect forward-looking statements accompanied by warning language far less clear and specifically targeted than Dana's. *In re Champion Enters., Inc. Sec. Litig.*, 144 F. Supp. 2d 848, 854, 862 (E.D. Mich. 2001), *aff'd*, 346 F.3d 660 (6th Cir. 2003) (even though company did not warn of specific risk that materialized, Champion was "not obligated to foretell the future," and "need[ed] only warn of risks of similar significance to those that materialize").

**B.      THE COMPLAINT DOES NOT ADEQUATELY ALLEGE
THAT DEFENDANTS MADE ANY FORWARD-LOOKING
STATEMENT WITH ACTUAL KNOWLEDGE OF ITS FALSITY**

Courts impose a particularly heavy pleading burden upon complaints alleging that defendants made forward-looking or optimistic statements with actual knowledge of their falsity and dismiss these allegations unless plaintiffs plead particularized facts showing that defendants knew their statements were false when made.  *See Ley*, 543 F.3d at 811 (finding that statement that corporation had "a solid year" while internally saying it was "not doing well," could "barely" pay its bills and was "barely liquid" was inactionable statement of corporate optimism). The Sixth Circuit's decision in *Zaluski v. United American* is instructive.   There, plaintiffs argued that defendants had a duty to disclose the potential consequences of certain illegal payments to a politician, including the possibility that a state contract would be terminated. Rejecting this argument, the Sixth Circuit found that plaintiffs failed to point to any internal investigation or report showing that defendants anticipated their payments would result in state sanctions. *Zaluski*, 527 F.3d at 575; *see Helwig*, 251 F.3d at 554 (requirement that plaintiffs plead Defendants' actual knowledge that forward-looking statements were false when made is "formidable burden at the pleading stage"); s*ee also, In re Apple Computer, Inc.*, 127 Fed. Appx. 296, 299 (9th Cir. 2005) (dismissing securities fraud complaint because plaintiffs failed to plead

why forward-looking statements regarding revenue projections and other matters were knowingly false when made). "Unlike scienter, which may be demonstrated by properly alleging recklessness, to overcome the protection afforded under the safe harbor provision, a plaintiff must properly plead actual intent." *In re Empyrean Bioscience*, 255 F. Supp. 2d at 765 n.13 and *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1166 (C.D. Cal. 2007) (dismissing complaint where allegations based upon forward-looking statements "fail to specify any information known to particular corporate officers that was inconsistent with any of the statements attributed to them").

None of the allegations in the Complaint is sufficient to support a strong inference that Burns or Richter actually knew that any of the forward-looking statements attributable to them was materially false or misleading when made. Fairly read, all the Complaint alleges is that:

- Dana's plants generated "tracker" and "SAD" reports that, by virtue of having certified that they were "made aware of all material information . . . affecting Dana's financial results," Burns and Richter "have admitted knowledge of the information they contained (¶¶ 47-48); and

- Burns and Richter directed plants to forecast a pre-determined 6% level of growth despite their knowledge of the poor historical financial performance reflected in these reports (¶¶ 50, 53); and

- Burns and Richter manipulated Dana's actual operative performance to avoid writing down its deferred tax assets (¶ 55).

Where, as here, "[p]laintiffs' overarching theory is that the Defendants made projections that they knew could not be fulfilled in light of internal information they had which not only suggested but made it clear that their expansion plans, earnings estimates, and other predictions were unattainable, the securities fraud claim must be dismissed when the *particulars* of what the defendants knew are not alleged." *In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 900 (N.D. Ohio 2002) (emphasis in original) (internal quotations omitted); *see In re*

*Kindred Healthcare*, 299 F. Supp. 2d at 740 ("Defendants have access to internal documents and proprietary information as a matter of course in their jobs. Access to sensitive financial information by itself does not permit an inference that Defendants knew their reserves were insufficient to cover potential professional liability claims."); *In re Loral Space & Commc'ns Ltd.*, 2004 WL 376442, at *11 ("The plaintiffs' general allegation that internal company reports contradicted the defendants' projections of Globalstar's eventual subscribers is insufficient to raise an inference that defendants were reckless in making those projections."); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 562 (S.D.N.Y. 2004) (finding that even if the individual defendants had reviewed the internal company documents noting the flaws of the product, "such knowledge is insufficient to lead to an inference that the speakers knew that the general and optimistic statements" about the product were untrue); *In re Duane Reade Inc. Sec. Litig.,* No. 02 Civ. 6478, 2003 WL 22801416, at *10 (S.D.N.Y. Nov. 25, 2003) (management's access to and review of interim sales data not indicative of their awareness that predictions for the quarter would prove false).

## POINT III

### THE COMPLAINT DOES NOT STATE CONTROL PERSON CLAIMS UNDER SECTION 20(A)

Because the Complaint fails to state a primary violation under Section 10(b) either against Burns or Richter (or against Dana), it fails to state control person claims under Section 20(a), 15 U.S.C. § 78t(a); thus, this claim must be dismissed as well. *See PR Diamonds*, 364 F.3d at 696-98 (affirming dismissal of complaint and holding, as relevant here, that plaintiffs' failure to plead scienter both as to the individual defendants and their bankrupt non-party company precludes plaintiffs' ability to pursue control person claims against the individual defendants); *see also Ley*, 543 F.3d at 818 (affirming dismissal of Section 20(a) claim where complaint failed to allege a predicate violation of the securities laws).

## CONCLUSION

Congress enacted the PSLRA precisely to prevent class plaintiffs from using the coercive effect of unsupported securities fraud claims to force defendants into unwarranted settlements. The Complaint at issue here, which charges Burns and Richter with securities fraud without setting forth particularized facts necessary to support its baseless accusations, is precisely the type of complaint at which the PSLRA was targeted. It should be dismissed because the claims at issue are speculative, fraud-by-hindsight claims that fail to meet the clearly articulated statutory standards for pleading a strong inference of scienter as required by *Tellabs* and its progeny.

Among other things, Plaintiffs have failed to allege scienter under any of the relevant *Helwig* factors. Thus, viewed either individually or collectively, the Complaint's allegations do not plead facts sufficient to raise a strong inference of scienter at least as compelling as any plausible, non-culpable inference, *e.g.*, that Defendants had a reasonable, good faith belief that all of the statements made during the Class Period were true when made. The fact that neither Burns nor Richter is alleged to have traded any Dana stock during the Class Period weighs heavily against a finding of scienter. *See, e.g.*, *SEC v. Steadman*, 967 F.2d 636, 642 (D.C. Cir. 1992) ("If we were to conclude that the [defendants] meant to defraud investors, we would have to believe that they did so for the sheer joy of it rather than for profit.")

Moreover, viewed with the level of circumspection required by the PSLRA, the Complaint fails to support any of its critical allegations (e.g. ¶¶ 46-50, 42, 101) either with documents or with credible sources   Those critical allegations include, among other things, charges that, in substance, Burns and Richter:

- made public statements touting Dana's historical performance and future prospects, despite knowledge of or access to material information inconsistent with those statements;

- directed subordinates to make it appear that Dana's sales were growing by 6% per year;

- signed SOX certifications confirming that Dana's internal controls had no material weaknesses, despite knowledge of or access to information that, in fact, those controls had material weaknesses; and

- failed to take a valuation allowance against Dana's deferred tax assets, despite knowledge of or access to information that Dana did not meet the test necessary to retain those assets on its books.

But nowhere does the Complaint identify any source to support Plaintiffs' fanciful speculation, such as a single witness, confidential or otherwise, nor does it identify, quote from, or attach as an exhibit, a single shred of documentary evidence. Because the Complaint provides no source whatsoever in support of its generalized allegations, it lacks the particularized factual basis necessary to support a strong inference of scienter.

In short, none of the post-Class Period facts, such as Dana's restatement, its acknowledgement of material weaknesses in its internal controls, the valuation allowance writing off its deferred tax assets and the various accounting irregularities that came to light, properly viewed under the prism of the PSLRA and *Tellabs*, supports the strong inference of scienter necessary to avoid dismissal here.

For the foregoing reasons, the Court should, once again, dismiss the Complaint with prejudice.

Dated:  April 1, 2009

<div style="margin-left:40%">

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By: _____
    Joel W. Sternman *(pro hac vice)*
    Anthony L. Paccione *(pro hac vice)*
    Julie Pechersky
    Daniel A. Edelson *(pro hac vice)*
    575 Madison Avenue
    New York, NY 10022
    (212) 940-8800

        -and-

**COOPER & WALINSKI, L.P.A.**
900 Adams Street
Toledo, OH 43624
(419) 241-1200

**Attorneys for Defendants Michael J. Burns
and Robert C. Richter**

</div>