UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

| | | |
|---|---|---|
| HOWARD FRANK, Individually and On Behalf of All Others Similarly Situated, | : | Civil Action No. 3:05-cv-07393-JGC |
| | : | |
| Plaintiff, | : | Class Action |
| | : | |
| vs. | : | CHIEF JUDGE JAMES G. CARR |
| | : | |
| DANA CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

REPLY MEMORANDUM OF LAW IN SUPPORT OF RENEWED
MOTION TO DISMISS CONSOLIDATED COMPLAINT

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
(212) 940-8800

-and-

Cooper & Walinski, L.P.A.
900 Adams Street
Toledo, OH 43624
(419) 241-1200

Of Counsel:
Joel W. Sternman
Anthony L. Paccione
Julie Pechersky
Daniel A. Edelson

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT ......................................................................................................................3

POINT I THE COMPLAINT'S SCIENTER ALLEGATIONS ARE LEGALLY INSUFFICIENT ........................3

    A.    AS TO THE CONTENTIONS OF THE PARTIES .............................................................3

    B.    POST-*TELLABS* JURISPRUDENCE REINFORCES THE CORRECTNESS OF THE AUGUST 2007 DECISION ..........................................................................................7

    1.    FOLLOWING *TELLABS*, DISMISSALS OF COMPLAINTS SUBSTANTIALLY INDISTINGUISHABLE FROM THE COMPLAINT HERE HAVE BEEN REGULARLY AFFIRMED ......................................................................................7

    2.    COMPLAINTS THAT HAVE AVOIDED DISMISSAL SINCE *TELLABS* ALLEGE PARTICULARIZED FACTS OR OTHERWISE INVOLVE CIRCUMSTANCES HAVING NO PARALLEL HERE ........................................................................11

POINT II DEFENDANTS' FORWARD LOOKING STATEMENTS ARE PROTECTED BY THE PSLRA'S SAFE HARBOR PROVISIONS..........................................................................................14

    A.    ALL OF THE ALLEGED FORWARD LOOKING STATEMENTS, WHETHER WRITTEN OR ORAL, WERE ACCOMPANIED BY CAUTIONARY LANGUAGE .................................16

    B.    DANA'S CAUTIONARY STATEMENTS WERE NOT BOILERPLATE OR INCOMPLETE.18

    C.    PLAINTIFFS DO NOT ADEQUATELY PLEAD THAT DEFENDANTS WERE AWARE OF ANY RISKS THAT WERE NOT DISCLOSED ............................................................20

    D.    EVEN IF THE COMPLAINT ADEQUATELY PLEADED ACTUAL KNOWLEDGE, THE FORWARD LOOKING STATEMENTS STILL WOULD BE NON-ACTIONABLE ..............21

POINT III THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND .............................................................................................................22

    A.    "OFF THE CUFF" REQUESTS FOR LEAVE TO AMEND DO NO COMPLY WITH RULE 15(A)...............................................................................................22

    B.    PLAINTIFFS' DESCRIPTION OF CW 1-5 IS INSUFFICIENT .......................................25

    C.    ANY AMENDMENT WOULD BE FUTILE ................................................................27

POINT IV THE COMPLAINT DOES NOT STATE CONTROL PERSON CLAIMS......................................28

CONCLUSION ..................................................................................................................30

## TABLE OF AUTHORITIES

FEDERAL CASES

*ACA Fin. Guar. Corp. v. Advest, Inc.*
    512 F.3d 46 (1st Cir. 2008)..................................................................................10, 24

*Amalgamated Bank v. Coca Cola,*
    No. Civ. A. 1:05-CV-1226,
    2006 WL 2818973 (N.D. Ga. Sep. 29, 2006) .........................................................17

*Beaver County Ret. Bd. v. LCA-Vision, Inc.,*
    No. 1:07-CV-750,
    2009 WL 806714 (S.D. Ohio Mar. 25, 2009)...................................................15, 21

*Begala v. PNC Bank, Ohio Nat'l Ass'n,*
    214 F.3d 776 (6th Cir. 2000), *cert. denied,*
    531 U.S. 1145 (2001)........................................................................................ 22-23

*Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.,*
    497 F.3d 546 (5th Cir. 2007) ...............................................................................9, 27

*Coble v. Broadvision, Inc.*
    No. C 01-01969,
    2002 WL 31093589 (N.D. Cal. Sept. 11, 2002) .....................................................18

*Cozzarelli v. Inspire Pharm. Inc.,*
    549 F.3d 618 (4th Cir. 2008) ...........................................................................10, 23

*Crowell GST Trust v. Possis Med., Inc.,*
    519 F.3d 778 (8th Cir. 2008) ....................................................................................9

*D.E. & J. Ltd. P'Ship v. Conaway,*
    133 Fed. Appx. 994 (6th Cir. 2005)...................................................................23, 28

*Darby v. Century Bus. Serv., Inc.,*
    96 Fed. Appx,. 277, 286 (6th Cir. 2004).............................................................23, 27

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005)....................................................................................................7

*ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009) ....................................................................................10

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
    560 F. Supp. 2d 1221 (M.D. Fla. 2008).................................................................18

*Elam v. Neidorff*,
　　544 F.3d 921 (8th Cir. 2008) ...................................................................9

*Eminence Capital LLC v. Aspeon, Inc.*,
　　316 F.3d 1048 (9th Cir. 2003) ...............................................................24

*Evans v. Pearson Enters., Inc.*,
　　434 F.3d 839 (6th Cir. 2006) .................................................................22

*Fidel v. Farley*,
　　392 F.3d 220 (6th Cir. 2004) ........................................................... 22-23

*Fla. State Bd. of Admin v. Green Tree Fin. Corp.*,
　　270 F.3d 645 (8th Cir. 2001) ...................................................................9

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
　　No. 08-10414,
　　2009 WL 930055 (5th Cir. April 8, 2009)...............................................9

*Helwig v. Vencor, Inc.*,
　　251 F.3d (6th Cir. 2001) ........................................................................18

*Higginbotham v. Baxter Int'l, Inc.*,
　　495 F.3d 753 (7th Cir. 2007) .................................................................25

*Huddleston v. Herman & MacLean*,
　　640 F.2d 534 (5th Cir. 1981) .................................................................20

*In re Alpharma Inc. Sec. Litig.*,
　　372 F.3d 137 (3d Cir. 2004) ..................................................................22

*In re Am. Serv. Group*,
　　No. 06-0323,
　　2009 U.S. Dist. LEXIS 28237 (M.D. Tenn. Mar. 30, 2009) ............ 12-13

*In re Avon Products Inc. Sec. Litig.*,
　　No. 05 Civ. 6803(LAK)(MHD),
　　2009 WL 848017 (S.D.N.Y. Feb. 23, 2009)...........................................19

*In re Berlin Fin. Ltd. v. MPW Indus. Servs. Group, Inc.*,
　　No. 2:07-CV-442,
　　2008 WL 161309 (S.D. Ohio Jan. 15, 2008).........................................27

*In re Ceridian Corp. Sec. Litig.*,
　　542 F.3d 240 (8th Cir. 2008) ......................................................... 8-9, 25

*In re Cerner Corp.*,
　　425 F.3d 1079 (8th Cir. 2005) .................................................................9

*In re FirstEnergy Corp. Sec. Litig.*,
    316 F. Supp. 2d 581 (N.D. Ohio 2004) .................................................................. 20-21

*In re Gander Mountain Co. Sec. Litig.*,
    No. Civ. 05-183DWFAJB,
    2006 WL 140690 (D. Minn. Jan. 17, 2006)...........................................................15

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
    436 F. Supp. 2d 873 (N.D. Ohio 2006) ..................................................................26

*In re Hayes Lemmerz Int'l, Inc.*,
    271 F. Supp. 2d 1007 (E.D. Mich. 2003) ...............................................................29

*In re Huffy Corp. Sec. Litig.*,
    577 F. Supp. 2d 968 (S.D. Ohio 2008) ..............................................................13, 17

*In re Hutchinson Tech., Inc. Sec. Litig.*,
    536 F.3d 952 (8th Cir. 2008) ...............................................................................27

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007)........................................................................26

*In re Leapfrog Enters., Inc. Sec. Litig.*,
    527 F. Supp. 2d 1033 (N.D. Cal. 2007).................................................................26

*In re Nash Finch Co.*,
    323 F.Supp.2d 956 (D. Minn. 2004).........................................................................9

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006) ...................................................................17

*In re NVE Corp. Sec. Litig.*,
    527 F.3d 749 (8th Cir. 2008) ...............................................................................27

*In re Skechers U.S.A., Inc. Sec. Litig.*,
    273 Fed. Appx. 626 (9th Cir. 2008).......................................................................25

*In re Suprema Specialists, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ................................................................................28

*In re Tibco Software, Inc.*,
    No. C 05-2146,
    2006 WL 1469654 (N.D. Cal. May 25, 2006).......................................................18

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
    537 F.3d 527 (5th Cir. 2008) .............................................................................9, 25

iv

*Indiana State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v.*
    *Omnicare, Inc.,*
        527 F. Supp. 2d 698 (E.D. Ky. 2007) ................................................................................26

*J&R Mktg. v. General Motors Corp.,*
    549 F.3d 384 (6th Cir. 2008) ..............................................................................................20

*Ley v. Visteon,*
    543 F.3d 801 (6th Cir. 2008) .......................................................................................*passim*

*Lormand v. US Unwired, Inc.,*
    No. 07-30106,
    2009 WL 941505 (5th Cir. Apr. 9, 2009) ................................................................ 13-14, 21

*Malin v. XL Capital, Ltd.,*
    No. 07-3749-CV,
    2009 WL 481897 (2d Cir. Feb. 26, 2009) .....................................................................23, 26

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
    540 F.3d 1049 (9th Cir. 2008) ....................................................................................10, 27

*Miller v. Champion Enters., Inc.,*
    346 F.3d 660 (6th Cir. 2003) .......................................................................................*passim*

*Mississippi Public Employees' Retirement System v. Boston Scientific Corp.,*
    523 F.3d 75 (1st Cir. 2008) .................................................................................... 11-12

*Mizzaro v. Home Depot, Inc.,*
    544 F.3d 1230 (11th Cir. 2008) ...........................................................................................10

*New Jersey Carpenters Pension & Annuity Fund v. Biogen IDEC Inc.,*
    537 F.3d 35 (1st Cir. 2008) ..................................................................................................25

*Payne v. Deluca,*
    433 F. Supp. 2d 547 (W.D. Pa. 2006).................................................................................17

*PR Diamonds Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) .................................................................................22-23, 28-29

*Pugh v. Tribune Co.,*
    521 F.3d 686 (7th Cir. 2008) ........................................................................................10, 24

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004) ................................................................................................20

*Sinay v. Lamson & Sessions Co.,*
    948 F.2d 1037 (6th Cir. 1991) ............................................................................................17

*Stambaugh v. Corrpro Cos., Inc.*,
   116 Fed. Appx. 592 (6th Cir. 2004)......................................................................22

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   128 S. Ct. 761 (2008)........................................................................................7

*Teachers' Ret. Sys. of Louisiana v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) .............................................................................27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499 (2007)............................................................*passim*

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
   336 F.3d 375 (5th Cir. 2003) .............................................................................23

*Zaluski v. United Am. Health Care Corp.*,
   527 F.3d 564 (6th Cir. 2008) ........................................................................15, 20

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................10, 25

**STATUTES AND RULES**

Federal Rules of Civil Procedure 15(a) and 7(b).................................................. 22-24

Private Securities Litigation Reform Act of 1995
   15 U.S.C. §78u-4, *et seq* (2009) ..................................................................*passim*

Securities Exchange Act of 1934 Rule 10b-5,
   17 C.F.R. § 240.10b-5 (2009)..............................................................................23

**OTHER AUTHORITIES**

H.R. Conf. Rep. 104-369 (1995) .................................................................................19

PRELIMINARY STATEMENT

In August 2007, following extensive briefing and oral argument, this Court granted the motion of Burns and Richter to dismiss the Complaint in this action. Its decision, 525 F. Supp. 2d 922 (the "August 2007 Decision"), summarized the Complaint's allegations, the elements required to plead securities fraud claims and the heightened pleading standards applicable to such claims, under which

> plaintiff must provide specific facts in support of the allegations of fraud, as well as provide support for allegations of the required state of mind[,] facts creating a strong inference of scienter. 525 F. Supp. 2d at 927.

As noted in our April 1, 2009 Memorandum ("Defs. Mem.") at p. 1 n.2, two inadvertent references in the August 2007 Decision mischaracterized the *Tellabs* pleading standards as requiring inferences of scienter to be "more plausible and powerful than competing inferences of defendants' state of mind" or "the most plausible of competing inferences." Apparently concerned that the August 2007 Decision might have applied a pleading standard at odds with *Tellabs*, the Sixth Circuit remanded this matter for consideration of "whether Plaintiffs have made allegations that support an inference of scienter that is 'at least as compelling' as competing nonculpable inferences." 547 F.3d 564, 571. Following that remand, this Court understandably directed Defendants to renew their motion so that the parties could file new and updated briefs addressing the relevant issues.

If, as we believe to be the case, the August 2007 Decision did not in any way apply an erroneous "'most plausible' pleading standard . . . at odds with *Tellabs*" in dismissing the Complaint,[1] the only reason not to dismiss the Complaint now would be if statutes, regulations or

---

[1]  Other portions of the August 2007 Decision correctly set forth the standards of *Tellabs,* describing the inference necessary for a complaint to survive as one "'cogent and at least as compelling as any opposing inference one could draw from the facts alleged,'" 525 F. Supp. 2d at 928 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ___, 127 S. Ct. 2499, 2510 (2007)), and correctly frame the question raised by *Tellabs* as whether "'a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference'" 525 F. Supp. 2d at 932 (quoting *Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2511).

controlling decisions issued since August 2007 changed or substantially modified the applicable pleading standards, or if the record before this Court changed in some significant way. As shown in Defendants' moving memorandum, and as further shown below, decisions rendered since August 2007 are consistent with the analysis and conclusions of this Court on Defendants' initial motion to dismiss. Fairly read, those decisions show that, subsequent to *Tellabs,* Courts of Appeals consistently affirm dismissals with prejudice of complaints substantially identical to the Complaint here and District Courts routinely dismiss them.

The debate reflected by the respective memoranda on this renewed motion centers on whether there are particularized facts alleged in the Complaint, from which a reasonable person would infer that it is at least as compelling as not that Defendants knew, or recklessly ignored facts from which they should have known, that certain statements were materially false or misleading when made. Significantly, Plaintiffs do not question the accuracy of the August 2007 Decision's description of the "Background" of this action (525 F. Supp. 2d at 925-27), the claims asserted (*id.* at 928, 932-33), or the "Specific Allegations," as involving: "1. Overly Optimistic Forecasts;" "2. Overstatement of Dana's Deferred Tax Asset;" "3. Accounting Irregularities Preceding the Restatement;" and "4. Dana's Inadequate Internal Controls." *Id.* at 928-29. Thus, unless that August 2007 Decision incorrectly applied the pleading standards of *Tellabs,* Defendants' renewed motion should again be granted.

Plaintiffs cannot point to changes in the controlling statutory, regulatory or decisional law, or in the record before the Court. Moreover, decisions such as *Ley v. Visteon*, 543 F.3d 801 (6th Cir. 2008), as well as numerous other decisions issued since *Tellabs* overwhelmingly validate and reinforce the correctness of the August 2007 Decision. Neither Plaintiffs' fifty-page Opposition memorandum ("Opp.") nor the seventy or so decisions it cites – some old and some new, some cited in Defendants' moving memorandum and some not – can overcome the holdings of the decisions on which Defendants rely.

The fact is that these decisions upon which Defendants rely, particularly decisions of Courts of Appeals issued since *Tellabs,* apply its principles as well as the pleading standards of

the PSLRA to complaints strikingly similar to the Complaint here. Plaintiffs seek to brush those decisions aside, either by ignoring them or citing them without any meaningful analysis.

In summary, since August 2007, courts called upon to resolve issues raised by motions seeking dismissal of PSLRA complaints similar to that at issue here, have developed a relatively consistent body of judicial precedent reinforcing the correctness of this Court's initial decision. As a result, the Complaint should again be dismissed with prejudice.

ARGUMENT

POINT I

THE COMPLAINT'S SCIENTER ALLEGATIONS
ARE LEGALLY INSUFFICIENT

The Complaint's allegations, viewed collectively, do not support a strong inference of scienter under *Tellabs*. Indeed, as previously noted, the August 2007 Decision properly frames the ultimate question here as whether "a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference." 535 F. Supp. 2d at 932 (quoting *Tellabs*, 551 U.S. at ___, 127 S. Ct. at 2511). This Court evaluated the few particularized factual allegations of the Complaint as to the Restatement, Sarbanes-Oxley certifications, Burns' and Richter's executive positions, and reliance upon unspecified "tracker" and "SAD" reports, following which it correctly concluded that, despite Plaintiffs' speculative assertions, those allegations, viewed collectively, did not support an inference of scienter "at least as strong as any opposing inference." *Id.* As the Court stated: "an assessment of all the factors, coupled with the absence of specific facts in the context of otherwise conclusory allegations, persuades me that plaintiff has failed adequately to allege scienter." 535 F. Supp. 2d at 932.

### A.   AS TO THE CONTENTIONS OF THE PARTIES

Throughout these proceedings, Defendants have demonstrated that the Complaint is nothing more than a classic example of fraud by hindsight – an attempt to plead securities fraud solely by virtue of the fact that, as relevant here, a public company has restated its financial

3

results, written off a major asset, discovered material weaknesses in its internal controls and failed to meet its earnings projections. The particularized facts alleged in the Complaint give rise to no inference, let alone a strong, cogent and compelling one, that Defendants participated in, or were even aware of, fraudulent misconduct at Dana.

*Tellabs* repeatedly emphasizes that "Congress did not merely require plaintiffs to 'provide a factual basis for [their] scienter allegations,' . . . *i.e.*, to allege facts from which an inference of scienter rationally *could* be drawn. Instead, Congress required plaintiffs to plead with particularity facts that give rise to a 'strong' – *i.e.*, a powerful or cogent – inference." *Tellabs,* 551 U.S. at ___, 127 S.Ct. at 2510 (citations omitted). Here, the Complaint provides no factual foundation for its conclusory scienter allegations, let alone facts supporting a "powerful or cogent" inference.

As shown in Defendants' moving memorandum (pp. 10-25):

- **The Complaint's Allegations As To Dana's Restatement Do Not Support Fraud** – It is settled law both before and after *Tellabs* that PSLRA claims cannot be based primarily upon restatements or disclosures of other negative information at the close of the Class Period.

- **The Lack Of Trading By Insiders Weighs Against Scienter** – *Tellabs,* although noting that the absence of insider trading does not "preclude a finding" of scienter, reaffirmed the fact that "personal financial gain may weigh heavily in favor of a scienter inference." 551 U.S. at ___, 127 S.Ct. at 2503. The inability of the Complaint to allege insider trading undermines an inference of scienter.

- **The Complaint's Allegations As To Insufficiently Particularized Reports And Meetings Do Not Support Scienter Here** – Plaintiffs simply ignore the tremendous weight of pre- and post-*Tellabs* authority holding that allegations substantially identical to those advanced here insufficient under the PSLRA.

- **The Complaint's Allegations As To The Temporal Proximity Between The Alleged Misstatements And Corrective Disclosures Do Not Support Scienter Here** – The Sixth Circuit has squarely held that this factor does not support an inference of scienter.

- **The Complaint's Allegations As To Defendants' Status As Senior Executives Of Dana Do Not Support Scienter Here** – Corporate management's general awareness of the day-to-day workings of their company's business does not

support scienter, absent sufficiently particularized facts, not present here, illustrating defendants' knowledge of or participation in the alleged wrongdoing.

- **The Complaint's Allegations As To Defendants' Compensation Do Not Support Scienter Here** – Following *Tellabs*, the Sixth Circuit reaffirmed the universally-recognized principle that courts must distinguish motives common to corporations and executives generally from motives to commit fraud. *See Ley*, 543 F.3d at 813. The Complaint's single allegation in this regard, that "[a] substantial percentage of defendants' compensation was based upon Dana's reported net income and earnings per share" is legally insufficient.

- **The Complaint's Allegations As To SOX Certifications Do Not Support Scienter Here** – Every Circuit to examine this issue has held that SOX certifications do not support a scienter inference absent particularized facts not present here.

- **The Complaint's Allegations As To The Magnitude Of The Restatement And The Valuation Allowance Do Not Support Scienter Here** – Magnitude does not give rise to an inference of fraudulent intent because Section 10(b) prohibits fraud, not accounting malpractice.

- **The Complaint's Allegations As To Richter's Retirement and the Pending SEC Investigation Do Not Support Scienter Here** – Pre and post-*Tellabs* cases universally support this argument.

And, in addition, none of the foregoing, viewed collectively and in the totality of the circumstances, supports scienter here. The Complaint fails to allege particularized facts from which a reasonable person would infer that it is at least as likely as not that Defendants either orchestrated any alleged fraud or otherwise were reckless in not becoming aware of information indicating that statements properly attributable to them were false when made. As such, not only does it fall far below the "cogent" inference mandated by *Tellabs*, it does not raise any inference of scienter whatsoever and, in accordance with the weight of authority, the Complaint should be dismissed with prejudice.

The authorities discussed in the Opposition fail to support Plaintiffs' contention that the Complaint's scienter allegations meet the stringent requirements of the PSLRA. Faced with the weight of unfavorable post-*Tellabs* authority, the Opposition frequently limits its comments to

snippets of dictum designed to make it appear as if decisions adverse to Plaintiffs' position instead strongly favor it, asserting that, while allegations as to restatements, SOX certifications, SEC investigations do not amount to fraud "without more," the Complaint here alleges that "more."

More specifically, Plaintiffs implicitly recognize that the analysis and authorities set forth in Defendants' moving memorandum (*e.g.*, pp. 14-23) show the legal insufficiency, for purposes of pleading scienter, of the Complaint's allegations as to (i) the magnitude and temporal proximity of Dana's post-Class Period restatement and the write-off of its deferred tax assets (Opp. at 30-34); (ii) the disclosure of material weaknesses in its internal controls and the resulting withdrawal of Defendants' SOX certifications (Opp. at 35-36); (iii) the so-called "expected benefits" to Dana and Defendants from the alleged wrongdoing (Opp. at 26-27); (iv) the resignation of Richter as CFO (Opp. at 34-35); and (iv) the pending SEC investigation (Opp. at 35). Thus, in a desperate effort to avoid dismissal, Plaintiffs repeatedly return to the baseless allegation that Burns and Richter knew, or recklessly disregarded facts from which they should have known, that various internal reports or information received from other sources was inconsistent with their statements during the Class Period.

Whether proper allegations as to the existence of such inconsistent information and the Defendants' knowledge of or access to it might meet the pleading statements applicable here (despite the absence of allegations that Defendants sold any Dana shares, which further weakens Plaintiffs' ability to plead scienter) need not be addressed on this motion. The simple fact is that the Complaint provides no factual basis to infer that any such information inconsistent with Defendants' statements exists, either in internal reports or otherwise. As a result, viewed collectively and in the totality of the circumstances reflected by the Complaint's other

allegations, no strong inference of scienter has been adequately alleged and the Complaint should be dismissed with prejudice.

### B.   POST-*TELLABS* JURISPRUDENCE REINFORCES THE CORRECTNESS OF THE AUGUST 2007 DECISION

Congress enacted the PSLRA to reduce the volume of abusive securities litigation filed by class plaintiffs. Since 1995, the Supreme Court has issued a number of decisions concerning the standards applicable to claims of securities fraud. These decisions have further implemented the objective of Congress to reduce the amount of meritless private securities litigation. *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008); *Tellabs*, 551 U.S. 308, 127 S. Ct. 2499; *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).

A review of numerous decisions, particularly those of the Courts of Appeals, issued following the August 2007 Decision, demonstrates the increasing trend of affirming dismissals with prejudice of PSLRA complaints, except where those complaints sufficiently plead particularized facts supportive of scienter.

### 1.   FOLLOWING *TELLABS,* DISMISSALS OF COMPLAINTS SUBSTANTIALLY INDISTINGUISHABLE FROM THE COMPLAINT HERE HAVE BEEN REGULARLY AFFIRMED

The Complaint here asserts run-of-the-mill restatement/fraud by hindsight claims against Burns and Richter, *i.e.*, Dana's financial results declined, it issued a restatement, it wrote off a large asset, and its internal controls had material weaknesses. Following *Tellabs*, these types of allegations have uniformly been rejected.

In *Ley v. Visteon*, 543 F.3d 801, the Sixth Circuit affirmed the dismissal of a complaint strikingly similar to the Complaint here. Like Dana, Visteon was a global supplier of products to the automotive industry. In January 2005, Visteon reported its preliminary fourth quarter and year end results for 2004, indicating a significant loss. It also disclosed "$108 million in accounting errors which understated net losses by in excess of $60 million." *Id.* at 805. Like Dana, Visteon had to restate certain of its financials.

The Sixth Circuit, reaffirming the *Helwig* factors as relevant to its scienter analysis, examined the complaint in the context of those factors. Plaintiffs in *Ley* made arguments virtually indistinguishable from Plaintiffs' arguments here, pointing to: (1) accounting improprieties; (2) SOX certifications; (3) the "nature and magnitude" of Visteon's wrongdoing; (4) its intentionally confusing disclosures; and (5) defendants' motivation to avoid defaulting on existing notes by raising additional capital through an offering of new notes. *Ley*, 543 F.3d at 812-13. In affirming the dismissal with prejudice, the Sixth Circuit held that "[p]laintiffs' allegations, taken together and viewed collectively, fail to adequately plead a strong inference of scienter on the part of Visteon and the Individual Defendants." *Id.* at 814.

Numerous other Circuits have reached conclusions consistent with those reached in *Ley*. For example, in *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240 (8th Cir. 2008), the PSLRA complaint at issue was based upon Ceridian's announcement of multiple amendments and restatements of its financial statements. Plaintiffs alleged that Ceridian's CEO, CFO and controller engaged in "a massive accounting scheme to inflate Ceridian's financial results and its stock price by exploiting a weak or corrupt system of internal controls . . . ." *Id.* at 245. They asserted that the following factors – substantially similar to those alleged in the Complaint here – supported an inference of scienter: (1) the number and volume of accounting improprieties; (2) defendants' year-end bonuses based primarily on earnings and revenue; (3) insider stock sales (a factor not alleged in the Complaint here); (4) information from confidential witnesses that certain defendants were personally responsible for the company's accounting policies and procedures; (5) SOX certifications; and (6) an ongoing SEC investigation. *Id.* at 246-49. The Eighth Circuit held that even when "[v]iewed collectively, the complaint's allegations fail to state with particularity facts that give rise to a strong and cogent inference that any of the defendants acted with intent to defraud or were severely reckless. More compelling is the opposing inference that

Ceridian and the controlling officer defendants *should have known* about the many accounting errors . . . . That is a viable claim of negligence, but not of fraud." *Id.* at 249.[2]

See also *Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 783 (8th Cir. 2008) (affirming dismissal of complaint for failure to plead strong inference of scienter despite references to anonymous sources and alleged insider stock sales); *Elam v. Neidorff*, 544 F.3d 921, 928-30 (8th Cir. 2008) (affirming dismissal of complaint for failure to plead a strong inference of scienter despite sales of stock by insiders, defendants' position and access to information, and temporal proximity).

Similarly, in *Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546 (5th Cir. 2007), a PSLRA complaint alleged claims arising from statements by the individual defendants expressing confidence in the company that soon were followed by a restatement of its financial results. In affirming the dismissal of the complaint, the Fifth Circuit held that the following factors, viewed collectively, did not support a strong inference of scienter: (1) significant accounting violations; (2) confidential witness accounts that individual defendants ignored the accounting problems at the company; (3) trading by insiders; and (4) SOX certifications. *Id.* at 552-55; *see also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, No. 08-10414, 2009 WL 930055, at *9 (5th Cir. April 8, 2009) (affirming dismissal of a PSLRA complaint on scienter grounds that alleged that CEO must have known of improprieties due to timing of events and his position); *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527 (5th Cir. 2008) (reversing denial of motion to dismiss and remanding with instructions to dismiss complaint on scienter grounds, despite allegations of

---

[2]   Plaintiffs' reliance on *Fla. State Bd. of Admin v. Green Tree Fin. Corp.*, 270 F.3d 645, 665 (8th Cir. 2001) (Opp. at 26, 28, 32), a pre-*Tellabs* decision, is misplaced. Since that decision was rendered, *Ceridian*, 542 F.3d at 247, as well as *In re Cerner Corp.*, 425 F.3d 1079, 1085 (8th Cir. 2005), and *In re Nash Finch Co.*, 323 F.Supp.2d 956, 963 (D. Minn. 2004), have noted that *Green Tree* was an "unusual case" where defendant reaped an "unusual benefit."

sales by insiders, confidential witness accounts that problems were widely known throughout the company, and defendants' receipt of monthly reports and attendance at meetings).

In *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009), the Ninth Circuit affirmed the dismissal of a PSLRA complaint for failure to plead a strong inference of scienter. There, following its disclosure of a variety of accounting errors, Digimarc issued a restatement. Plaintiffs sought to raise a strong inference of scienter through: (1) statements of six confidential witnesses; (2) the restatement itself; (3) resignations of Digimarc's CFO, controllers and auditing firm; (4) SOX certifications; (5) executive compensation packages tied to financial performance; (6) sales by insiders; and (7) defendants' motivation to complete a private placement. *Id.* at 992. The Ninth Circuit held that "[a]lthough the allegations in this case are legion, even together they are not as cogent and compelling as a plausible alternative inference – namely, that although Digimarc was experiencing problems controlling and updating its accounting and inventory tracking practices, there was no specific intent to fabricate the accounting misstatements at issue here." *Id.* at 1007; *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066-1068 (9th Cir. 2008) (affirming dismissal of PSLRA complaint for failure to plead scienter despite allegations of sales by insiders and the presence of a management information system that should have alerted defendants to declining enrollment).

In addition to the foregoing, numerous other decisions have affirmed the dismissals of PSLRA complaints with prejudice, including *ACA Fin. Guar. Corp. v. Advest, Inc.* 512 F.3d 46 (1st Cir. 2008) (affirming dismissal of PSLRA complaint for failure to plead scienter); *ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) (allegations that defendant sought to inflate its stock price to reduce cost of acquisition of another institution not indicative of a strong inference of scienter); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618 (4th Cir. 2008) (failure to plead strong inference of scienter); *Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) (failure to plead strong inference of scienter despite allegations that defendants knew of lax internal controls, engaged in insider trading, and received bonuses tied to performance); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008) (allegations

relating to SEC inquiry and to information provided by confidential witnesses insufficient to support strong inference of scienter).

These decisions as well as numerous pre-*Tellabs* decisions cited in Defendants' moving memorandum, unequivocally illustrate that class plaintiffs cannot merely point to neutral facts such as restatements, failures to meet projections, SOX certifications, material weakness of internal controls and the like, and combine them with unsupported, conclusory fraud by hindsight allegations to the effect that when Defendants made positive statements during the Class Period they knew certain negative information not disclosed until the end of the Class Period. Defendants' renewed motion should be granted because the Complaint here alleges no particularized facts supporting a strong inference that, at any point during the Class Period, Defendants knew, or recklessly disregarded facts from which they should have known, of inaccuracies in Dana's financial statements, material weaknesses in Dana's internal controls, the need to write off some or all of its deferred tax assets, or that its guidance or projections were overstated. Put simply, the Complaint here fails to meet the stringent burden for pleading scienter, and should be dismissed with prejudice.

## 2.   COMPLAINTS THAT HAVE AVOIDED DISMISSAL SINCE *TELLABS* ALLEGE PARTICULARIZED FACTS OR OTHERWISE INVOLVE CIRCUMSTANCES HAVING NO PARALLEL HERE

Plaintiffs cannot, as here, cobble together a sufficient securities fraud complaint merely by alleging that members of senior management "should have known" of subsequently disclosed negative information primarily because of the positions they held or the purported existence of unspecified internal company reports inconsistent with their public statements. Only complaints pleading particularized facts supporting defendants' knowledge that their statements were false when made, or their reckless indifference to information from which they should have known thereof, can avoid dismissal.

Plaintiffs rely on *Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*, 523 F.3d 75 (1st Cir. 2008) (Opp. at 25), where the First Circuit analyzed a complaint

alleging that executives of a medical device manufacturer had withheld material information about problems with a coronary stent recalled by the FDA. Plaintiffs there alleged that defendants knew of adverse reports from physicians in Europe and in the U.S. regarding the stent and that, even though they had instituted a manufacturing change in the stents in an attempt to cure the problems, they did not disclose those problems until belatedly announcing that the company would voluntarily recall the defective stents once it built up an inventory of new stents. Prior to announcing that recall, defendants had sold significant shares of company stock. In holding that the complaint sufficiently pled a strong inference of scienter, the court stated that "[t]his is not the classic fraud by hindsight case where a plaintiff alleges that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly." *Id.* at 91. It concluded that the complaint alleged particularized facts necessary to show that the individual defendants, including one who was the "point person" on the stents, had knowledge of problems with the stent prior to disclosure of those problems in the company's public filings. *Id.* at 91-92.

Unlike Boston Scientific, Dana is a large diverse corporation that, throughout the Class Period, had tens of thousands of employees in 116 major facilities in 28 different countries. (Paccione Dec. Ex. B at 3). Absent the pleading of particularized facts, no strong inference properly may be drawn that, for example, Burns or Richter either received and reviewed reports detailing the negative performance of a few individual plants or that the performance of a few plants could reasonably be viewed as reflective of Dana's performance as a whole, such that certain Dana financial statements in 2004 and 2005 were overstated, that its internal controls during such period had material weaknesses, or that its guidance, even as lowered, should have been withdrawn. Similarly, no inference whatsoever can be drawn that Dana's decision to take a valuation allowance against its deferred tax assets in the third quarter of 2005 should have instead been a restatement reached at some earlier point during the Class Period.

Plaintiffs cite *In re Am. Serv. Group*, No. 06-0323, 2009 U.S. Dist. LEXIS 28237 (M.D. Tenn. Mar. 30, 2009), to support their argument that "anonymous sources contribute to factors

giving rise to inference of scienter, and the naming of such sources [is] not required at this stage of litigation." Opp. at 24. But the Complaint here does not refer to or otherwise rely upon any confidential sources (as noted below, references to CW 1-5 in the Opposition cannot be given any weight). Moreover, as *Am. Serv. Group* emphasized, "ASG is a small, close-knit corporate family where executive officers met and shared detailed information." *Am. Serv. Group*, 2009 U.S. Dist. LEXIS 28237, at *146. Here, on the other hand, Dana is a worldwide corporation with tens of thousands of employees working in 116 major facilities in 28 different countries. Paccione Dec. Ex. B at 3. Finally, the scienter analysis in *Am. Serv. Group* obviously was influenced by the fact that there, the individual defendants "liquidated more than 90% of their stock holdings during the Class Period but had previously never sold any of it." 2009 U.S. Dist. LEXIS 28237, at *136.[3]

Recently, in *Lormand v. US Unwired, Inc.*, No. 07-30106, 2009 WL 941505 (5th Cir. Apr. 9, 2009), the court concluded that a complaint adequately pleaded scienter. The complaint quoted and referenced a host of internal communications replete with statements by defendants contradicting the rosy pronouncements they issued to the public and predicting financial ruin for the company: "Contrary to their public statements . . . [defendants] contemporaneously but privately admitted repeatedly, as quoted and referenced in the pleadings, that US Unwired's management disapproved and strongly protested" the company's affiliation with its partner

---

[3]  Plaintiffs' references to *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968 (S.D. Ohio 2008) (Opp. at 18, 21, 25, 28, 30 n.16, 38-39), are disingenuous and inapposite. Among other things, the fact that defendants in that case were senior executives does not support any inference of scienter here. In citing *Huffy* to support their assertion to the contrary (Burns and Richter were "at the pinnacle of Dana's corporate structure [which] bolsters the strong inference of their access and knowledge" (Opp. at 25)), Plaintiffs ignore the fact that the comment in *Huffy* was related to major corporate transactions "central" to the company's function. 577 F. Supp. 2d at 1000. Likewise, contrary to Plaintiffs' contention that *Huffy* "reject[ed] defendants' concrete and personal [benefit] argument" (Opp. at 28), the court merely stated that "the absence of [] a benefit will not, in and of itself, prevent this Court from concluding that the Plaintiffs have met their burden of pleading scienter." 577 F. Supp. 2d at 991.

telecommunications company. *Id.* at \*21. "Most importantly, [one defendant] drafted a long memo to the [company's] Board . . . in which he predicted in detail the detrimental impact . . . ." *Id.*  In contrast, the Complaint here does not set forth particularized facts as to any internal statements by Burns or Richter inconsistent with public statements related to Dana.  Instead, it rests on conclusory references to Burns' and Richter's supposed access to purported monthly and weekly reports and attendance at meetings.  Such allegations are not sufficient.

*       *       *

For the reasons shown in Defendants' moving memorandum and herein, a more compelling inference from the facts alleged here is that Defendants had a reasonable, good faith belief that all of their statements as to Dana issued during the Class Period were materially true when made, based upon information known, or that reasonably could have been known, to them at the time.  In any event, even if the Complaint could be read to support an inference that they should have become aware during the Class Period of the subsequently disclosed problems at Dana, that inference might, at most, support claims of mismanagement, poor judgment or oversight, or negligence, rather than claims of intentional or reckless fraudulent misconduct, as required by Section 10(b) of the Exchange Act.

### POINT II

#### DEFENDANTS' FORWARD LOOKING STATEMENTS ARE PROTECTED BY THE PSLRA'S SAFE HARBOR PROVISIONS

The August 2007 Decision did not reach issues related to the PSLRA's safe harbor provisions:

> This Court having determined plaintiff's complaint fails adequately to plead scienter, the applicability of the safe harbor provision is moot. Whether the statements were forward-looking or not, plaintiff has not shown they were made with intent to defraud or recklessness regarding the facts.

14

525 F. Supp. 2d at 933 n.2. While we believe that the Court will again conclude that the Complaint "fails adequately to plead scienter," and, as a result, grant this renewed motion, we show below that the safe harbor doctrine provides an independent basis for dismissal of so much thereof as relates to forward looking statements.

The PSLRA provides that "if a forward-looking statement is accompanied by meaningful cautionary language, [defendant] is immune from liability and state of mind is irrelevant." *Beaver County Ret. Bd. v. LCA-Vision, Inc.*, No. 1:07-CV-750, 2009 WL 806714, *10 (S.D. Ohio Mar. 25, 2009) (citing *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 672 (6th Cir. 2003)); *accord Zaluski v. United Am. Health Care Corp.*, 527 F.3d 564, 572 (6th Cir. 2008). If forward looking statements are not accompanied by meaningful cautionary language, a complaint can state a claim only if it alleges "specific facts giving rise to a strong inference that the misleading statement was made with actual knowledge that the statement was misleading." *Beaver County*, 2009 WL 806714, at *10 (citing *Miller*, 346 F.3d at 672-73); *see also In re Gander Mountain Co. Sec. Litig.*, No. Civ. 05-183DWFAJB, 2006 WL 140690, *13 (D. Minn. Jan. 17, 2006) (dismissing complaint with prejudice where plaintiffs failed to show projections were knowingly false); Defs. Mem. at 25-26.

As set forth in Defendants' moving memorandum, many of the statements about which Plaintiffs complain, such as forecasts of earnings per share, cost saving initiatives, steel costs and Dana's deferred tax asset, were forward looking. *See, e.g.,* ¶¶ 92, 96, 101, 111, 114, 115, 121, 123(a); *see also* 525 F. Supp. 2d at 928 ("Plaintiff alleges that during the Class period, Dana's prospects and earnings guidance were based on overly optimistic and unrealistic forecasts of future results.") Because all of the statements on these matters were accompanied by meaningful cautionary language, they fall within the safe harbor provisions of the PSLRA. 15 U.S.C. § 78u-5(c)(1). But even assuming that the cautionary language was not "meaningful," claims relating to forward looking statements still would be subject to dismissal because the Complaint fails to allege that Defendants made any such statements with actual knowledge that they were false. *Id.*; *see also* 525 F. Supp. 2d at 933 n.2; *Miller*, 346 F.3d at 672-73.

15

Plaintiffs concede, as they must, that "some" of Defendants' statements were "forward-looking." Opp. at 37. In an effort to sidestep the PSLRA's safe harbor provisions, they argue that (1) certain oral statements concerning EPS forecasts were not accompanied by cautionary language; (2) the cautionary language that accompanied those statements was insufficiently particularized; and (3) Defendants knew that certain of those statements were false when made. Opp. at 38. None of these arguments has any merit.

### A.     ALL OF THE ALLEGED FORWARD LOOKING STATEMENTS, WHETHER WRITTEN OR ORAL, WERE ACCOMPANIED BY CAUTIONARY LANGUAGE

Plaintiffs argue that certain forward looking statements, particularly those made during certain conference calls, were not accompanied by cautionary language. Opp. at 38. As detailed below, Plaintiffs are wrong because, as shown in the transcripts of those calls, as well as in press releases and public filings, investors were, in fact, cautioned that:

**Dana's earnings forecasts were subject to uncertainties concerning the future prices of steel and/or industry-wide steel surcharges and raw material price increases.** Paccione Dec. Ex. E at 5 [Feb. 25, 2004 10-K]; Ex. F at 20 [April 29, 2004 10-Q]; Ex. G at 23 [July 26, 2004 10-Q]; Ex. D at 5, 8, 16-17 [Mar. 9, 2005 10-K]; Ex. I at 19 [May 6, 2005 10-Q]; Ex. J at 23 [July 29, 2005 10-Q]; Ex. L [Apr. 21, 2004 Press Release]; Ex. M [July 21, 2004 Press Release]; Ex. N [Oct. 20, 2004 Press Release]; Ex. O [Feb. 23, 2005 Press Release]; Ex. P [Apr. 20, 2005 Press Release].

**Dana's earnings were subject to risks associated with lower demand, market share erosion and lower production.** Paccione Dec. Ex. E at 14 [Feb. 25, 2004 10-K]; Ex. F at 19 [Apr. 29, 2004 10-Q]; Ex. G at 23 [July 26, 2004 10-Q]; Ex. I at 19 [May 6, 2005 10-Q]; Ex. J at 21-22 [July 29, 2005 10-Q]; Ex. M [July 21, 2004 Press Release]; Ex. N [Oct. 20, 2004 Press Release]; Ex. O [Feb. 23, 2005 Press Release]; Ex. Q [July 20, 2005 Press Release].

**Relatively few of Dana's customers accounted for a large share of Dana's business and there was industry-wide pressure to decrease prices to stay competitive.** Paccione Dec. Ex. E at 5, 14 [Feb. 25, 2004 10-K]; Ex. F at 19 [Apr. 29, 2004 10-Q]; Ex. G at 23 [July 26, 2004

10-Q]; Ex. H at 24 [Nov. 9, 2004 10-Q]; Ex. D at 5, 8 [Mar. 9, 2005 10-K]; Ex. I at 19 [May 6, 2005 10-Q].

**Dana's realization of its deferred tax assets was not assured.** Paccione Dec. Ex. G at 10 [July 26, 2004 10-Q ]; Ex. H at 11 [Nov. 9, 2004 10-Q]; Ex. D at 9 [Mar. 9, 2005 10-K]; Ex. I at 10 [May 6, 2005 10-Q]; Ex. J at 11 [July 29, 2005 10-Q].[4]

Moreover, at the outset of each conference call during the Class Period, participants were cautioned that the call would include forward looking statements subject to cautionary language in Dana's SEC filings. Defs. Mem. at 28; Paccione Dec. Exs. R-W.  Courts recognize that cautionary language may be incorporated into oral or written statements containing forward looking information. *Miller*, 346 F.3d at 677-78 (letter with allegedly false statements contained meaningful cautionary language because it incorporated risk disclosures in company's Form 10-K); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.,* 423 F. Supp. 2d 364, 402 (S.D.N.Y. 2006) (incorporation of SEC filing into conference call sufficient for purposes of PSLRA's safe harbor provision); *Amalgamated Bank v. Coca Cola*, No. Civ. A. 1:05-CV-1226, 2006 WL 2818973, *6

---

[4]  Plaintiffs contend that statements regarding Dana's deferred tax assets are not within the protection of the safe harbor: "while one aspect of deferred tax assets concerns future events, the valuation allowance associated with these assets – the financial matrix plaintiffs allege defendants manipulated – is reported with Dana's historically reported financial statements which are specifically excluded from the safe harbor. 15 U.S.C. § 78u-5(b)(2)(A)."  Opp. at 38.  Plaintiffs' citation to *Huffy*, 577 F. Supp. 2d at 1016-17, to support their position is misplaced.  There, the court did not "hold" that statements as to deferred tax assets are excluded from the PSLRA's safe harbor provisions; in fact, it did not address whether those statements could fall within those provisions.  Significantly, Dana's decision to carry its deferred tax asset was based upon its belief that it would, in the future, generate U.S. based income against which it could apply its U.S. deferred tax assets. *See also Payne v. Deluca,* 433 F. Supp. 2d 547, 598 (W.D. Pa. 2006) (dismissing complaint under PSLRA's safe harbor provisions and noting that defendants warned about "the Company's ability to generate a sufficient level of future earnings to use its deferred tax assets").

In any event, even assuming the statutory safe harbor was not applicable to statements as to Dana's deferred tax assets, those statements would be protected by the bespeaks caution doctrine, under which optimistic predictions accompanied by cautionary language are not actionable. *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1040 (6th Cir. 1991) (reasonable investor would not be misled because there was sufficient cautionary language).

(N.D. Ga. Sept. 29, 2006) (warning at beginning of conference call and incorporation of SEC filing sufficient to trigger safe harbor provision); *In re Tibco Software, Inc.,* No. C 05-2146, 2006 WL 1469654, \*26 (N.D. Cal. May 25, 2006) (same).

Plaintiffs' contention that a warning concerning the risks associated with such statements must be given each time an oral forward looking statement is made (Opp. at 40-41) has been repeatedly rejected by decisions finding that cautionary language at the beginning of a call, such as that provided by Dana, is sufficient to trigger the protection of the safe harbor provisions. *See Coble v. Broadvision, Inc.*, No. C 01-01969, 2002 WL 31093589, \*9 (N.D. Cal. Sept. 11, 2002) (dismissing complaint; holding that a warning at the beginning of a conference call is sufficient because of the "absurdity of requiring a company to identify every forward-looking statement as such every time one is made, and repeating the warning with every forward-looking statement," during the course of the call); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 560 F. Supp. 2d 1221, 1236, 1238 (M.D. Fla. 2008) (dismissing claims based on forward-looking projections made during the course of a conference call because defendants orally cautioned participants at the beginning of the call).

**B.     DANA'S CAUTIONARY STATEMENTS WERE NOT BOILERPLATE OR INCOMPLETE**

Plaintiffs assert that Dana's cautionary language failed to satisfy the PSLRA's safe harbor provision because it was merely boilerplate and, in any event, Defendants did not disclose additional risk factors known to them.  According to Plaintiffs, Congress did not intend "boilerplate warnings" to suffice, noting that *Helwig* found that defendants' guidance regarding certain forward looking statements "was hardly even cautionary." Opp. at 41-42. In *Helwig v. Vencor, Inc.*, 251 F.3d, 540, 559 (6th Cir. 2001), which concerned the impact of health care legislation on defendants' business, the court contrasted the company's 1996 10-K – which warned investors about "proposals for healthcare reform and specifically warned that its projections could differ from actual results due to possible legislation, cost-containment measures, problems in state licensure, and difficulties in integrating acquired entities" – with its

1997 10-K, which "stated only that it could not predict the form, effect, or likelihood of any proposed legislation." Not surprisingly, the Court found that the 1997 10-K lacked sufficient cautionary language to satisfy the PSLRA.

Here, Dana's cautionary language was far more precise than the language criticized in *Helwig.* Specifically, as set forth above and in Defendants' moving memorandum, pp. 25-32, Dana warned that its predictions regarding future events might not prove accurate because certain factors could affect its business. Furthermore, those warnings changed as conditions changed. *See, e.g.,* Paccione Dec. Ex. D at 8 ("we are faced with increasing commodity costs that we may not be able to fully recover"); Ex. J at 23 (explaining that the future price of steel might come down based on the Tri-Cities index but the situation is "volatile and uncertain"); Ex. V (advising investors that we "can't count on" steel prices decreasing although certain indicators made Defendants "hopeful").

Even assuming that this cautionary language did not precisely identify the risks that did materialize, Dana's forward looking statements still would not be actionable. *In re Champion Enters., Inc. Sec. Litig.,* 144 F. Supp. 2d 848, 854, 862 (E.D. Mich. 2001), *aff'd,* 346 F.3d 660 (6th Cir. 2003) (although company did not warn of specific risk that materialized, Champion was "not obligated to foretell the future," and "need[ed] only warn of risks of similar significance to those that materialize"); *In re Avon Products Inc. Sec. Litig.,* No. 05 Civ. 6803(LAK)(MHD), 2009 WL 848017, *17 (S.D.N.Y. Feb. 23, 2009) (explaining that a warning is sufficient if it identifies important risks, not necessarily the risk that caused the forward looking statement to not come true.); H.R. Conf. Rep. 104-369, at 44 (1995) ("Failure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor.") In fact, courts routinely hold that warnings even less precise than Dana's are sufficient to trigger the PSLRA's safe harbor provisions. *See In re Keithley Instruments, Inc. Sec. Litig.,* 268 F. Supp. 2d 887, 905 (N.D. Ohio 2002) (dismissing complaint because defendant's "cautionary language warned explicitly that its expected sales and earnings were susceptible to 'cyclical' and 'volatile' customer demand"); *Avon Products,* 2009

19

WL 848017, at *18 (warnings regarding "general economic and business conditions in [company's] markets " found to be sufficient).

Finally, the Sixth Circuit distinguishes between "hard information," such as historical facts, and "soft information," which is mere opinion or prediction. *See Zaluski*, 527 F.3d at 572; *Ley*, 543 F.3d at 808; Defs. Mem. at 30. Many of the statements about which Plaintiffs complain are non-actionable statements of corporate optimism. *See*, e.g., ¶ 97 ("We're far from satisfied and continue to pursue greater focus, integration, and productivity . . . ;" ¶ 115 ("We expect that our accelerated cost reduction efforts will lead to improved performance . . . .") Plaintiffs may not assert claims based on these statements because "a vague generally optimistic statement [is] immaterial as a matter of law." *J&R Mktg. v. General Motors Corp.*, 549 F.3d 384, 396 (6th Cir. 2008).

### C.   PLAINTIFFS DO NOT ADEQUATELY PLEAD THAT DEFENDANTS WERE AWARE OF ANY RISKS THAT WERE NOT DISCLOSED

Although Plaintiffs admit that Dana warned investors and the public about the potential harm to its business from, among other things, increases in the price of steel, they complain that Defendants failed to disclose other information that was adversely affecting Dana. Opp. at 41. In support of their argument, they selectively quote from *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 596 (N.D. Ohio 2004), *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004), and *Huddleston v. Herman & MacLean*, 640 F.2d 534, 544 (5th Cir. 1981), while ignoring both the holdings of those cases or the context of the courts discussions underlying facts. In *Rombach*, the Second Circuit affirmed the dismissal of a securities fraud claim because plaintiffs failed to plead particularized facts sufficient to allege that defendants knew their financial projections were false when made. In *In re FirstEnergy*, a pre-*Tellabs* decision denying a motion to dismiss, the Court found that (a) many of defendants' forward looking statements were not accompanied by any cautionary language and (b) defendants' warnings, as to "the speed and nature of regulatory approvals," did not caution investors about deteriorating conditions at

nuclear power plants. 316 F. Supp. 2d at 596. *Huddleston,* a pre-PSLRA decision involving an appeal following a trial, has no relevant application here.

As previously discussed, the Complaint does not plead any particularized facts sufficient to support its allegations that Defendants were aware of negative information rendering their forward looking statements knowingly false when made. Mere conclusory allegations are insufficient to render forward looking statements actionable. *See Keithley,* 268 F. Supp. 2d at 905 (dismissing allegations based upon forward looking statements "despite [plaintiffs'] vague allegations of other problems" that were not disclosed).

The pleading standards necessary to remove forward looking statements from the PSLRA's safe harbor provisions were recently addressed in *US Unwired,* 2009 WL 941505, at **17, 23. There, plaintiffs attached emails and memoranda to the complaint supporting their allegations that defendants were aware of certain dangers when they made the statements in issue. Here, Plaintiffs offer only generic allegations that reports existed that would render forward looking statements knowingly false when made and fail to provide any factual basis supporting the existence of those reports, or whether Defendants actually received and reviewed them.

### D.    EVEN IF THE COMPLAINT ADEQUATELY PLEADED ACTUAL KNOWLEDGE, THE FORWARD LOOKING STATEMENTS STILL WOULD BE NON-ACTIONABLE

In the Sixth Circuit, meaningful cautionary language that accompanies forward looking statements provides absolute immunity. *Miller*, 346 F.3d at 672. Consequently, even assuming the Complaint adequately alleged Defendants' knew their statements were false when made, those statements still would not be actionable. *See Beaver County*, 2009 WL 806714, at *14 ("Plaintiff's allegation that Defendants had actual knowledge that consumer demand was slipping because of their access to patient statistics in the Mozart database does not save the claim because the existence of the meaningful cautionary statement renders the issuer's state of mind irrelevant.")

## POINT III

### THE COMPLAINT SHOULD BE DISMISSED
### WITH PREJUDICE AND WITHOUT LEAVE TO AMEND

The "PSLRA restricts the scope of Rule 15(a) in the context of securities litigation such that Plaintiffs have more limited ability to amend their complaint." *Fidel v. Farley*, 392 F.3d 220, 236 (6th Cir. 2004); *Stambaugh v. Corrpro Cos., Inc.*, 116 Fed. Appx. 592, 598 (6th Cir. 2004) (explaining that the PSLRA "increases the standard" plaintiffs must surmount to replead even if they properly follow Rule 15(a)); *Miller*, 346 F.3d at 692. This Court should not grant leave to amend here because: (1) Plaintiffs have not satisfied Rule 15(a) in seeking such leave; and (2) the information from confidential witnesses described in their Opposition, even if properly set forth in a proposed amended complaint, would not meet the pleading requirements of the PSLRA and, as a result, any amendment would be futile.

### A.    "OFF THE CUFF" REQUESTS FOR LEAVE
### TO AMEND DO NO COMPLY WITH RULE 15(A)

Plaintiffs seeking to amend complaints must file motions in compliance with Fed. R. Civ. P. 15(a). *See, e.g., Begala v. PNC Bank, Ohio Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001). Instead of doing so, Plaintiffs, at the end of their Opposition, merely request permission to replead "should the Court" dismiss the Complaint. Opp. at 47.

Plaintiffs' failure to file a motion to amend pursuant to Rule 15 is fatal to their attempt to amend at this time. *PR Diamonds Inc. v. Chandler*, 364 F.3d 671, 698-99 (6th Cir. 2004). To satisfy Rule 15(a), a plaintiff must provide grounds upon which leave to amend should be granted, otherwise the District Court is within its discretion in denying leave to amend. *See, e.g., Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) (affirming dismissal with prejudice; plaintiffs requested leave to amend in a single sentence without complying with Rule 7(b) by providing grounds or a proposed amended complaint); *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004) (affirming dismissal with prejudice where the "District Court

22

noted that plaintiffs failed to proffer any proposed amendment, let alone one that would satisfy the stringent pleading requirements which govern Rule 10b-5 claims").

Courts routinely deny leave to amend where, as here, plaintiffs fail to make a proper motion attaching the proposed amended complaint and/or setting forth details as to how the proposed amendment would cure the defects in the complaint previously filed. *See, e.g., Darby v. Century Bus. Serv., Inc.*, 96 Fed. Appx,. 277, 286 (6th Cir. 2004); *Fidel*, 392 F.3d at 236 (denying leave to amend where "plaintiffs did not file a motion to amend, but rather sought leave to amend in the final section of their response brief opposing the motion to dismiss"); *Begala*, 214 F.3d at 784 (same); *PR Diamonds*, 364 F.3d at 699 (failure to follow Rule 15(a); supports dismissal with prejudice); *D.E. & J. Ltd. P'Ship v. Conaway*, 133 Fed. Appx. 994 (6th Cir. 2005) (because plaintiff has not charged the company controlled by the individual defendants with a primary securities law violation "it may not bring a claim for recovery under this [controlling person] theory" (citing *PR Diamonds*, 364 F.3d at 696-98 and *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 554 n.11 (6th Cir. 1999)).

See also *Malin v. XL Capital, Ltd.*, No. 07-3749-CV, 2009 WL 481897, *2 (2d Cir. Feb. 26, 2009) (affirming denial of leave to amend because plaintiffs "did not proffer an amended pleading . . . and did not file a motion for leave to amend between the date the District Court granted the motion to dismiss (July 21, 2007) and entered judgment (August 2, 2007)"); *Cozzarelli*, 549 F.3d at 639 (affirming dismissal with prejudice because plaintiffs did not comply with Rule 15(a), in that they "never filed a motion for leave to amend before the district court, nor did they present the district court with a proposed amended complaint"); *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (affirming dismissal with prejudice where plaintiffs provided no reasons why leave should be granted: "[A] bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which the amendment is sought – does not constitute a motion within the contemplation of Rule 15(a)").

23

Dismissal with prejudice is particularly appropriate here because, since the August 2006 Complaint was filed, the parties have submitted multiple briefs on Defendants' initial and renewed motions to dismiss and on Plaintiffs' appeal to the Sixth Circuit. Despite their awareness of Defendants' views and, more importantly, of the views of this Court as to the pleading deficiencies in the Complaint, Plaintiffs, for some reason, continue to avoid the submission of a proposed amended complaint. Having failed to do so to this point, they should not now be rewarded. *Pugh*, 521 F.3d at 698 (even though defendants pointed out the deficiency in the complaint, plaintiffs chose not to remedy it; "they were [not] entitled to wait and see what the district court said before making any changes to the complaint – because it would impose unnecessary costs and inefficiencies on both the courts and party opponents"); *ACA Fin. Guar.*, 512 F.3d at 57 ("The plaintiffs do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint was adequate under the PSLRA. Plaintiffs may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint should the court hold the first amended complaint was insufficient.")

Plaintiffs seek to justify gaining an opportunity to replead at this time by citation to *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), a pre-*Tellabs* decision merely noting that pleading properly is "technical and demanding" and is at times a matter of "trial and error." (Opp. at 47). But *Eminence* is inapposite. The complaint there was dismissed with prejudice nine months after it was filed and plaintiffs did not actually have any meaningful opportunity to replead prior to its dismissal. *Id.* at 1053. Here, plaintiffs have had multiple opportunities since August 2006 to move to replead in accordance with Rules 15(a) and 7(b), and controlling case law. Despite those opportunities, Plaintiffs have improperly limited their attempts to amend to brief summaries in their reply brief to the Sixth Circuit and in their Opposition to this Court of what five so-called confidential witnesses ("CW 1-5") might add to the Complaint.

### B.    PLAINTIFFS' DESCRIPTION OF CW 1-5 IS INSUFFICIENT

Since *Tellabs*, many courts have determined that allegations attributed to confidential witnesses may only be considered to a limited extent. *Indiana Elec. Workers'*, 537 F.3d at 535 ("Following *Tellabs*, courts must discount allegations from confidential sources."); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007) (*Tellabs* requires courts to "discount allegations that the complaint attributes to . . . 'confidential witnesses'" because "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences" when the confidential witnesses could be lying or nonexistent).

As the Sixth Circuit noted in *Ley*, 543 F.3d at 811 (affirming dismissal of complaint with prejudice where allegations attributed to confidential witnesses were "too vague and conclusory"), allegations attributed to confidential witnesses often are of little value, especially where the complaint fails to (1) identify the witnesses with sufficient particularity or (2) provide sufficient descriptions to support the probability that those witnesses would have relevant information concerning defendants. *See also In re Skechers U.S.A., Inc. Sec. Litig.*, 273 Fed. Appx. 626, 627 (9th Cir. 2008) (affirming dismissal of complaint where plaintiffs failed to show how confidential witnesses would have known whether defendants received internal reports contradicting their public statements); *New Jersey Carpenters Pension & Annuity Fund v. Biogen IDEC Inc.*, 537 F.3d 35, 53 (1st Cir. 2008) (affirming dismissal of complaint because, among other things, allegations attributed to confidential witnesses did not show that defendants' statements were knowingly false when made); *Ceridian*, 542 F.3d at 247 (affirming dismissal of complaint despite allegations of three confidential witnesses and "two whistleblowers" and noting, among other things, that allegations that senior executive defendants attended meetings and had access to data could have been "surmised from . . . defendants' job titles").

Furthermore, witnesses' knowledge must be first-hand; therefore, allegations based on hearsay will not be considered. *Zucco*, 552 F.3d at 992-996 (affirming dismissal of complaint because description of the confidential witnesses failed to show they had first hand knowledge of

the conclusory allegations attributed to them); *Malin*, 2009 WL 481897 (2d Cir. 2009), *aff'g* 499 F. Supp. 2d 117, 139 (D. Conn. 2007) (dismissing complaint on same grounds).

No rational inference may be drawn from the descriptions of CW 1-5 in the Opposition that any of them would be a credible source as to Defendants' alleged wrongdoing. None is described as having been in a position to be aware of any knowledge or activity by Burns or Richter and, consequently, could not satisfy the most basic criterion required of purported sources for the allegations attributed to them. *See Indiana State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 527 F. Supp. 2d 698, 711 (E.D. Ky. 2007) (dismissing claim where plaintiffs failed to particularize basis for allegations against defendants); *Keithley*, 268 F. Supp. 2d at 898-99 (dismissing claim where allegations based on confidential witnesses not pleaded with particularity); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 360-64 (D.N.J. 2007) (dismissing claim where allegations based on multiple confidential witnesses lacked details regarding the basis for the sources' personal knowledge and detailed descriptions of alleged events).

According to Plaintiffs, one CW was a plant controller who left Dana in early 2005, two were subordinates of plant controllers and the other two were a sales representative and a secretary. Opp. at 48-49. Although one CW purportedly prepared "tracker" reports, Plaintiffs provide no information as to any inconsistency between those reports and statements attributable to Defendants, or whether Defendant actually received such reports. Other CWs are described as being aware of steel surcharges, changes to internal plant budgets and the difficulty that certain plants had in reaching certain forecasts. These CWs add nothing to the Complaint; among other things, there is no basis to infer how these plant level employees would have known whether senior management had knowledge of any information material to Dana inconsistent with Dana's public statements.[5] *See also In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d

---

[5]  The fact that two CWs dealt with "snafus" and customer complaints is irrelevant: "[m]uch of any business consists of having problems and dealing with them." *In re Leapfrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1040 (N.D. Cal. 2007) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001)).

873, 897 (N.D. Ohio 2006) (dismissing complaint based upon confidential sources, including plant controllers, a finance director and a financial analyst, none of whom described when defendants allegedly became aware of accounting errors or directed that those errors not be corrected); *In re Berlin Fin. Ltd. v. MPW Indus. Servs. Group, Inc.*, No. 2:07-CV-442, 2008 WL 161309, at *7 (S.D. Ohio Jan. 15, 2008) (dismissing complaint where plaintiffs failed adequately to identify all sources and grounds to conclude that these sources were reliable); *Central Laborers'*, 497 F.3d at 552 (affirming dismissal of complaint where scienter allegations attributed to confidential sources lacked specific information such as particular job descriptions, responsibilities, and employment dates or any "sufficient detail to credit them as bases for a strong inference of scienter with respect to the particular allegations of fraud"); *Teachers' Ret. Sys. of Louisiana v. Hunter*, 477 F.3d 162, 177 (4th Cir. 2007) (affirming dismissal of complaint where plaintiff "advance[d] insufficient facts to show how" confidential source had access to information regarding improperly booked revenue).

## C.   ANY AMENDMENT WOULD BE FUTILE

Courts routinely deny motions for leave to amend where such amendments would be futile. *Darby*, 96 Fed. Appx. at 286. None of the information attributed to CW 1-5 would add anything significant to the conclusory and legally insufficient allegations in the Complaint. Thus, permitting Plaintiffs to replead would be futile. *See, e.g., In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 962 (8th Cir. 2008) (affirming denial of leave to amend because nothing in the proposed amendment would substantively improve the complaint); *In re NVE Corp. Sec. Litig.*, 527 F.3d 749, 752 (8th Cir. 2008) (affirming denial of leave to replead where plaintiffs failed to articulate changes they would make to their complaint); *Metzler*, 540 F.3d at 1072 (affirming denial of leave to replead where plaintiff had not identified additional facts that would support amended complaint).

## POINT IV

### THE COMPLAINT DOES NOT STATE CONTROL PERSON CLAIMS

As set forth in Defendants' moving memorandum, the Complaint fails to state control person claims under Section 20(a) because, among other things, it fails to plead an underlying Section 10(b) violation. Defs. Mem. at 32. Moreover, individual defendants do not have control person liability when the complaint against them does not state a primary or predicate Section 10(b) claim against their bankrupt corporation. Defs. Mem. at 32; *PR Diamonds*, 364 F.3d at 697 (Plaintiffs may not "impute the Individual Defendants' purported violations to the Company in order to establish the requisite predicate liability of the controlled person, and then double-back the liability onto the Individual Defendants as controlling persons under Section 20(a)"). Here, as in *PR Diamonds,* "the Complaint contains only a few sparse references to allegations against [the] Company or its employees other than the Individual Defendants." *Id.* at 697-98; *see also D.E. & J. Ltd. P'ship*, 133 Fed. Appx. at 1001 (because plaintiff has not charged the company controlled by the individual defendants with a primary securities law violation "it may not bring a claim for recovery under this [controlling person] theory" (citing *PR Diamonds*, 364 F.3d at 696-98 and *Comshare,* 183 F.3d at 554 n.11)).

Plaintiffs argue that control person liability is adequately alleged here because (1) the Complaint adequately pleaded securities law violations by Burns and Richter; and (2) there is no need to name the corporate entity as a defendant for control person liability to attach. Neither argument has any merit. First, as shown above, Plaintiffs' conclusory allegations against Burns and Richter are plainly insufficient. Second, Plaintiffs rely on inapposite cases in arguing that control person claims still may be pursued even though the Complaint fails to allege a primary securities law violation by Dana.

In each of the cases on which Plaintiffs rely, predicate violations by the corporation were expressly pleaded.   In *In re Suprema Specialists, Inc. Sec. Litig.*, 438 F.3d 256, 285 (3d Cir. 2006), the Court explained that the "the record reveals that plaintiffs did expressly name the corporation itself as the primary violator in their Section 15 and Section 20(a) counts."

Similarly, in *In re Hayes Lemmerz Int'l, Inc.*, 271 F. Supp. 2d 1007, 1022 n.11 (E.D. Mich. 2003), the court explained that the complaint "very plainly alleges that the Company's statements were false and misleading and that the Company either knew or was reckless in not knowing the statements were false."

Here, Plaintiffs point to three paragraphs of the Complaint (¶¶ 71, 91, and 97) in an effort to show that it alleges a primary securities law violation by Dana. Opp. at 46 n.24. In fact, none of these paragraphs comes close to alleging such a violation. Paragraph 71 merely alleges that the SEC initiated a formal investigation into Dana and paragraphs 91 and 97 only allege that Burns and Richter caused the Company to issue press releases. None of these allegations pleads a claim against Dana for violating Section 10(b) and, accordingly, no Section 20 (a) claims may be asserted against Burns or Richter. Defs. Mem. at 32; *PR Diamonds*, 364 F.3d at 697-98.

## CONCLUSION

For the foregoing reasons, the Court should, once again, dismiss the Complaint with prejudice.

Dated:  May 1, 2009

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By: _____
Joel W. Sternman *(pro hac vice)*
Anthony L. Paccione *(pro hac vice)*
Julie Pechersky
Daniel A. Edelson *(pro hac vice)*
575 Madison Avenue
New York, NY 10022
(212) 940-8800

-and-

**COOPER & WALINSKI, L.P.A.**
900 Adams Street
Toledo, OH 43624
(419) 241-1200

**Attorneys for Defendants Michael J. Burns
and Robert C. Richter**