UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

| | | |
|---|---|---|
| HOWARD FRANK, Individually and On Behalf of All Others Similarly Situated, | : | Civil Action No. 3:05-cv-07393-JGC |
| | : | |
| Plaintiff, | : | Class Action |
| | : | |
| vs. | : | CHIEF JUDGE JAMES G. CARR |
| | : | |
| DANA CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF DEFENDANTS' RENEWED MOTION TO DISMISS

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
(212) 940-8800

-and-

Cooper & Walinski, L.P.A.
900 Adams Street
Toledo, OH 43624
(419) 241-1200

Of Counsel:
    Joel W. Sternman
    Anthony L. Paccione
    Daniel A. Edelson
    Cameron Balahan

TABLE OF CONTENTS

POINT I  SELECTED COURTS OF APPEALS DECISIONS RELEVANT TO PLEADING A STRONG
INFERENCE OF SCIENTER IN PSLRA SECURITIES CLASS ACTIONS ......................................3

A.  DECISIONS BY SIXTH CIRCUIT (INCLUDING PRE-TELLABS DECISIONS) ................................3

B.  DECISIONS BY OTHER CIRCUITS (POST-TELLABS ONLY) ......................................................4

C.  EXCERPTS RELATED TO PARTICULAR SCIENTER FACTORS ..................................................8

    1.  AWARENESS THAT STATEMENTS FALSE WHEN MADE ................................................8

    2.  MOTIVE/PERSONAL OR CORPORATE BENEFITS ........................................................10

    3.  SOX CERTIFICATIONS AND DEFICIENT INTERNAL CONTROLS .................................12

    4.  SEC INVESTIGATIONS AND EXECUTIVE DEPARTURES.................................................14

    5.  RESTATEMENTS/MAGNITUDE OF MISSTATEMENTS .........................................................16

    6.  CONFIDENTIAL WITNESS ALLEGATIONS ..........................................................................18

    7.  "COLLECTIVELY VIEWED"/CULPABLE VS. NON-CULPABLE INFERENCES ......................21

    8.  NEW THEORIES/LEAVE TO AMEND ....................................................................................23

POINT II  DISCUSSION OF SELECTED CASES ON WHICH PLAINTIFFS RELY ......................................24

A.  LORMAND V. US UNWIRED, INC., ....................................................................................24

B.  MISS. PUBLIC EMPLOYEE RET. SYS. V. BOSTON SCIENTIFIC CORP., ...................................25

C.  IN RE AM. SERV. GROUP, INC., .........................................................................................28

D.  IN RE HUFFY CORP. SEC. LITIG., ......................................................................................29

POINT III  THE SUPREME COURT'S MAY 18, 2009 IQBAL DECISION .............................................30

POINT IV  ITEM 307 AND SARBANES-OXLEY CERTIFICATIONS .....................................................33

CONCLUSION ............................................................................................................................36

i

TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009)...................................................................................................1, 30

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007).........................................................................................................2, 30

*Berson v. Applied Signal Tech., Inc.,*
  527 F.3d 982 (9th Cir. June 5, 2008) ................................................................................7, 10

*Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.,*
  497 F.3d 546 (5th Cir. Aug. 21, 2007) ........................................................................8, 12, 18

*City of Monroe Employees Retirement System v. Bridgestone Corp.,*
  399 F.3d 651 (6th Cir. Feb. 4, 2005) .....................................................................................3

*Fidel v. Farley,*
  392 F.3d 220 (6th Cir. Dec. 16, 2004)..............................................................................3, 17

*Garfield v. NDC Health Corp.,*
  466 F.3d 1255 (11th Cir. 2006) ......................................................................................12, 13

*Glazer Capital Mgmt., L.P. v. Magistri,*
  549 F.3d 736 (9th Cir. Nov. 26, 2008) ..........................................................5, 11, 13, 15, 22

*In re Ceridian Corp. Sec. Litig.,*
  542 F.3d 240 (8th Cir. Sept. 11, 2008) ........................................................6, 12, 13, 15, 17, 23

*In re Hutchinson Tech., Inc. Sec. Litig.,*
  536 F.3d 952 (8th Cir. Aug. 5, 2008) ...........................................................................7, 10, 15, 20

*In re NVE Corp. Sec. Litig.,*
  527 F.3d 749 (8th Cir. May 30, 2008) .............................................................................7, 24

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.,*
  537 F.3d 527 (5th Cir. July 29, 2008)...........................................7, 10, 12, 14, 16, 18, 21, 23

*Institutional Inv. Group v. Avaya, Inc.,*
  564 F.3d 242 (3d Cir. Apr. 30, 2009) ..........................................................4, 8, 11, 18, 21

*Ley v. Visteon Corp.,*
  543 F.3d 801 (6th Cir. Oct. 6, 2008) .........................................................3, 11, 12, 16, 18, 21

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.,*
  540 F.3d 1049 (9th Cir. Aug. 26, 2008) .......................................................................6, 9, 17, 20

*Mizzaro v. Home Depot, Inc.,*
    544 F.3d 1230 (11th Cir. Oct. 8, 2008) .................................................................5, 19, 23

*NJ Carpenters Pension & Annuity Funds v. Biogen Idec, Inc.,*
    537 F.3d 35 (1st Cir. Aug. 7, 2008).........................................................................6, 9, 20, 23

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. Mar. 3, 2004).................................................................................4, 17

*South Ferry LP, #2 v. Killinger,*
    542 F.3d 776 (9th Cir. Sept. 9, 2008) ...................................................................................6, 9

*Stambaugh v. Corrpro Cos.,*
    116 Fed. Appx. 592 (6th Cir. Nov. 17, 2004).............................................................4, 14, 21

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. Feb. 10, 2009) ..............................................4, 8, 11, 13, 14, 17, 19, 22

## STATUTES AND RULES

Federal Rules of Civil Procedure 13 and 15(a) .......................................................................24, 33

Sarbanes-Oxley Act of 2002 Section 302,
    15 U.S.C. § 7241 (2009)...................................................................................................... 33-36

Regulation S-K Item 307,
    17 C.F.R. § 229.307 (2009) .......................................................................................................33

## OTHER AUTHORITIES

Management's Report on Internal Control Over
    Financial Reporting and Certification of
    Disclosure in Exchange Act Periodic Reports,
    Exchange Act Release No. 47,986,
    80 S.E.C. Docket 1014 (June 5, 2003) ......................................................................................36

### PRELIMINARY STATEMENT

This Supplemental Memorandum is submitted in further support of Defendants' renewed motion to dismiss the Complaint in this action. In light of the Court's familiarity with the position of Defendants, as set forth in detail in memoranda previously filed in this action and in extensive oral arguments related thereto, this memorandum focuses on the following issues:

Point I sets forth brief summaries of decisions of Courts of Appeals as to the pleading of particularized facts necessary to allege a strong inference of scienter. For all Circuits but the Sixth, the decisions noted all were issued following *Tellabs;* for the Sixth Circuit, certain pre-*Tellabs* decisions are noted as well. Those summaries are followed by excerpts from the decisions organized by scienter factors of particular significance to matters at issue: awareness that statements false when made; personal or corporate benefits; SOX certifications and deficient internal controls; SEC investigations and executive departures; restatements/magnitude of misstatements; confidential witness allegations; collectively viewed/culpable vs. nonculpable inferences; new theories/leave to amend.

Point II discusses four decisions that, in whole or in part, denied motions to dismiss PSLRA claims and shows why the complaints in those actions, copies of which are attached as exhibits to the Declaration of Joel W. Sternman dated June 8, 2009 ("Sternman Decl."), are distinguishable from the Complaint at issue here. In short, the claims in those actions were supported by particularized *facts*, such as documents, testimony or other credible information provided by confidential sources in a position to know the information attributed to them, sufficient to support a strong inference of scienter under *Tellabs* rather than, as here, by a mere listing of *factors* supported solely by conclusory and speculative assertions.

Point III discusses the Supreme Court's May 18, 2009 decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which further clarified the pleading standards that must be met by plaintiffs

proceeding in federal court.  As is there shown, *Iqbal* resolved any doubt that the pleading requirements of *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007), apply only to antitrust cases and not to *all* civil actions.  129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'") (internal citation omitted).  Notably, the Court provided further guidance for courts evaluating the sufficiency of pleadings, emphasizing the fact that "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."  129 S. Ct. at 1949.

Point IV responds to Plaintiffs' assertions, most recently made during the May 18, 2009 oral argument, as to the significance of the language change in Defendants' certifications concerning the effectiveness of Dana's internal controls.  As shown below, that change strengthened the representations in those certifications rather than, as Plaintiffs claim, weakened it as part of some overall scheme.  As with Plaintiffs' other contentions, neither fact, nor logic, nor legal substance provides any support for Plaintiffs' increasingly desperate attempts to avoid dismissal of their fraud by hindsight Complaint.

ARGUMENT

POINT I

SELECTED COURTS OF APPEALS DECISIONS
RELEVANT TO PLEADING A STRONG INFERENCE
OF SCIENTER IN PSLRA SECURITIES CLASS ACTIONS ·

A.      DECISIONS BY SIXTH CIRCUIT (INCLUDING PRE-*TELLABS* DECISIONS)

*Ley v. Visteon Corp.,*
543 F.3d 801 (6th Cir. Oct. 6, 2008)

Affirming dismissal with prejudice of complaint alleging company inflated earnings and

holding, among other things, that no strong inference of scienter pleaded despite allegations as to

restatement, false SOX certifications, magnitude of restatement, and confidential witnesses.

*City of Monroe Employees Retirement System v. Bridgestone Corp.,*
399 F.3d 651 (6th Cir. Feb. 4, 2005)

Affirming in part and reversing in part dismissal of complaint alleging false statements as

to safety and quality of tires and holding, among other things, that strong inference of scienter

pleaded only as to one of many alleged misstatements.

*Fidel v. Farley,*
392 F.3d 220 (6th Cir. Dec. 16, 2004)

Affirming dismissal with prejudice of complaint alleging issuance of materially

misleading financial statements and holding, among other things, that no strong inference of

scienter pleaded despite allegations as to magnitude of misstatement, insider trading, and

temporal proximity between misstatement and subsequent corrective disclosure.

3

***Stambaugh v. Corrpro Cos.,***[1]
116 Fed. Appx. 592 (6th Cir. Nov. 17, 2004)

Affirming dismissal with prejudice of complaint alleging accounting irregularities in international offices and holding, among other things, that no strong inference of scienter pleaded despite allegations as to issuance of restatement, SEC investigation, and executive resignations.

***PR Diamonds, Inc. v. Chandler,***
364 F.3d 671 (6th Cir. Mar. 3, 2004)

Affirming dismissal with prejudice of complaint alleging issuance of materially misleading financial statements and holding, among other things, that no strong inference of scienter pleaded despite allegations as to restatement, SEC investigation, magnitude of misstatements, insider trading, and temporal proximity between misstatements and subsequent corrective disclosures.

## B.    DECISIONS BY OTHER CIRCUITS (POST- *TELLABS* ONLY)

***Institutional Inv. Group v. Avaya, Inc.,***
564 F.3d 242 (3d Cir. Apr. 30, 2009)

Affirming in part and reversing in part dismissal of complaint alleging issuance of false statements regarding competitive pricing pressures and holding, among other things, that strong inference of scienter pleaded only as to one of many alleged misstatements.

***Zucco Partners, LLC v. Digimarc Corp.,***
552 F.3d 981 (9th Cir. Feb. 10, 2009)

Affirming dismissal with prejudice of complaint alleging manipulation of company's financial prospects by capitalizing, rather than expensing, internal software development expenditures and holding, among other things, that no strong inference of scienter pleaded

---

[1]    Supplemental Paccione Declaration Ex. K, Doc. #59 (Jan. 19, 2007).

despite allegations as to issuance of restatement, defendants' awareness that statements were false when made, false SOX certifications, executive resignations, confidential witnesses, and insider trading.

***Glazer Capital Mgmt., L.P. v. Magistri,***
549 F.3d 736 (9th Cir. Nov. 26, 2008)

Affirming dismissal with prejudice of complaint alleging misstatements as to pending merger and holding, among other things, that no strong inference of scienter pleaded despite allegations as to false SOX certifications and SEC investigation.

***Mizzaro v. Home Depot, Inc.,***
544 F.3d 1230 (11th Cir. Oct. 8, 2008)

Affirming dismissal with prejudice of complaint alleging failure to disclose inflation of earnings from widespread accounting improprieties in company's retail stores and holding, among other things, that no strong inference of scienter pleaded despite allegations as to SEC investigation, executive resignations, magnitude of misstatements, confidential witnesses, and insider trading.

***In re Ceridian Corp. Sec. Litig.,***
542 F.3d 240 (8th Cir. Sept. 11, 2008)

Affirming dismissal with prejudice of complaint alleging misstatements in earnings reports and holding, among other things, that no strong inference of scienter pleaded despite allegations as to issuance of restatement, defendants' awareness that statements were false when made, false SOX certifications, SEC investigation, executive resignations, confidential witnesses, and insider trading.

5

***South Ferry LP, #2 v. Killinger,***
542 F.3d 776 (9th Cir. Sept. 9, 2008)

Vacating dismissal of complaint alleging misstatements as to mortgage lender's ability to withstand changes in interest rates and remanding for determination of whether strong inference of scienter pleaded under principles of intervening *Tellabs* decision.

***Metzler Inv. GmbH v. Corinthian Colleges, Inc.,***
540 F.3d 1049 (9th Cir. Aug. 26, 2008)

Affirming dismissal with prejudice of complaint alleging fraudulent receipt of federal funding by vocational college network and holding, among other things, that no strong inference of scienter pleaded despite allegations as to issuance of restatement, confidential witnesses, and insider trading.

***NJ Carpenters Pension & Annuity Funds v. Biogen Idec, Inc.,***
537 F.3d 35 (1st Cir. Aug. 7, 2008)

Affirming dismissal with prejudice of complaint alleging misrepresentations as to safety of and market for new drug and holding, among other things, that no strong inference of scienter pleaded despite allegations as to SEC investigation, confidential witnesses, and insider trading.

***In re Hutchinson Tech., Inc. Sec. Litig.,***
536 F.3d 952 (8th Cir. Aug. 5, 2008)

Affirming dismissal with prejudice of complaint alleging misstatements as to demand, sales, and earnings projections and holding, among other things, that no strong inference of scienter pleaded despite allegations as to defendants' awareness that statements false when made, SEC investigation, and confidential witnesses.

***Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.,***
537 F.3d 527 (5th Cir. July 29, 2008)

On interlocutory appeal, reversing and remanding with instructions to dismiss complaint alleging scheme to misrepresent company's financial condition by nondisclosure of issues as to

6

viability of contract and holding, among other things, that no strong inference of scienter pleaded despite allegations as to false SOX certifications, SEC investigation, magnitude of misstatement, confidential witnesses, and insider trading.

**Berson v. Applied Signal Tech., Inc.,**
527 F.3d 982 (9th Cir. June 5, 2008)

Reversing dismissal of complaint alleging misstatements as to practice of carrying as "backlog" contracts for which company had received stop-work orders under which two government agencies, accounting for 80% of the company's revenue, could cancel contracts and holding, among other things, that strong inference of scienter sufficiently pleaded.

**In re NVE Corp. Sec. Litig.,**
527 F.3d 749 (8th Cir. May 30, 2008)

Affirming dismissal with prejudice of complaint alleging misrepresentations as to development of novel computer memory technology central to company's business, and holding that no strong inference of scienter pleaded.

**Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.,**
497 F.3d 546 (5th Cir. Aug. 21, 2007)

Affirming dismissal with prejudice of complaint alleging misstatements as to company's financials and holding, among other things, that no strong inference of scienter pleaded despite allegations as to issuance of restatement, false SOX certifications, executive resignations, confidential witnesses, and insider trading.

7

C.     EXCERPTS RELATED TO PARTICULAR SCIENTER FACTORS[2]

1.     AWARENESS THAT STATEMENTS FALSE WHEN MADE

*Institutional Inv. Group v. Avaya, Inc.*,
564 F.3d 242, 269-70 (3d Cir. Apr. 30, 2009)

"It is one thing for a plaintiff to claim that a defendant must have known its earnings projections were false because of the existence of unusual price reductions. Earnings are the bottom-line result of many different components, only one of which is pricing . . . . But it is another thing when a defendant chief financial officer is specifically asked, directly and repeatedly, whether the company's pricing has held steady despite the competitiveness of the market. Although McGuire acknowledged that Avaya inhabited a competitive industry and offered discounts to some customers on some products and services, Shareholders' central allegation is that Avaya engaged in massive discounting on an unusually large scale during the class period, and this McGuire flatly denied in statements evincing certitude."

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981, 1000-01 (9th Cir. Feb. 10, 2009)

"Allegations that Digimarc's management had access to the purportedly manipulated quarterly accounting numbers, or that the management analyzed the inventory numbers closely, do not support the inference that management was in a position to know that such data was being manipulated. Nothing in the complaint suggests [defendants] had access to the underlying information from which the accounting numbers were derived."

*South Ferry LP, #2 v. Killinger*,
542 F.3d 776, 784-85 (9th Cir. Sept. 9, 2008)

Although "in some unusual circumstances, the core operations inference, without more, may raise the strong inference required by the PSLRA," allegations that defendants "had an

---

[2]   Except as otherwise noted, internal citations and quotations omitted throughout.

8

important role" without "additional detailed allegations about the defendants' actual exposure to information [] will usually fall short of the PSLRA standard.  In such cases the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware."

***Metzler Inv. GmbH v. Corinthian Colleges, Inc.,***
540 F.3d 1049, 1058 (9th Cir. Aug. 26, 2008)

Rejecting strong inference of scienter from defendants' "hands on" management and tracking of student data information despite allegations, corroborated by several confidential witnesses, "'that Corinthian management closely monitored performance at each campus . . . [and utilized] a 'sophisticated information management system and database.'"

***NJ Carpenters Pension & Annuity  v. Biogen Idec, Inc.,***
537 F.3d 35, 48-49 (1st Cir. Aug. 7, 2008)

"[D]efendants cannot have committed fraud if they did not know at the time that the failure to provide additional information was misleading."  Specifically, the complaint must allege facts as to (1) when defendants had the additional information and (2) the causal relationship between the information and the company's product.

***In re Hutchinson Tech., Inc. Sec. Litig.,***
536 F.3d 952, 961 (8th Cir. Aug. 5, 2008)

"Simply alleging that defendants made a particular statement at a given time, without providing further particulars about who made the statement or when, and then showing in hindsight that the statement is false misses the PSLRA pleading requirement. Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them."

***Indiana Elec. Workers' Pension v. Shaw Group, Inc.,***
537 F.3d 527, 535 (5th Cir. July 29, 2008)

"[Plaintiffs] assert that the individual defendants must have known of the irregularities because of their executive positions in the company, and they emphasize Bernhard's 'hands-on management style,' and the magnitude and extent of the accounting standards violations. None of these assertions withstands analysis. First, this court's caselaw makes clear that pleadings of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions with the company. Second, Bernhard's management style, coupled with his alleged boast that 'there is nothing in this company that I don't know,' are insufficient to support a strong inference of scienter. Such statements lack specificity about what Bernhard may have known or, for that matter, was reckless not to have known, about the details of the company's accounting practices."

***Berson v. Applied Signal Tech., Inc.,***
527 F.3d 982, 983-89 (9th Cir. June 5, 2008)

Allegations that only two government agencies accounted for 80% of the company's revenue, as a result of which receipt of "stop-work orders" from them would have a "devastating effect on the corporation's revenue," supported application of core operations inference because these matters "were prominent enough that it would be absurd to suggest that top management was unaware of them."

### 2.    MOTIVE/PERSONAL OR CORPORATE BENEFITS

***Institutional Inv. Group v. Avaya, Inc.,***
564 F.3d 242, 277-78 (3d Cir. Apr. 30, 2009)

Allegations as to defendants' incentive to "(1) complete a $549 million repurchase" of stock and "(2) secure a $400 million unsecured revolving credit facility on favorable terms" could "provide a plausible motive for fraud, but the bottom-line question is not whether

10

defendants were likely to have a motive to commit fraud, but whether they were at least as likely as not to have acted on that motive and actually committed fraud."

***Ley v. Visteon Corp.,***
543 F.3d 801, 813-14 (6th Cir. Oct. 6, 2008)

Allegations that "Defendants' motive was a March 2004 note offering to raise additional capital and to avoid defaulting on existing notes," were "suggestive of scienter, although standing alone they [do] not establish a strong inference."

***Zucco Partners, LLC v. Digimarc Corp.,***
552 F.3d 981, 1004-05 (9th Cir. Feb. 10, 2009)

"Zucco's SAC makes only the bare assertion that executive-level bonuses were 'based in part' on Digimarc's financial performance – the complaint fails to provide specifically, with comparisons to prior years bonuses, the correlation between Davis' and Ranjit's compensation and Digimarc's bottom line.   Such generalized assertions of motive, without more, are inadequate to meet the heightened pleading requirements of . . . *Tellabs*."

***Glazer Capital Mgmt., L.P. v. Magistri,***
549 F.3d 736, 748 (9th Cir. Nov. 26, 2008)

"Glazer next argues that a strong inference of scienter arises from the fact that Magistri had a motive to make false statements, because he was positioned to profit personally from the proposed merger. . . . [A] number of out-of-circuit cases have rejected Glazer's argument.  In *Phillips v. LCI Int'l, Inc.*, the Fourth Circuit explained that because personal profit motive is present in almost every merger, inferring scienter from motive would force the directors of virtually ever company to defend securities fraud actions every time that company effected a merger or acquisition . . . .  We join our sister circuits and hold that evidence of a personal profit motive on the part of officers and directors contemplating a merger is insufficient to raise a strong inference of scienter."

11

*In re Ceridian Corp. Sec. Litig.*,
542 F.3d 240, 247 (8th Cir. Sept. 11, 2008)

"[Y]ear-end bonuses [were not] sufficiently unusual in timing or amount to give rise to a strong inference of scienter."

*Indiana Elec. Workers' Pension v. Shaw Group, Inc.*,
537 F.3d 527, 544 (5th Cir. July 29, 2008)

"Insofar as their executive compensation packages were tied to company performance, and both men received bonuses during the class period, Bernhard and Belk are in no different position than the vast majority of corporate executives . . . . Incentive compensation packages may be considered in conjunction with other scienter allegations, but only in an extraordinary case is it probative."

### 3.      SOX CERTIFICATIONS AND DEFICIENT INTERNAL CONTROLS

*Ley v. Visteon Corp.*,
543 F.3d 801, 812 (6th Cir. Oct. 6, 2008)

"We agree with the Eleventh Circuit that a 'Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements.' *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006); *see also Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 554-55 (5th Cir. 2007). Here, Plaintiffs fail to allege facts to suggest that Pestillo or Palmer had reason to know or should have suspected accounting irregularities or other 'red flags' at the time they signed the certifications."

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981, 1003-04 (9th Cir. Feb. 10, 2009)

"Boilerplate language in a corporation's 10-K form, or required certifications under Sarbanes-Oxley section 302(a) [] add nothing substantial to the scienter calculus. Our sister circuits to rule on such questions have unanimously agreed that allowing Sarbanes-Oxley

12

certifications to create an inference of scienter in 'every case where there was an accounting error or auditing mistake made by a publicly traded company' would 'eviscerat[e] the pleading requirements for scienter set forth in the PSLRA . . . .' [We] hold that Zucco's Sarbanes-Oxley certifications are not enough to create a strong inference of scienter and do not make Zucco's otherwise insufficient allegations more compelling by their presence in the same complaint."

***Glazer Capital Mgmt., L.P. v. Magistri***
549 F.3d 736, 748 (9th Cir. Nov. 26, 2008)

"Because Congress expressed no intent to alter the pleading requirements of the PSLRA, 'Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements.' *Garfield*, 466 F.3d at 1266. Because Glazer has pled no facts to that effect, the Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter on the part of Magistri."

***In re Ceridian Corp. Sec. Litig.***,
542 F.3d 240, 248 (8th Cir. Sept. 11, 2008)

"Plaintiffs fail to allege *specific facts* giving rise to an inference that Turner, Eickhoff, or Gross knew in May 2003 that Ceridian's internal accounting controls were deficient. In these circumstances, the opposing inferences of inadvertent mistake or mere negligence are more compelling. Indeed, if an allegation that a mandatory Sarbanes-Oxley certification was later proven to be inaccurate is sufficient to give rise to the requisite strong inference, 'scienter would be established in every case where there was an accounting error or auditing mistake by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.'"

13

*Indiana Elec. Workers' Pension v. Shaw Group, Inc.,*
537 F.3d 527, 544 (5th Cir. July 29, 2008)

"There must be, in other words, facts establishing that the officer who signed the certification had a reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions.  From the foregoing analysis of all of plaintiffs' allegations, no such facts placed Bernhard or Belk on notice of glaring irregularities or red flags."

    **4.**    **SEC INVESTIGATIONS AND EXECUTIVE DEPARTURES**

*Zucco Partners, LLC v. Digimarc Corp.,*
552 F.3d 981, 1002 (9th Cir. Feb. 10, 2009)

"Although resignations, terminations, and other allegations of corporate reshuffling may in some circumstances be indicative of scienter, the resignations at issue here are not so numerous or suspicious as to raise such an inference.  Where a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself in order for a resignation to be strongly indicative of scienter."

*Stambaugh v. Corrpro Cos.,*
116 Fed. Appx. 592, 597 (6th Cir. Nov. 17, 2004)

"[I]t is hard to see how the fact that the alleged misstatements were made over a period of twenty months, when considered in conjunction with the fact that a number of CFOs resigned, creates a *stronger* inference of scienter than either fact considered separately.  Rather, the more plausible explanation is that the long period of mismanagement caused Corrpro to go through more CFOs than it would have if the period of mismanagement were short."

*Glazer Capital Mgmt., L.P. v. Magistri,*
549 F.3d 736, 748-49 (9th Cir. Nov. 26, 2008)

Settlement agreements with the DOJ and SEC where the defendant-company "accepted responsibility for misconduct . . . [and] further admitted that it 'improperly accounted for certain payments'" were insufficient to meet the pleading requirements of the PSLRA because (1) "the admissions in these settlement agreements were largely legal conclusions, rather than particularized facts giving rise to a strong inference of scienter," and (2) even if InVision accepted the SEC's and DOJ's statements of fact, there is nothing in either settlement agreement that would support the conclusion that *Magistri* had actual knowledge of the violations . . . . [T]he mere fact that *someone* at InVision had knowledge of the illegal transactions is not sufficient to satisfy the scienter pleading requirements of the PSLRA . . . ."

*In re Hutchinson Tech., Inc. Sec. Litig.,*
536 F.3d 952, 962 (8th Cir. Aug. 5, 2008)

"[W]e consider the SEC's opening and closing an investigation irrelevant to the issue of NECA's complaint sufficiency. The mere existence of an SEC investigation does not suggest that any of the allegedly false statements were actually false and it does not render Fortun's statements that Hutchinson was 'well-positioned' material nor does it add an inference of scienter."

*In re Ceridian Corp. Sec. Litig.,*
542 F.3d 240, 248-49 (8th Cir. Sept. 11, 2008)

"Plaintiffs argue it is implausible that fourteen midlevel accounting personnel cooked the books but the CEO, CFO, and Controller did not. The flaw in this argument is that the opposing inferences – that the SEC investigation uncovered no evidence of fraud, and that accounting personnel and corporate officers responsible for the accounting function were fired or forced to depart for incompetence, not fraud – are more compelling in the absence of particular facts

15

giving rise to a strong inference of fraud. Without more, these allegations do not show that the accounting mishaps were at least as likely to be deliberate or severely reckless as merely negligent."

***Indiana Elec. Workers' Pension v. Shaw Group, Inc.,***
537 F.3d 527, 532 (5th Cir. July 29, 2008)

"Finally, we take judicial notice that the SEC terminated its inquiry against Shaw on December 28, 2007, with no enforcement recommendation," despite plaintiffs' allegations that Shaw "prematurely recognized revenue . . . by exploiting the percentage of completion method of accounting in violation of GAAP."

5.   RESTATEMENTS/MAGNITUDE OF MISSTATEMENTS

***Ley v. Visteon Corp.,***
543 F.3d 801, 812, 813 (6th Cir. Oct. 6, 2008)

"Even if we consider whether the nature and magnitude of the accounting errors support an inference of scienter, we agree with the district court that they do not here . . . . While we do not necessarily advocate a rigid adherence to percentages, such a low percentage of change to total revenue does not strike us as the type of 'in your face facts that cry out scienter.'" (citing *PR Diamonds*).

"We do not dispute that a Restatement under Accounting Principles Board Opinion (APB) No. 20 is a 'correction of errors in previously issued financial statements.' Here, however, Plaintiffs fail to allege any particularized facts to suggest that the statements were knowingly or recklessly false at the time they were made to the market and therefore Plaintiffs seek to hold Defendants accountable for nothing more than a Restatement of its financials."

***Fidel v. Farley,***
392 F.3d 220, 231 (6th Cir. Dec. 16, 2004)

"We decline to follow the cases that hold that the magnitude of financial fraud contributes to an inference of scienter on the part of the defendant . . . [because i]t would allow the court to engage in speculation and hindsight, both of which are counter to the PSLRA's mandates."

***PR Diamonds, Inc. v. Chandler***
364 F.3d 671, 685 (6th Cir. Mar. 3, 2004)

"Other cases likewise indicate the drastic nature and magnitude necessary for accounting violations to support a strong inference of scienter . . . . In contrast to the aforementioned cases, the accounting irregularities Plaintiffs allege in this case are significantly less egregious in nature and magnitude and thus do not support a strong inference . . . [of scienter]."

***Zucco Partners, LLC v. Digimarc Corp.,***
552 F.3d 981, 1000 (9th Cir. Feb. 10, 2009)

"[T]he mere publication of a restatement is not enough to create a strong inference of scienter."

***In re Ceridian Corp. Sec. Litig.,***
542 F.3d 240, 245-47 (8th Cir. Sept. 11, 2008)

Issuance of three restatements did not support a strong inference of scienter.

***Metzler Inv. GmbH v. Corinthian Colleges, Inc.,***
540 F.3d 1049, 1069 (9th Cir. Aug. 26, 2008)

"[T]he TAC does not tie the disputed revenue recognition practice, or Corinthian's restatements when the practice was changed, to the TAC's more general theory" of fraudulent conduct.

***Central Laborers' Pension Fund v. Integrated Elec. Servs., Inc.,***
497 F.3d 546, 552 (5th Cir. Aug. 21, 2007)

"GAAP violations, without more, do not establish scienter [although t]he public statements and subsequent restatements due to GAAP violations provide some basis to infer scienter."

***Indiana Elec. Workers' Pension v. Shaw Group, Inc.,***
537 F.3d 527, 540 (5th Cir. July 29, 2008)

"Plaintiffs also assert that the magnitude and egregiousness of Shaw's premature revenue recognition create an inference of scienter by Bernhard and Belk . . . . Such bold statements cannot substitute for factual assertions connecting the corporate executives to specific contracts or accounting or management practices that led to the alleged overstatements."

### 6.     CONFIDENTIAL WITNESS ALLEGATIONS

***Institutional Inv. Group v. Avaya, Inc.,***
564 F.3d 242, 263 (3d Cir. Apr. 30, 2009)

"The PSLRA imposes a particularity requirement on all allegations, whether they are offered in support of a statement's falsity or of a defendant's scienter.  In the case of confidential witness allegations, we apply that requirement by evaluating the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.  If anonymous source allegations are found wanting with respect to these criteria, then we must discount them steeply."

***Ley v. Visteon Corp.,***
543 F.3d 801, 811, 817 (6th Cir. Oct. 6, 2008)

"While we agree that anonymous sources are not altogether irrelevant to the scienter analysis, Plaintiffs' allegations here are too vague and conclusory to be accorded much weight.

Indeed, Plaintiffs fail to allege who at Visteon knew about these alleged accounting improprieties and what, when, where, and how they knew."

Where an allegation "lacks specificity and originates from an anonymous source, we are not inclined to accord it much weight in our analysis."

***Zucco Partners, LLC v. Digimarc Corp.,***
552 F.3d 981, 995 (9th Cir. Feb. 10, 2009)

"[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements.  First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge.  Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter."

"Where a complaint relies on both confidential witnesses and other factual information, such as documentary evidence, the plaintiffs need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false."  Where additional evidence is absent,  "confidential witness statements may only be relied upon where the confidential witnesses are described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the  information alleged."

***Mizzaro v. Home Depot, Inc.,***
544 F.3d 1230, 1240 (11th Cir. Oct. 8, 2008)

"[T]he weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations made in each case, and confidentiality is one factor that courts may consider.  Confidentiality, however, should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of

19

the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame."

***Metzler Invest. GmbH v. Corinthian Colleges, Inc.,***
540 F.3d 1049, 1069 (9th Cir. Aug. 26, 2008)

"The TAC relies on the statement of CW20 . . . who was employed by Corinthian for part of the Class Period and attended the meeting at issue. CW20's identity and knowledge, as with the other confidential witnesses named in the TAC, are described with sufficient specificity to meet the PSLRA's standards generally. The problem for Metzler is not that the confidential witnesses are inadequately identified – the problem is that these witnesses do not convey information sufficient to support the strong inference of scienter that the PSLRA requires."

***NJ Carpenters Pension & Annuity v. Biogen Idec, Inc.,***
537 F.3d 35, 51-52 (1st Cir. Aug. 7, 2008)

"We have never said a complaint would survive if it were based only on confidential source allegations. Indeed, we have said there must be a hard look at such allegations to evaluate their worth." Rather, confidential sources will be considered where they "have every indication both that the source had access to information and that the information has the earmarks of credibility . . . ."

***In re Hutchinson Tech., Inc. Sec. Litig.,***
536 F.3d 952, 959-60 (8th Cir. Aug. 5, 2008)

"[A]necdotes offered by the CWs about specific plants and specific customers are the only information that support the claim that return allowances were inadequate . . . . Allegations that production and errors were up at certain plants [are] not enough to support a claim that Hutchinson knew their company-wide EPS statements were false . . . [and are] not sufficient under the PSLRA."

20

*Indiana Elec. Workers' Pension v. Shaw Group, Inc.*,
537 F.3d 527, 539-40 (5th Cir. July 29, 2008)

"Finally, plaintiffs allege that the defendants knew or were severely reckless in not knowing about Shaw-Trac's problems because, according to numerous confidential sources, the problems were widely known throughout the company. The 'defendants must have known' allegation was rejected by this court in *Abrams* as too vague to support a strong inference of scienter."

### 7.   "COLLECTIVELY VIEWED"/CULPABLE VS. NON-CULPABLE INFERENCES

*Ley v. Visteon Corp.*,
543 F.3d 801, 810 (6th Cir. Oct. 6, 2008)

"While we consider Plaintiffs' allegations in total when determining whether Plaintiffs sufficiently plead scienter, we address each argument individually in this opinion for purposes of clarity."

*Stambaugh v. Corrpro Cos.*,
116 Fed. Appx. 592, 597 (6th Cir. Nov. 17, 2004)

"[W]e proceed to determine whether the allegations in the aggregate give rise to a strong inference of scienter. The inescapable inference from the allegations in the complaint is that Corrpro was a poorly-run business and that Corrpro executives in the United States failed to monitor closely the accounting controls of its foreign subsidiaries. Unfortunately for Leviticus, that inference does not suggest the minimum required state of mind of recklessness, strongly or otherwise."

*Institutional Inv. Group v. Avaya, Inc.*,
564 F.3d 242, 273, 280 (3d Cir. Apr. 30, 2009)

"But inference is not arithmetic. The inferential significance of any single allegation can be determined only be reference to all other allegations."

21

"Although we have discussed each of the alleged facts bearing on defendants' scienter one at a time, we have heeded *Tellabs*'s command to evaluate Shareholders' allegations collectively rather than individually.  As we have taken up each allegation in turn, we have added it to the picture painted by the previously considered allegations and asked: How does this addition affect the relative strengths of the culpable and non-culpable inferences?"

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981, 992, 1007 (9th Cir. Feb. 10, 2009)

"We read *Tellabs* to mean that our prior, segmented approach is not sufficient to dismiss an allegation of scienter.   Although we have continued to employ the old standards in determining whether, a plaintiff's allegations of scienter are as cogent or as compelling as an opposing innocent inference, we must also view the allegations as a whole."

"Although the allegations in this case are legion, even together they are not as cogent or compelling as a plausible alternative inference – namely, that although Digimarc was experiencing problems controlling and updating its accounting and inventory tracking practices, there was no specific intent to fabricate the accounting misstatements at issue here . . . .  It is more plausible that Digimarc's management was unable to control the accounting process within the corporation during this integration than that it was systematically using accounting manipulations to make the company seem slightly more financially successful."

*Glazer Capital Mgmt., L.P. v. Magistri*,
549 F.3d 736, 747 (9th Cir. Nov. 26, 2008)

"To the contrary, the surreptitious nature of the transactions creates an equally strong inference that the payments would have deliberately been kept secret – even within the company."

22

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230, 1249 (11th Cir. Oct. 8, 2008)

"[T]he alleged fraud appears to have been a simple one, and, if it occurred, plainly did not require the participation of upper management, let alone the CEO or the CFO of the company."

*In re Ceridian Corp. Sec. Litig.*,
542 F.3d 240, 246 (8th Cir. Sept. 11, 2008)

"Plaintiffs argue that the district court failed to view their allegations of scienter collectively, as *Tellabs* and our prior cases require. This argument is frequently made but rarely persuasive. When a party asserts, for example, that six factors collectively warrant a particular conclusion, we do not assume the district court failed to view the six collectively merely because it discussed them one at a time."

### 8. NEW THEORIES/LEAVE TO AMEND

*NJ Carpenters Pension & Annuity v. Biogen Idec, Inc.*,
537 F.3d 35, 57 (1st Cir. Aug. 7, 2008)

"In enacting the PSLRA, Congress intended to raise the standards plaintiffs must meet to survive a motion to dismiss, for defendants to have a fair chance to test the viability of a complaint, and for courts to carefully scrutinize complaints. That deliberate scheme is thrown into disarray when new theories are first produced in response to a motion to dismiss . . . . [H]onoring the purposes of the PSLRA, we may decline to hear arguments challenging dismissal based on belatedly advanced theories not contained clearly in amended complaints."

*Indiana Elec. Workers' Pension v. Shaw Group, Inc.*,
537 F.3d 527, 542 (5th Cir. July 29, 2008)

"[P]laintiffs contend in their appellate brief that their confidential source arranged a special meeting in April 2002 with the defendants and others to discuss the LSP-Pike project

problems. But the complaint tells a different story . . . . As has been noted, we review only the

well-pleaded facts in the complaint. This new allegation may *not* be considered."

***In re NVE Corp. Sec. Litig.,***
527 F.3d 749, 752 (8th Cir. May 30, 2008)

"Although Federal Rule of Civil Procedure 15(a) provides that leave to amend should be

freely granted "when justice so requires," appellants have not articulated any changes they wish

to make, much less demonstrated how revision would address the numerous pleading

deficiencies identified by the district court."

## POINT II

### DISCUSSION OF SELECTED CASES
### ON WHICH PLAINTIFFS RELY

A.  ***LORMAND V. US UNWIRED, INC.,***
565 F.3d 228 (5th Cir. Apr. 9, 2009)

**Summary:**   Reversing in part dismissal of complaint alleging misrepresentations as to
prospects for favorable developments in affiliate relationship between company
and major telecommunications provider (Sprint) where, among other things,
numerous documents, including excerpts from testimony and defendants' internal
memoranda that "directly and cogently tend to prove their state-of-mind at the
time of their misleading statements and omissions," attached to complaint. *See,
e.g.,* Comp. ¶¶ 62, 63, 67-69, 73-74, 81-83 and 85-86; Sternman Decl. Ex. A.

**Decision:**   "Contrary to their public statements applauding US Unwired's conversion . . .
[the Individual Defendants] contemporaneously but privately admitted repeatedly,
as quoted and referenced in the pleadings, that US Unwired's management
disapproved and strongly protested to Sprint against" the contemplated
conversion of its affiliation relationship. "Most importantly, [one defendant]

24

drafted a long memo to US Unwired's Board in July of 2000 in which he predicted in detail the detrimental impact on the company should the Board decide to switch to Type II affiliation and thus cede control of billing and customer service operations to Sprint." 565 F.3d at 252.

"The complaint alleges that the defendants predicted publicly that US Unwired's use of the no-deposit programs would bring it long-range benefits and success, even though they knew the programs were a colossal mistake and would be economically disastrous for the company. As alleged, [two of the Individual Defendants] testified [in a prior litigation between US Unwired and Sprint] that from the beginning, and at the time US Unwired's management made the foregoing public misrepresentations and omissions, they had privately protested against Sprint's assumptions and projections regarding the no-deposit plans." 565 F.3d at 253.

"In the exhibits to his complaint, the plaintiff provides numerous contemporaneous documents, such as internal emails and memos, that support a strong inference that the defendants had a wrongful state of mind at the time of their representations. The plaintiff also provides admissions from the defendants themselves regarding their state of mind at the time of their representations (as found in the defendants' post-class period deposition testimony and emails)." 565 F.3d at 254.

**B.**     *MISS. PUBLIC EMPLOYEE RET. SYS. V. BOSTON SCIENTIFIC CORP.,*
           523 F.3d 75 (1st Cir. Apr. 16, 2008)

**Summary:**     Reversing dismissal of claim in complaint alleging defendants withheld material information about problems with company's new coronary stent (TAXUS) where, among other things, particularized facts set forth as to non-deflating reports

received from European physicians during class period as well as changes in the stent's manufacturing process supportive of inference that defendants knew of same problems that resulted in subsequent recall. *See, e.g.,* Comp. ¶¶ 89, 93-98 and 101; Sternman Decl. Ex. B.

**Decision:**     "Plaintiff alleges that defendants withheld this information [as to problems with the stent] to allow the company to build up its inventory of new, non-defective products . . . [and] in order to avoid loss of market share . . . . [S]tatement[s in a Form 10-Q] also acknowledge[d] that the company had been conducting ongoing analysis and investigation of the problem . . . *in response to* adverse reports." 523 F.3d at 88.

The District Court's view that the complaint alleged "[f]raud by hindsight" failed to consider the "other allegations that plaintiff made from supporting documents . . . . [D]efendants had received [negative] reports from doctors in Europe before instituting the manufacturing change, as well as numerous [other] complaints from U.S. doctors while the company was in the process of implementing the change." 523 F.3d at 90-91.

"Moreover, Defendants' own SEC filings and press releases reveal that they reassured the public that they had implemented the manufacturing change *in response* to complaints of non-deflation, so that the 'new' TAXUS would not suffer from the same problems.  The company said it had been monitoring, analyzing and investigating the problem and appropriate responses.  It is fair to infer the company has highly effective information systems. Defendants are in a highly regulated industry and the company, it can be inferred, constantly monitors

26

reports of patient injury and death and looks for prompt solutions to such problems.

"This is not the classic fraud by hindsight case where a plaintiff alleges that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly. Nor is this a case where there is no contemporaneous evidence at all that defendants knew earlier what they chose not to disclose until later." 523 F.3d at 90-91.

"Plaintiff has alleged a significant amount of insider trading in the months before the announcement of recalls in July, which caused the stock price to drop . . . . It fits with the plaintiff's theory that defendants would have sold a stock at this time, knowing that the price would drop when the manufacturing change, acknowledging a defect, was announced. If defendants were aware of the connection between the non-deflation reports they were receiving and the manufacturing change, a fact finder could reasonably ask why they would have sold so much stock at a time when the company appeared to be soaring on the strength of TAXUS.

"Given plaintiff's specific factual allegations, the temporal proximity between LaViolette's statements and the third recall, and the alleged insider trading, we think that plaintiff has pled enough to give rise to inferences that are at least as strong as any competing inferences regarding scienter." 523 F.3d at 92-93.

27

**C.**   *IN RE AM. SERV. GROUP, INC.,*
No. 06-0323, 2009 U.S. Dist. LEXIS 28237 (M.D. Tenn. Mar. 30, 2009)[3]

**Summary:**   Denying in part motion to dismiss complaint alleging failure to disclose "widespread and systemic" business practices in violation of contracts for prison services with governmental entities where, among other things, particularized facts supported by credible confidential witnesses, information in company databases and manual, and other detailed accounts of systemic wrongdoing. *See, e.g.,* Comp. ¶¶ 45-49, 50, 55-65, 100, 110, 145 and 185; Sternman Decl. Ex. C.

**Decision:**   "According to Plaintiffs, a highly critical report of an investigation into the death of a[n] inmate was due to [a subsidiary's] refusal to provide medication needed to treat the inmate's Parkinson's disease." 2009 U.S. Dist. LEXIS 28237, at *140.

"An employee, a fulfillment manager who reported directly to [the Individual Defendants], allegedly relates that [subsidiary] deliberately took advantage of [computer system]'s shortcomings to manipulate the timing of price changes . . . . [The computer system]'s inability to track more than one purchase price for any drug was allegedly well-known to the Defendants." 2009 U.S. Dist. LEXIS 28237, at *138-39.

"The information contained in the [computer system] database also clearly reflected that customers were not receiving credits for returned drugs, [in breach of the company's agreement with the government]. SPP's manual demonstrates how pervasive and routine these practices were . . . ." 2009 U.S. Dist. LEXIS 28237, at *138-39.

---

[3]   Supplemental Paccione Declaration, Doc. #107, Ex. F (May 1, 2009).

**D.**    *IN RE HUFFY CORP. SEC. LITIG.,*
         577 F. Supp. 2d 968 (S.D. Ohio Sept. 17, 2008)

**Summary:**    Denying in part motion to dismiss complaint alleging misrepresentations related to company's acquisition of competitor (Gen-X) where, among other things, particularized facts set forth as to valuation of Gen-X assets, performance of Gen-X following acquisition, and impact of that performance on company's financial results and future prospects. *See, e.g.,* Comp. ¶¶ 3, 7, 20-28, 35, 40-51, 54-55, 58, 64-65, 73, 77, 118(a), 130(a)-(b), 140(a), 149(a), 159(a), 222(b)-(c), 228-29, 271-74; Sternman Decl. Ex. D.

**Decision:**    "Huffy conceded in its bankruptcy filing that it had become aware of Gen-X's mounting losses soon after the acquisition had been completed.   Indeed, the statements set forth in Huffy's bankruptcy filing are fully supported by a number of the confidential witnesses or informants relied upon by the Plaintiff[s] in their Amended Complaint."   577 F. Supp. 2d at 1000.

"The Plaintiffs' allegations demonstrate that the confidential witnesses providing [] information [about Huffy's awareness of Gen-X's mounting losses], numbered 2, 4, 7 and 8, had sufficient contact with Huffy's management decision making and the Defendants to have acquired the information attributed to them (the confidential witnesses)."   577 F. Supp. 2d at 1000 n.32.

"Before Huffy's results for the Third Quarter of Fiscal Year 2002 were announced, Huffy had been investigating Gen-X's problems with accounts receivable and payable, without a satisfactory resolution, yet the Gen-X acquisition continued to be trumpeted as a success."   577 F. Supp. 2d at 1000.

29

## POINT III

### THE SUPREME COURT'S MAY 18, 2009 *IQBAL* DECISION

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009), further illustrates why the Complaint should be dismissed. Reversing the Second Circuit, *Iqbal* held that the complaint failed to plead the elements of a §1983 claim against certain federal officials because its allegations were insufficient under Rules 8 and 9 of the Federal Rules of Civil Procedure. In reaching its decision, the Supreme Court, among other things, clarified the pleading standards governing complaints in federal court actions, setting forth a two-prong analysis to evaluate their sufficiency. First, the Supreme Court emphasized that allegations that are mere legal conclusions are not entitled to any deference. 129 S. Ct. at 1949-50. It explained that ["t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Bell-Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, legal conclusions by themselves are insufficient to state a cause of action and must be supported by factual allegations. *Id.*

Applying this principle to the *Iqbal* complaint, the Court held that allegations that one federal official was the "principal architect" of a discriminatory policy and that a second official was "instrumental" in executing it amounted to nothing more than legal conclusions. *Id.* at 1950-52. Other allegations that certain officials "knew of, condoned, and willfully" agreed to subject plaintiffs to harsh conditions also were deemed conclusory. *Id.* at 1951. The Court explained that such allegations are "nothing more that a 'formulaic recitation of the elements'" of a cause of action and federal courts may not presume them to be true when deciding a motion to dismiss. *Id.*

30

Second, the Court explained that to survive a motion to dismiss, a complaint's well-pleaded factual allegations must be sufficiently "plausible." *Id.* Determining whether a factual allegation is plausible "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendants' liability it 'stops short of the line between the possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949 (quoting *Twombly.* 550 U.S. at 557). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

The Court also clarified the requisite standards to plead a defendant's "state of mind" pursuant to Rule 9(b), which requires particularity when pleading "fraud or mistake" while allowing "malice" and other "conditions of a person's mind to be alleged generally." Noting that "'generally' is a relative term," the Court stated that "[i]n the context of Rule 9, ['generally'] is to be compared to the particularity requirements of Rule 9" and does not "give [plaintiffs] license to evade the less rigid – though still operative – strictures of Rule 8." *Id.* at 1954.

Applying these principles, the Supreme Court held that the *Iqbal* complaint's factual allegations were insufficiently plausible to withstand a motion to dismiss. The Court found that the complaint's factual allegation that defendants ordered the imprisonment of Arab Muslim men, even if presumed to be true, did not "plausibly establish" that plaintiffs were entitled to relief. *Id.* at 1951. It explained that it was more likely that defendants' policies resulted from their investigation of the 9/11 terrorist attacks than from unconstitutional discrimination. *Id.* at 1951-52. Consequently, "[g]iven more likely explanations," and without factual allegations to the contrary, plaintiffs' allegations were not sufficiently plausible. *Id.* at 1951. Finally, under

31

Rule 9, plaintiffs failed to plead factual allegations sufficient to suggest that defendants acted with a racist state of mind. *Id.* at 1952.

Significantly, PSLRA complaints are subject to far more stringent pleading standards than those to which the *Iqbal* complaint is subject. Not only must PSLRA complaints satisfy Rules 8 and 9, plaintiffs must also meet statutory standards, as well as those set forth in *Tellabs,* pleading particularized facts on which their allegations are based. The inferences of scienter may not merely be "plausible" but must be "strong," "cogent" and "at least as plausible" as competing nonculpatory inferences. *Id.*

*Iqbal,* together with the other authorities upon which Defendants rely, supports dismissal here because the Complaint does nothing more than apply legal conclusions to certain undisputed facts set forth in Dana's Restatement. At most, those facts might raise a "possibility" that Defendants could have engaged in certain wrongful conduct, but the remaining allegations of the Complaint are neither plausible nor supported by particularized facts. The Complaint relies almost exclusively on conclusory allegations that Defendants knowingly or recklessly disregarded facts that would render their statements false when made. By way of example, the following allegations, among others, cannot, under any standard, be viewed as supported by particularized facts.

- Defendants "caused" Dana to engage in accounting improprieties (*e.g.,* Comp. ¶¶ 2, 3, 13, 43, 90, 91);

- Defendants knowingly or recklessly disregarded data concerning Dana's deferred tax assets (*e.g.,* Comp. ¶ 66); and

- Defendants engaged in fraudulent misrepresentations in connection with Dana's financial results (*e.g.,* Comp. ¶¶ 14, 15, 18, 19, 40, 52, 75).

- Defendants received reports and other information from various sources during the Class Period inconsistent with their public statements which showed that Dana's actual operating performance was suffering, its cost cutting initiatives were failing to produce

savings sufficient to offset the rising cost of steel, and its forecast and guidance were unattainable (*e.g.,* Comp. ¶¶ 44-55).

*Iqbal* confirms that these allegations are merely a "formulaic recitation" of the elements of a federal securities law claim and should not be accorded any weight.

**POINT IV**

**ITEM 307 AND SARBANES-OXLEY CERTIFICATIONS**

As referenced in the Complaint (*see* ¶¶ 100, 106, 113, 118, 123), Dana's period reports filed during the Class Period all contained references to Dana's disclosure controls and procedures in accordance with Item 307 of Regulation S-K and Section 302 of the Sarbanes-Oxley Act of 2002.

Item 307 requires that registrants:

> Disclose the conclusions of the registrant's principal executive and principal financial officers, or persons performing similar functions, regarding the effectiveness of the registrant's disclosure controls and procedures (as defined in Rule 13a-15(e) or Rule 15d-15(e) under the Exchange Act) as of the end of the period covered by the report, based on the evaluation of these controls and procedures required by paragraph (b) of Rule 13a-15 or Rule 15d-15 under the Exchange Act.

17 C.F.R. § 229.307 (2009). In response to Item 307, Dana's Forms 10-Q for the first three quarters of 2004 stated as follows:

> Our Chief Executive Officer (CEO) and Chief Financial Officer (CFO) have evaluated Dana's disclosure controls and procedures, as defined in the SEC rules, as of the end of the [first, second, and third] quarter and have concluded that such controls and procedures are effective in providing reasonable assurance that material information relating to Dana and its consolidated subsidiaries was made known to them during the period covered by this report.

Sternman Decl. Exs. E, F, and G. In Dana's Form 10-K for the fiscal year ended December 31, 2004 and in its Form 10-Q for the first and second quarters of 2005, Dana's Item 307 disclosure was changed to read as follows:

33

> Our Chief Executive Officer (CEO) and Chief Financial Officer (CFO) have evaluated
> Dana's disclosure controls and procedures as defined in the SEC rules as of the end of
> [2004 or the first and second quarters of 2005] and have concluded that such controls and
> procedures are effective.

Sternman Decl. Exs. H, I, and J.  Plaintiffs seek to make much of this change, claiming that

"tellingly, though, by the end of fiscal 2004, defendants had carefully altered these certifications:

. . . stating that Dana's internal controls . . . were merely effective.  Through these revisions

Burns and Richter crafted language to soften their false statements to the market, and avoid

alerting investors to the ongoing fraud." Opp. at 11-12.

However, Plaintiffs are mistaken for three reasons: First and foremost, the revised

language is, if anything, stronger than the original in that it is not qualified as the earlier

language was by the phrase, "in providing reasonable assurance that material information . . .

was made known to them . . . ."

Second, it is important to note that attached as part of all Dana filings during the Class

Period were SOX Section 302 certifications signed by Burns and Richter, as CEO and CFO,

respectively, that essentially repeated the so-called omitted or "altered" Item 307 language.  The

Section 302 Certifications provided, in part, that:

> the registrant's other certifying officer(s) and I are responsible for establishing and
> maintaining disclosure controls and procedures . . . for the registrant and have (a)
> designed such disclosure controls and procedures, or caused such disclosure controls and
> procedures to be designed under our supervision, to insure that material information
> relating to the registrant, including its consolidated subsidiaries, is made known to us by
> others within those entities, particularly during the period in which this report is being
> prepared.

Sternman Decl. Exs. E - J.

The signed Section 302 Certifications that appear as exhibits to the Form 10-K for the

year ended December 31, 2004 and the Forms 10-Q for the first two quarters of 2005 continued

to include, as required there (but not in Item 307), the material information assurance omitted

from the S-K 307 disclosure, *i.e.,* they continued to state that such disclosure controls and procedures are designed "to insure that material information relating to the registrant . . . is made known to us . . . during the period in which this report is being prepared." Sternman Decl. Exs. H, I, and J. Registrants are not permitted to deviate from this is required statutory language – Plaintiffs' assertion that Defendants were no longer certifying Dana's internal controls as effective to inform them of material information is simply false. The statement had been omitted (for the reason stated below) from Dana's Item 307 disclosure, but is retained in the Section 302 Certifications that are attached to all of the periodic reports filed during the Class Period.

Finally, many registrants ceased qualifying their Item 307 disclosures in light of the SEC's statement in an October 6, 2004 Interpretative Q&A published by the Division of Corporation Finance, as follows:

> Q:    May management qualify its conclusions by saying that registrant's internal control over financial reporting are effective subject to certain qualifications or exceptions or express similar positions?
>
> A.    No. Management may not state that the registrant's controls and procedures are effective except to the extent that certain problems have been identified or express similar qualified conclusions. Rather, management must take these problems into account when concluding whether registrant's internal control over financial reporting is effective. Management may state that controls are ineffective for specific reasons.

Sternman Decl. Ex. K.   In addition, in an earlier release effective August 14, 2003, the SEC stated as follows:

> In disclosures required under current Item 307 of Regulation S-K . . . some companies have indicated that disclosure controls and procedures are designed only to provide "reasonable assurance" that the controls and procedures will meet their objectives. In reviewing those disclosures, the Commission Staff has generally not objected to that type of disclosure. The Staff has, however, requested companies including that type of disclosure to set forth, if true, the conclusions of the principal executive and principal financial officer that the disclosure controls and procedures are, in fact, effective at the "reasonable assurance" level.

35

Management's Report on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports, Exchange Act Release No. 47,986, 80 S.E.C. Docket 1014 (June 5, 2003).

In light of what appeared to be a ban on "qualified conclusions" in response to Item 307, as well as a lack of clarity as to how to "fix" a qualified conclusion, Dana concluded that it was better practice for a registrant to limit the S-K Item 307 response to the exact requirements of that Item, without elaboration or qualification. Dana did so, beginning with its Form 10-K for the fiscal year ended December 31, 2004, and has done so without exception since, as have many other registrants.

CONCLUSION

For the reasons set forth herein, as well as those previously set forth, Defendants' renewed motion should be granted in all respects and judgment entered dismissing the Complaint with prejudice and without leave to replead.

Dated:  June 8, 2009

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By: _____

Joel W. Sternman (*pro hac vice*)
Anthony L. Paccione (*pro hac vice*)
Daniel A. Edelson (*pro hac vice*)
Cameron Balahan
575 Madison Avenue
New York, NY 10022
(212) 940-8800
-and-
**COOPER & WALINSKI, L.P.A.**
900 Adams Street
Toledo, OH 43624
(419) 241-1200

**Attorneys for Defendants Michael J. Burns
and Robert C. Richter**

36