UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

| | | |
|---|---|---|
| HOWARD FRANK, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 3:05-cv-07393-JGC **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Chief Judge James G. Carr |
| DANA CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF THEIR RENEWED MOTION TO DISMISS

LANDSKRONER • GRIECO • MADDEN, LLC
JACK LANDSKRONER (0059227)
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: 216/522-9000
216/522-9007 (fax)

Liaison Counsel

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MICHAEL J. DOWD
DEBRA J. WYMAN
SAMANTHA A. SMITH
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

## TABLE OF CONTENTS

                                                                                                            **Page**

I.     Preliminary Statement ............................................................................................... 1

II.    The Sixth Circuit Pre-*Tellabs* Decisions Submitted by Defendants do not Aid the Court's Application of the *Tellabs* Standard ................................................................. 1

                1.     *City of Monroe Emples. Ret. Sys. vs. Bridgestone*, 399 F.3d 651 (6th Cir. 2005) ........................................................................................... 2

                2.     *Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004) .............................................. 4

                3.     *P.R. Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) ................. 5

                4.     *Stambaugh v. Corrpro Cos.*, 116 Fed. Appx. 592 (6th 2004) ..................... 6

III.    *Tellabs* Requires a Case-Specific Analysis to Determine if a Complaint is Properly Pled ............................................................................................................. 7

IV.    The Supreme Court's *Ashcroft* Decision ............................................................... 8

V.     Defendants' Modification of their Sarbanes-Oxley ("SOX") Disclosures Adds to the Strong Inference of Scienter .............................................................................. 10

VI.    Conclusion .............................................................................................................. 12

I. **Preliminary Statement**

Defendants' motion to dismiss should be denied. In each of the cases the parties have analyzed, both pre and post *Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the critical factor was whether the plaintiff had pled that the defendants were informed of the allegedly concealed information. Dismissals were entered and affirmed based in large part on the absence of such allegations. Importantly, in each case where a motion to dismiss was denied, the courts found the complaint contained allegations describing the communication of concealed facts to defendants, and in a few circumstances, held that the information was so critical to the defendant's business that it was unlikely the defendants were not informed of the situation. Here, plaintiffs' Complaint contains these very same types of allegations.

Fraud comes in all shapes and sizes and is bound only by the imagination of those perpetrating it. *Tellabs* demands that courts look at a complaint's allegations holistically, assuming their truth, to determine whether the inference of scienter from those allegations is strong, cogent and as least as likely as the non-culpable inferences urged by a defendant. This inquiry must be case-specific – whether a complaint meets this standard rises and falls on the allegations within it, not through the application of a formula which assesses whether certain categories of allegations are present. Plaintiffs' complaint passes this test.

II. **The Sixth Circuit Pre-*Tellabs* Decisions Submitted by Defendants do not Aid the Court's Application of the *Tellabs* Standard**

Defendants discuss a number of pre-*Tellabs* decisions from the Sixth Circuit which, for the most part, affirmed the dismissal of a securities fraud complaint. *See* Supplemental Memorandum in Support of Defendants' Renewed Motion to Dismiss (Doc. No. 108) ("Defs. Supp. Mem.") at 3-4. However, the ultimate scienter holdings in each of these cases was dependant on the application of the "'most plausible of competing inferences'" standard specifically rejected by the Supreme Court

in *Tellabs*, 551 U.S. at 324.[1] Where, prior to *Tellabs*, a plaintiff in the Sixth Circuit had to plead scienter inferences stronger than the non-culpable inferences advanced by a defendant, now it is the defendant's burden to advance non-culpable inferences ***stronger*** than a plaintiffs' fraudulent inferences in order to prevail on a motion to dismiss.  Thus, these cases provide little by way of guidance for this Court's analysis of scienter under the less rigorous "at least as likely" standard articulated in *Tellabs*.  *Id.*  Plaintiffs, however, provide the Court with an analysis of each of the pre-*Tellabs* Sixth Circuit decisions discussed by defendants.

>    **1.**    ***City of Monroe Emples. Ret. Sys. vs. Bridgestone*,**
>             **399 F.3d 651 (6th Cir. 2005)**

**Facts**:  This securities class action arises from the defective production of a line of Firestone tires that resulted in passenger vehicle crashes and fatalities, many of which were installed on the Ford Explorer in the early 1990s.  *Id*. at 656.  Plaintiffs allege that defendants made misleading statements to the public regarding the company and its tire production line during a time in which they were aware of the problems with the tires.  *Id*.  The lower court dismissed plaintiffs' claims and the Sixth Circuit reversed in part.

**Relevant Holdings**:

<u>False and Misleading Statements</u>:  The court found that some statements about the quality or safety of Firestone's tires were "loosely optimistic statements" and were not actionable.  *Id*. at 671.  However, Firestone's statement that they continually monitored their tires and that their quality was reinforced by objective data was actionable.  *Id*. at 671-72.  Such a statement is both factual and material and is therefore not a statement of general optimism or purely opinion.  *Id*. at 674.  Also, representations in Firestone's annual report that no impairment of corporate assets was likely to

---

[1]    Here, as elsewhere, emphasis has been added or citations omitted, unless otherwise noted.

occur as a result of problems arising from customer or regulator actions was an actionable statement as several suits had been brought and settled. *Id*. at 679-80.

Scienter: The court found an inference of scienter based on allegations that defendants were aware of production problems at one of Firestone's plants during a time in which defendants were making positive statements to the public about the quality and safety of the company's products. *Id*. at 684. Scienter was also raised where an internal document and rise in complaints were in tension with representations (*id*. at 687); and where the Annual Report stated that there were no actual, material losses connected to the lawsuits but the CEO had met quarterly with senior management, and lawsuits and related claims were discussed during the meetings – knowledge of CEO was attributable to company (*id*. at 688). Scienter was not found against the CEO where plaintiffs failed to allege that he played any role in drafting, reviewing or approving the misleading representations. *Id*. at 690.

**Application to *Dana* case**: Despite the fact that this is a pre-*Tellabs* case that applied the stricter "most plausible" standard, plaintiffs' allegations here raise an inference of scienter even under this stricter standard. Similar to *Bridgestone*, plaintiffs have alleged that defendants were aware of the fraud occurring at certain plants while they were making positive statements to the public about the health of Dana – raising an inference of scienter. Further, defendants were intimately familiar with the goings-on of the company, knew about the fraud, yet continued to make misleading statements to the public regarding its financial condition. Defendants here played a direct role in presenting the misleading representations to the public; therefore, the claims against them are actionable.

***Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) Factors**: Factor No. 2 – Divergence between internal reports and external statements; Factor No. 3 – Proximity of fraudulent statements and later disclosure of inconsistent information; Factor No. 6 – Disregard of the most current factual

information before making statements; Factor No. 7 – Disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; Factor No. 9 – Self-interested motivation.

### 2. *Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004)

**Facts**: Plaintiffs brought suit against a third party auditor who they alleged facilitated the commission of the company's fraud during the class period. *Id*. at 232. Affirming the district court's dismissal, the Sixth Circuit held that plaintiffs failed to allege that the auditor acted with the requisite scienter.

**Relevant Holding**: This is a pre-*Tellabs* decision applying the now defunct "most plausible" standard. The court held that "the strongest inference that can be drawn from [plaintiffs' allegations] is that Ernst & Young must have deliberately or recklessly ignored [adverse information] in preparing its audit report." *Id*. at 230. *Fidel* does not hold, as defendants have represented to the Court, that in assessing scienter the magnitude of financial fraud is not a factor, but holds that the magnitude of financial fraud *alone* cannot support scienter. *Id.* at 231 (citing *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (holding that the failure to follow accounting standards "is, *by itself*, insufficient to state a securities fraud claim").

**Application to *Dana* case**: This case is inapplicable as it is a pre-*Tellabs* decision wherein the Sixth Circuit employed the stricter "most plausible" standard. Defendants' reliance on this case for the proposition that the magnitude of the financial fraud at Dana is irrelevant to scienter not only misstates *Fidel* but is at odds with *Tellabs*' requirement that the collection of plaintiffs' allegations be considered in assessing scienter. *Fidel* is also distinguishable because it assesses the scienter of a third-party auditor in a securities fraud, not company executives directly involved in the fraud.

*Helwig* **Factors**: None.

### 3.    *P.R. Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004)

**Facts**:  Plaintiffs were investors in the stock of Intrenet, Inc.  Plaintiffs alleged that defendants – two Intrenet officers and Intrenet's outside auditor Arthur Andersen – committed securities fraud by issuing false and misleading financial statements and press releases that masked the company's true financial condition, leading to artificial increases in stock prices.  *Id*. at 678.  As to the individual defendants, the plaintiffs alleged that as top-level executives and control persons, they knew of, or recklessly disregarded, the alleged misrepresentations.  *Id*. at 679.  Plaintiffs also posited that the outside auditor issued false and misleading audit reports.  *Id*.  The lower court dismissed the plaintiffs' claims and the Sixth Circuit affirmed.  The court did not grant the plaintiffs' request for leave to amend.

**Relevant Holdings**:

<u>Scienter</u>:  Based upon the pre-Tellabs "most plausible" standard, the Sixth Circuit held plaintiffs' allegations against the individual defendants did not raise the most plausible of competing scienter inferences.  *Id*. at 692.  Overall, the court held that plaintiffs did not properly allege that the information regarding the company accounting improprieties were communicated to the individual defendants.  Specifically the court held that defendants' positions alone (*id*. at 688); vague statements in a press release regarding broad operation plans and goals (*id*. at 688-89); and the occurrence of an investigation by an outside auditor only months before the company collapse, without any allegations about what the consultant actually discovered (*id*. at 691), was not enough to impute knowledge to the defendants so as to raise an inference of scienter.  Plaintiffs' allegations of accounting irregularities also did not support scienter as the irregularities alleged actually turned the company's operating loss of $50,000 to a profit of $750,000 (*id*. at 686); and allegations that the company's accounts receivable increased by 14% while its operating revenues increased by 8% did not create a sufficient red flag.  *Id*. at 687.

Leave to Amend: The court denied plaintiffs' leave to amend as plaintiffs had previously amended the complaint and plaintiff did not provide the court with any information as to why they sought leave. *Id*. at 699.

**Application to the *Dana* case**: *P.R. Diamonds* is a pre-*Tellabs* decision that applied the overturned "most plausible" standard. Therefore, to the extent defendants suggest this case is applicable to the scienter analysis, they are wrong. That being said, this is a case where plaintiffs failed to allege that the information regarding the fraudulent accounting was transmitted to the defendants. That is not the case here, where plaintiffs have pled that defendants were aware of and perpetuated the ongoing fraud at Dana. As to leave to amend, *P.R. Diamonds* does not apply as plaintiffs here have provided the Court not only with several reasons why leave to amend is warranted (*see* Plaintiffs' Memorandum of Law in Opposition to Defendants' Renewed Motion to Dismiss Consolidated Complaint (Doc. No. 104) ("Pltfs' Opp.") at 47-50), but have also provided a proposed amended complaint (*see* Ex. A to Plaintiffs' Supplemental Submission in Opposition to Defendants' Motion to Dismiss (Doc. No. 111) ("Pltfs' Supp. Mot.")).

*Helwig* **Factors**: Factor No. 3 – Proximity of fraudulent statements and later disclosure of inconsistent information; Factor No. 6 – Disregard of the most current factual information before making statements; Factor No. 9 – Self-interested motivation.

### 4. *Stambaugh v. Corrpro Cos.*, 116 Fed. Appx. 592 (6th 2004)

**Facts**: Plaintiff filed a securities class action suit alleging that defendant materially overstated revenues and understated expenses in its Australian subsidiary in order to minimize the adverse impact of defendant's declining business and its ability to satisfy its financial requirements under debt agreements. *Id*. at 594.

**Relevant Holdings**: This is an unpublished case.

<u>Scienter</u>: This is a pre-*Tellabs* decisions which applies the "most plausible" pleading standard. Based on this more stringent standard, the Sixth Circuit held that none of the factual circumstances alleged by the plaintiff gave rise to a strong inference of scienter when considered in totality. *Id*. at 597. The inference of scienter was not stronger than the inference that the company was a poorly-run business whose U.S. executives failed to closely monitor the accounting controls of its foreign subsidiaries. *Id*. at 597-98.

<u>Leave to Amend</u>: Plaintiff was not granted leave to amend as he did not present the court with any indication of the allegations that would be contained in an amended complaint. *Id*. at 598.

**Application to *Dana* case**: *Stambaugh* is a pre-*Tellabs* decision that applied the overturned "most plausible" standard and is not applicable to a *Tellabs* scienter analysis. As to leave to amend, *Stambaugh* does not apply as plaintiffs here have provided the Court not only with several reasons why leave to amend is warranted (*see* Pltfs' Opp. at 47-50), but have also provided a proposed amended complaint with the additional allegations. *See* Ex. A to Pltfs' Supp. Mot.

**III.    *Tellabs* Requires a Case-Specific Analysis to Determine if a Complaint is Properly Pled**

Contrary to defendants' assertion otherwise, courts applying the *Tellabs* standard have recognized that there is no magic formula or litmus test for accessing the adequacy of a securities fraud complaint, and that each case must be analyzed separately. *See Institutional Investors Group vs. Avaya, Inc.*, 564 F.3d 242, 269 (3d Cir. 2009) ("as with all totality-of-the-circumstances tests, our analysis will be case specific"). That being said, there is a common thread present between the complaints attached to defendants' supplemental memorandum (Doc. No. 108) and plaintiffs' Complaint (Doc. No. 52) – in each case the complaint contains allegations that the information regarding the fraudulent conduct was transmitted to defendants. *See*, *e.g.*, *ASG* Complt. (Defs' Ex. C) ¶¶42-44; 47, 49-55, 58, 62, 72, 74; *U.S. Unwired* Complt. (Defs' Ex. A) ¶¶6-10, 56-58, 61, 65-69,

82, 84, 86, 91, 92; *Huffy* Complt. (Defs' Ex. D) ¶¶2-4, 42-46, 48-51, 54, 55; *Boston Scientific* Complt. (Defs' Ex. B) ¶¶1, 37, 53, 54, 80, 82, 93, 95, 109-112, 118, 119, 121.  As has been exhaustively briefed and argued at the May 18, 2009 hearing, defendants here were aware of and facilitated the fraudulent conduct at Dana – the Complaint sets forth how, when and from whom the information was transmitted to the defendants – similar to the allegations in the complaints defendants attach.  *See Dana* Complt., ¶¶15, 47-51, 53-55, 60-66.[2]  In each situation, the defendants were aware of the fraud and either perpetuated it and/or turned a blind eye to its commission.  *See ASG* Complt. (Defs' Ex. C) ¶¶53, 58.

Specific case facts alleged in these other complaints, while interesting, are not relevant to the Court's analysis of the complaint in this case.  *Tellabs* demands that plaintiffs' Complaint be measured based upon the information alleged within it – not whether it contains certain categories of allegations.  The Complaint here meets, in every respect, the detail demanded by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and *Tellabs*.

**IV.    The Supreme Court's *Ashcroft* Decision**

Defendants spend a substantial amount of space discussing the Supreme Court's recent decision in *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937 (2009). *See* Defs. Supp. Mem. at 30-33. This decision, however, has no bearing on the matter before this Court.

*Ashcroft* deals with notice pleading issues – what is required to plead in satisfaction of Federal Rule of Civil Procedure 8(a)(2).  129 S. Ct. at 1948-53.  As defendants themselves acknowledge, "PSLRA complaints are subject to far more stringent pleading standards than those to which the *Iqbal* complaint is subject." Defs. Supp. Mem. at 32.  Thus, because plaintiffs' Complaint

---

[2]   *Dana* Complt. "¶" or "¶¶" references are to the Consolidated Class Action Complaint for Violation of the Securities Exchange Act of 1934 filed 8/15/2006 (Doc. No. 52).

- 8 -

meets the more rigorous requirements of the PSLRA, it necessarily meets the Rule 8 notice pleading standard articulated in *Ashcroft*.

For example, plaintiffs allege in great detail what information defendants received, when they received it and from whom they received it. *Dana* Complt., ¶¶46-55. Plaintiffs allege that the reports and meetings defendants received and attended informed them that Dana's business was suffering substantially. *Id*. Plaintiffs also allege that, despite this information, defendants decreased by 40% the valuation allowance against Dana's deferred tax assets even while they knew that Dana's cash flow had crashed by 95% declining from $984 million to $44 million between 2000 and 2004, that Dana's profit margins had shrunk 14% within two years, that Dana's EBITDA had steadily decreased and that Dana's competitors were increasing the valuation allowances on their deferred tax assets because of industry pressures relating to the increasing cost of steel. *Id*., ¶¶64-68.

Defendants, of course, ignore these details to suit their purpose in attempting to draw a parallel between this case and the complaint in *Ashcroft*. Defs. Supp. Mem. at 32-33. Defendants' ignorance does not win them much ground. Plaintiffs' allegations are not "bare" legal conclusions like in *Ashcroft*. Plaintiffs plead substantial factual detail to substantiate their allegations that defendants made false and misleading statements to Dana's investors. These allegations must be accepted as true for purposes of determining whether the PSLRA's scienter standard as articulated in *Tellabs* has been met. *Tellabs*, 551 U.S. 308, 322 (2007); *see also Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (in assessing a Rule 12(b)(6) motion, a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"). As discussed at length in plaintiffs' briefing and at the May 18, 2009 hearing, plaintiffs' Complaint more than satisfies the PSLRA scienter standard. *Ashcroft* is simply irrelevant to this discussion.

## V. Defendants' Modification of their Sarbanes-Oxley ("SOX") Disclosures Adds to the Strong Inference of Scienter

Defendants' arguments concerning their modified SOX disclosures do nothing to dilute the inference of scienter gleaned from plaintiffs' allegations.

First, defendants' argument asks this Court to conclude that the modification of the disclosures made them "stronger." Defs. Supp. Mem. at 34. Even if it were appropriate for the Court to make such a factual finding, it is not a logical conclusion based upon the modification defendants made. Defendants' SOX disclosure initially stated that Dana's disclosure controls and procedures "are effective in providing reasonable assurance that material information relating to Dana and its consolidated subsidiaries was made known to them during the period covered by this report." *Id.* at 33. Defendants changed this language to say that the disclosure controls and procedures "are effective." *Id.* at 34. Defendants' disclosures no longer assured investors that the controls worked to provide defendants with "material information" on Dana. Such a modification can not plausibly be said to make the disclosure "stronger," as defendants contend, but is more reasonably understood as making the disclosure more generic and generalized. Given the breadth of the internal control problems that defendants later admitted existed at the time the SOX disclosures were made, it is reasonable to infer that defendants were making their disclosures less specific to avoid having to disclose the control deficiencies.

Second, defendants' argument that the Securities and Exchange Commission ("SEC") instituted a "ban" of the "reasonable assurance" language causing them to make the change is not supported by the documents defendants cite nor their contemporaneous actions. Defs. Supp. Mem. at 35. Neither the August 14, 2003 SEC Release quoted by defendants, nor the Interpretative Q&A attached as Exhibit K to defendants' supplemental memorandum, can be read to "ban" the language defendants modified. The August 14 Release specifically states that the "reasonable assurance" language that defendants used prior to the 2004 Form 10-K was acceptable. Indeed, defendants

continued to use this language in Dana's 3Q03 Form 10Q, 2003 Form 10-K, 1Q-3Q04 Form 10Q reports presumably with the SEC's blessing.  The Interpretative Q&A (Defs' Ex. K) likewise does not support defendants' new "ban" argument.  This document indicates that it was "Modified: 06/22/2004" – defendants claim is dated October 6, 2004 (Defs. Supp. Mem. at 35) – yet defendants continued to use the "reasonable assurance" language in Dana's 2Q and 3Q04 Form 10Q reports both of which were filed after the SEC's supposed "ban."

It is undisputed that throughout the class period defendants' SOX disclosures did not indicate anything other than Dana having working, effective and adequate internal financial controls.  However, defendants have admitted that throughout the class period that Dana's financial controls were seriously deficient.  It is reasonable, given the entirety of plaintiffs' allegations, that defendants modified their SOX disclosures not because of some "ban" but because they were trying to avoid disclosing the control problems that defendants' SOX evaluations uncovered.  Plaintiffs' inference is more cogent and compelling than the "ban" inference defendants now urge, particularly considering defendants continued to use the "banned" language.

## VI. Conclusion

For the reasons explained in plaintiffs' briefs opposing defendants' renewed motion to dismiss, as well as in the May 18, 2009 argument, plaintiffs' Complaint includes sufficient detail to meet the exacting standards required by the PSLRA. Defendants' renewed motion to dismiss should be denied.

DATED: June 22, 2009

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MICHAEL J. DOWD
DEBRA J. WYMAN
SAMANTHA A. SMITH


       s/ Debra J. Wyman
DEBRA J. WYMAN

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

LANDSKRONER • GRIECO • MADDEN,
  LLC
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: 216/522-9000
216/522-9007 (fax)

Liaison Counsel

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
4748 Wisconsin Avenue, N.W.
Washington, DC 20016
Telephone: 202/362-0041
202/362-2640 (fax)

Additional Counsel for Plaintiffs

S:\CasesSD\Dana Corp\BRF00060100-supp sub reply.doc

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 22, 2009.

    s/ Debra J. Wyman
    DEBRA J. WYMAN

    COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
    655 West Broadway, Suite 1900
    San Diego, CA  92101-3301
    Telephone:  619/231-1058
    619/231-7423 (fax)
    E-mail:debraw@csgrr.com

# Mailing Information for a Case 3:05-cv-07393-JGC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Joseph M. Callow , Jr**
  jcallow@kmklaw.com,ddaddesa@kmklaw.com

- **Jack Landskroner**
  jack@landskronerlaw.com,debra@landskronerlaw.com,drew@lgmlegal.com

- **Ann L. Lugbill**
  alugbill@murphypllc.com,lisajohnsoncincinnati@gmail.com

- **Darren J. Robbins**
  e_file_sd@csgrr.com

- **Keith W. Schneider**
  snichelson@ms-lawfirm.com

- **Scott D. Simpkins**
  sdsimp@climacolaw.com

- **Samantha A. Smith**
  ssmith@csgrr.com,e_file_sd@csgrr.com

- **Joseph P. Thacker**
  thacker@cooperwalinski.com,j.sternman@kattenlaw.com,baker@cooperwalinski.com,anthony.paccione@kattenlaw.com

- **Debra J. Wyman**
  debraw@csgrr.com,hectorm@csgrr.com,miked@csgrr.com

- **David W. Zoll**
  david@toledolaw.com,angela@toledolaw.com,christy@toledolaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Plumbers & Pipefitters National Pension Fund
Landskroner Grieco Madden, Ltd.
1360 West 9th Street, Ste. 200
Cleveland, OH 44113

SEIU Pension Plans Master Trust
Landskroner Grieco Madden Ltd
1360 West 9th Street, Ste. 200
Cleveland, OH 44077

West Virginia Laborers Pension Trust Fund
Landskroner Grieco Madden, Ltd.
1360 West 9th Street, Ste. 200
Cleveland, OH 44113
```