# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Plumbers & Pipefitters, etc., et al.,                    Case No. 3:05CV7393

     Plaintiffs

     v.                                              **ORDER**

Michael J. Burns, et al.,

     Defendants

*********************

Hawaii Ironworkers, etc., et al.,                        Case No. 3:10CV371

     Plaintiffs,

     v.

Bernard N. Cole, et al.,

     Defendants

These cases arise from events in 2004 and 2005 preceding the bankruptcy of Dana Corporation and the resulting loss in value of shares held by the plaintiffs. After Dana announced that it would have to revise is earning statements, the company's Audit Committee retained

Skadden, Arps, Meagher & Flom (Skadden) to conduct an investigation into those events and their outcome.

After conducting extensive interviews, Skadden prepared narrative memoranda memorializing what it had learned from the interviewees. Dana then provided copies of the memoranda to the Securities & Exchange Commission. Plaintiffs in this litigation have also obtained copies of the memoranda.

During the course of pretrial discovery in this case, plaintiffs' counsel have asked those whom Skadden interviewed about the information and statements reflected in the memoranda. Because, according to plaintiffs, five of the defendants in these cases denied making or qualified statements that the memoranda attributed to them, plaintiffs seek to obtain copies of the lawyer-interviewers' notes. Skadden, whom Dana (not a party in this litigation) retained to conduct the interviews, has refused to provide its attorneys' rough notes, claiming, *inter alia*, attorney work product.

The plaintiffs, disputing that contention, and arguing, as well, that Dana waived any claim of attorney work product when it provided the memoranda to the SEC, have refused to turn over the rough notes. The plaintiffs have filed a motion to compel asking me to require Skadden to do so.

On review of the motion to compel and opposition, I held a telephone conference with counsel for Skadden and the plaintiffs. As a result of that conference, and following my entry of an order to that effect, Skadden has produced the notes under seal for *in camera* inspection. Plaintiffs' counsel have submitted portions of the depositions of two defendants, Douglas Hodge and William Hennessy. Plaintiffs have also submitted the Skadden memoranda of the firm's interviews with those two defendants.

2

When I entered the order requiring the parties to make those submissions, I assumed that I would read the deposition, memoranda, and interview notes to compare and contrast what each defendant, according to the notes, told the Skadden interviewer with the pertinent portions of the depositions.

I did not do so: instead, I read the deposition excerpts and the memoranda. I did not read or otherwise review the rough notes – mainly because they are not legible or comprehensible.

Based on the work I've done so far, I have concluded, as to: 1) Hodge no further inquiry or production need occur; and 2) Hennessy, Skadden should produce typewritten copies of those portions of the rough notes that correspond to that defendant's denial or qualification of statements the interviewers attributed to him in the memo they prepared for Dana.

My reasons for these decisions follow.

### A. Douglas Hodge

At the outset of his deposition Hodge expressed several general reservations about the possible accuracy of the Skadden memoranda.

These objections were that the memoranda were in narrative, rather than Q&A form. As a result, Hodge stated, there may have been some ambiguity in his responses. Without knowing the questions, and having just the responses the interviewer attributed to him, he asserted, some of those responses would not be in the context of particular questions. This was especially so with regard to the time frame to which some responses related (*e.g.*, whether the response related to something he knew before or after Dana's announcement of the need to restate its earnings).

He also noted the memoranda sometimes referred to defendant Burns as "Bones." He acknowledged, though, that it was clear that Burns was the person to whom the author was referring.

3

Similarly, he indicated the interviewer on occasion used the first name (Bob, Mike) of two distinct individuals. He observed it would have been better to use, as he would in his deposition, only last names.

The specific instances in which Hodge connected his generic concerns to specific statements or issues were few, and included expressions of uncertainty only as to:

- the context of a response (re. when Steimle feared for his job (Tr. 95-6);

- the time frame in which he made statements the memoranda attributed to him (re. Steimle being "burned out" (Tr. 93), (apparently) re. Steimle fearing for his job (Tr. 100), when he learned that Price Waterhouse was OK with the Maxus transaction (Tr. 365-66));

- his deposition testimony that he did not remember making statements (re. Steimle's fear for his job (Tr. 94, 96, 101), re. job-related pressure (Tr. 364-65), re. telling Frank Martin "approval . . . had to be squeaky clean;" not remembering specific words) (Tr.364-65)).

These limited instances hardly manifest significant, much less wall-to-wall repudiation of the accuracy of the memoranda and the account they give of what the Skadden lawyers learned from Hodge. To the extent any resolution of any uncertainty is needed, further, focused questions as to precisely when, to the best of Hodge's recollection, certain events happened, circumstances existed, or he learned something can provide clarification. That being so, nothing more, including disclosure of the lawyers' interview notes, is necessary.

### B. William Hennessy

With regard to Hennessy, however, I conclude that I need to proceed further with my own review before determining whether to order disclosure of the rough notes or any portion of them to plaintiffs.

Unlike Hodge, Hennessy in several instances stated that he did not make the statements the memo of his interview attributed to him. In many of those instances, he challenged the words the interviewers used in quotations and other statements they attributed to him. He asserted "they took liberties," "that isn't me," and otherwise expressed disagreement with, or, at least, qualified what the memorandum reported he said or expressed.

On the other hand, he acknowledged that much of what the memorandum contained was accurate.

Despite the frequency with which Hennessey expressed disagreement or differences with the memorandum's attributions, I do not believe that it would be appropriate to order wholesale production of the interviewers' notes. Hennessy appears not to have challenged much – perhaps most – of what the memorandum contains. In any event, I should take care to avoid exposure of anything beyond that which might in fact show a possible inconsistency between his sworn deposition testimony and the interviewers' narrative formulation of what they heard and learned from him during their interview.

That being said, I shall order Skadden to provide – in typewritten form – those portions of the handwritten notes that relate to the memorandum statements that Hennessy disputed, or which he qualified in his deposition.[1] To the extent necessary and possible, Skadden shall also provide an explication of abbreviations, etc., so that I can understand, as to those portions, the gist of what the interviewer noted during the interview.

---

[1] I attach a list of those portions of the deposition where Hennessey disputed, in one war or another, what the memorandum reported.

Once Skadden has complied with this further request, I will review the notes, comparing them with the pertinent attributions in the memo and denials or qualifications in the deposition to determine whether the notes reveal inconsistencies between their content and Hennessy's deposition assertions.

If I find such inconsistencies, I expect to notify counsel, so that, if they wish, I may hear further as to what to do about producing the pertinent portions of the notes.

### C. Notes as to Other Defendants

With regard to challenges, if any, by three other defendants as to what the memoranda attributed to them, the plaintiffs have not submitted a marked-up deposition transcript highlighting any disputes on their part. As to them, accordingly, there is no basis for ordering either production of the interviewers' notes or conducting any further *in camera* or other inquiry as to their production.

It is hereby

ORDERED THAT:

1.      Plaintiffs' motion to compel production of interviewers' notes as to defendant Hodge denied;

2.      Skadden to make further production re. interviewers' notes of interview with defendant Hennessy; and

3.      The motion to compel as to other three defendants denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

6

**APPENDIX**


Pages in William E. Hennessy's Deposition
Where Hennessy Disputes the Accuracy of the Skadden Memorandum


- Page 17, lines 3-6: complains that Skadden interviewers took liberties in recording his responses

- Page 35, lines 10-14: would not have told Skadden he was unhappy Steimle would be controller

- Page 36, lines 11-23: interviewers took liberties in phrasing Hennessy's responses to questions

- Page 37, lines 18-24: did not recall saying there was a perception Steimle was not a strong leader

- Page 41, lines 2-25: didn't say he learned not to trust information he received from Steimle

- Page 44, lines 13-24; Page 45, lines 8-12: doesn't remember saying he was told Steimle wasn't right for controller position

- Page 137, lines 8-25; Page 138, lines 1-23: never said at the outset that the 2005 Plan was impossible to achieve

- Page 143, lines 5-25; Page 144, lines 1-2: never said he didn't know how anyone could have approved the 2005 Plan

- Page 145, lines 20-25; Page 146, lines 1-22: never said he immediately told Cole, Hodge, and others the 2005 Plan was not achievable

- Page 226, lines 10-25: complains interviewers generally took liberties in recording his statements and did not accurately record everything he said

- Page 230, lines 1-25; Page 231, lines 1-12: doesn't remember making, and implies he never made, statements about Maxus deal the Skadden memo attributes to him

- Page 255, lines 18-25; Page 256, lines 1-20: doubts whether he would've said there were still people at Dana who would say the 2005 Plan was impossible to achieve

- Page 263, lines 6-25: doubts he would told Skadden about what comments Dana made to financial markets (i.e, "the street")

- Page 269, lines 21-25; Page 270, lines 1-23: didn't say 2005 was the "end of the world" and doesn't remember saying everyone was scrambling to maximize their profits

- Page 275, lines 12-25: never said Burns was hostile with him to the start

- Page 276, lines 6-17: never made statements about Burns's public demeanor

- Page 277: lines 2-17: didn't say Miller was reluctant to scuttle the Sypris deal

- Page 277, lines 19-25; Page 278, lines 1-11: disputes phrasing of response attributed to him re. Sheehan's announcement about a steel transaction

- Page 286, lines 6-15: didn't say Dana signed contracts before reading them

- Page 287, lines 10-23: never said FIT violations were a regular practice at Dana