UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION (TOLEDO)

| | | |
|---|---|---|
| PLUMBERS & PIPEFITTERS NATIONAL PENSION FUND; SEIU PENSION PLANS MASTER TRUST; and WEST VIRGINIA LABORERS PENSION TRUST FUND, On Behalf of Themselves and All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>    vs.<br><br>MICHAEL J. BURNS and ROBERT C. RICHTER,<br><br>               Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 3:05-cv-07393-JGC<br><br><u>CLASS ACTION</u><br><br>Senior Judge James G. Carr |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
EXCLUDE THE TESTIMONY OF TIMOTHY S. LUCAS

**TO BE E-FILED UNDER SEAL PURSUANT TO CONFIDENTIALITY
PROTECTIVE ORDER SIGNED BY THE HONORABLE JAMES G. CARR ON
NOVEMBER 23, 2011 (DKT. NO. 148)**

LANDSKRONER • GRIECO • MERRIMAN, LLC
JACK LANDSKRONER (0059227)
1360 West 9th Street, Suite 200
Cleveland, OH  44113
Telephone:  216/522-9000
216/522-9007 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
MICHAEL J. DOWD
DEBRA J. WYMAN
LAURIE L. LARGENT
MAUREEN E. MUELLER
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................1

II.   FACTUAL BACKGROUND ....................................................................................3

    A.    General Discussion of DTAs ...............................................................................3

    B.    Audits and Reviews ..............................................................................................5

    C.    Dana's Growing DTAs .........................................................................................6

    D.    Dana's Write-off of the DTAs .............................................................................9

    E.    Plaintiffs' DTA Expert, Andrew Mintzer ..........................................................10

    F.    Defendants' DTA Expert Timothy Lucas ...........................................................11

III.  ARGUMENT ..........................................................................................................14

    A.    Lucas's Opinion Is Not Based on Reliable and Sufficient Data ...........................14

        1.    Lucas Relied Solely on Data Cherry-Picked by Defense Counsel ...........15

        2.    Lucas Relied on Erroneous Facts Provided by the Defense
              Attorneys ................................................................................................16

        3.    Lucas Ignored Contrary Evidence ...........................................................18

        4.    Lucas Did Not Comply With Federal Rule of Civil Procedure 26(a)........21

    B.    Lucas Is Acting as a Mouthpiece for Defendants Rather than Employing a
       Reliable Methodology..........................................................................................22

    C.    Lucas's Opinion Will Confuse and Mislead the Jury Because He Used a
       Different Methodology than Defendants ..............................................................24

IV.   CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*Ashland Hosp. Corp. v. Affiliated FM Ins. Co.*,
No. 11-16-DLB-EBA, 2013 U.S. Dist. LEXIS 88068
(E.D. Ky. June 24, 2013) ...................................................................18

*Ask Chems., LP v. Computer Packages, Inc.*,
593 Fed. App'x 506 (6th Cir. 2014) ..........................................2, 21, 23

*Bielskis v. Louisville Ladder, Inc.*,
663 F.3d 887 (7th Cir. 2011) .............................................................19

*Bowman v. Corrs. Corp. of Am.*,
350 F.3d 537 (6th Cir. 2003) .............................................................24

*Buck v. Ford Motor Co.*,
810 F. Supp. 2d 815 (N.D. Ohio 2011) ...............................................24

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ...........................................................1, 18, 23

*Early v. Toyota Motor Corp.*,
277 Fed. App'x 581 (6th Cir. 2008) ....................................................19

*EEOC v. Bloomberg L.P.*,
No. 07 Civ. 8383 (LAP), 2010 U.S. Dist. LEXIS 92511
(S.D.N.Y. Aug. 31, 2010) .............................................................16, 21

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, L.P.*,
325 F. Supp. 2d 841 (M.D. Tenn. 2004), *vacated on other grounds*,
423 F.3d 539 (6th Cir. 2005) .............................................................15

*In re Heparin Prod. Liab. Litig.*,
MDL No. 1953, 2011 U.S. Dist. LEXIS 36299
(N.D. Ohio Mar. 21, 2011) (Carr, J.) ...................................................24

*In re Longtop Fin. Techs. Sec. Litig.*,
32 F. Supp. 3d 453, 463 (S.D.N.Y 2014) .............................................24

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
45 F. Supp. 3d 724, 739 (N.D. Ohio 2014) (Boyko, J.)...........................14

*J.M. Smucker Co. v. Weston Firm, P.C.*,
No. 5:13 cv 0488, 2013 U.S. Dist. LEXIS 98371
(N.D. Ohio July 15, 2013) .................................................................18

**Page**

*Johnson v. Manitowoc Boom Trucks, Inc.*,
   484 F.3d 426 (6th Cir. 2007) ................................................................15

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).................................................................1, 19

*Lava Trading Inc. v. Hartford Fire Ins. Co.*,
   No. 03 Civ. 7037 (PKC) (MHD), 2005 U.S. Dist. LEXIS 4566
   (S.D.N.Y. Feb. 14, 2005) .........................................................23

*McLean v. 988011 Ontario, Ltd.*,
   224 F.3d 797 (6th Cir. 2000) ................................................................16

*Mohney v. USA Hockey, Inc.*,
   138 F. App'x 804 (6th Cir. 2005) ........................................................23

*Nelson v. Tenn. Gas Pipeline Co.*,
   243 F.3d 244 (6th Cir. 2001) ................................................................14

*Obrycka v. City of Chi.*,
   792 F. Supp. 2d 1013 (N.D. Ill. 2011) ................................................21

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
   606 F.3d 262 (6th Cir. 2010) ................................................................22

*Smelser v. Norfolk S. Ry. Co.*,
   105 F.3d 299 (6th Cir. 1997) ................................................................18

*Spears v. Cooper*,
   No. 1:07-CV-58, 2008 U.S. Dist. LEXIS 107048
   (E.D. Tenn. Nov. 17, 2008) ................................................................23

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
   784 F.3d 311 (6th Cir. 2015) ................................................................14

*United States v. Gallion*,
   257 F.R.D. 141 (E.D. Ky. 2009).........................................................25

*United States v. Kinsella*,
   530 F. Supp. 2d 356 (D. Me. 2008) ....................................................24

- iii -

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
    Rule 26(a)....................................................................................................................21, 22

Federal Rule of Evidence
    Rule 403 ...............................................................................................................15, 24, 25
    Rule 702 .................................................................................................................. *passim*

Plaintiffs West Virginia Laborers' Pension Trust Fund and Plumbers & Pipefitters National Trust Fund respectfully move to exclude the proposed expert testimony of Timothy S. Lucas ("Lucas") offered in his October 8, 2014 report ("Lucas Rpt.") by Defendants Burns and Richter ("Defendants") because it is inadmissible under Federal Rule of Evidence 702 ("Rule 702"), and the related standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Lucas's testimony is inadmissible because he failed to reliably apply a methodology to accurate data.  *See* Fed. R. Evid. 702.

## I.    INTRODUCTION

This is a securities class action involving false and misleading statements by Defendants, CEO Michael J. Burns and CFO Robert C. Richter of Dana Corporation ("Dana" or the "Company"), during conference calls and in publicly issued financial statements.  *See* Dkt. No. 52-1. Defendants admitted most of the challenged statements were false when they admitted in October 2005 that they needed to restate their previously issued financial statements.  *See* Ex. 1 (Press Release, Oct. 10, 2005);[1] Ex. 2 (Amended Annual Report on Form 10-K 2004) at 15, 51-56.  At the same time, Defendants announced they would have to write-off Dana's over $900 million in deferred tax assets ("DTAs").  Ex. 1 (Press Release, Oct. 10, 2005).  However, Defendants did not restate their financial statements to write-off the DTAs in prior periods.  Plaintiffs have alleged that the second quarter 2005 ("2Q05") financial statements were false and misleading in that they reported $741 million in DTAs, all of which was written down to $0 just one quarter later.[2]  Dkt. No. 52-1, ¶¶123-24; Ex. 3 (Report on Form 10-Q 3Q05), 15; ███████████████████

████████████████████████████████████████████████████

---

[1]    All exhibits are attached to the Declaration of Debra J. Wyman in Support of Motions to Exclude filed concurrently herewith.  Unless otherwise noted, all emphasis is added and citations are omitted.

[2]    The DTA was $741 million as of 2Q05 and grew to over $900 million in 3Q05 before being written off.

████████████████████████████████████████████████████████

██████████████████

     The parties have exchanged expert reports relating both to the restated financials and the

DTAs.  This motion relates solely to the DTAs.  Plaintiffs' expert, ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

      ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████  *See Ask Chems., LP v. Computer Packages, Inc.*, 593 Fed.

App'x 506, 510 (6th Cir. 2014) ("Where an expert merely offers his client's opinion as his own, that

opinion may be excluded."). ██████████████████████████████

████████████████████████████████████████████████████████

- 2 -

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

## II.    FACTUAL BACKGROUND

Dana was a supplier of automotive parts and drive-train systems for passenger, commercial, and off-highway vehicles.  Ex. 8 (Report on Form 10-K 2004) at 3.  Dana was a 100 year old company by the time Burns took over as CEO in 2004 and had never restated its financials or declared bankruptcy.  *See id.*; ███████████████████████████  Yet, in 2005, Dana restated every financial statement signed by Burns.  Ex. 2 (Amended Annual Report on Form 10-K 2004) at 15, 51-56; ███████████████  A few months later, Dana declared bankruptcy.  ████ ███████████████  Unsurprisingly, Burns and Richter departed Dana.  ████████████ Ex. 9 (Press Release, March 6, 2006).

### A.    General Discussion of DTAs

Because a company only pays taxes when it has profits, DTAs are basically tax credits that a company accumulates in unprofitable years to use in lieu of cash to offset taxes in future profitable years.  ████████████████  Without deferred tax assets, a company that made, for example, $100 million in one year and lost $100 million the next, would end up paying substantial taxes (in year one) for that two-year period despite having no profit over the two-year period.  ██████████ ████████████████  But with DTAs, the hypothetical company can reclaim the taxes it paid on the $100 million in earnings in year one based on its $100 million loss in year two.  ████████ ████████████

GAAP allows a company to recognize DTAs as assets on the company's balance sheet so long as there is a reasonable and supportable basis to believe the company will return to profitability

in the future to benefit from the DTAs. ████████████████████ If the company is not expected to be profitable, then its DTAs must be written off. ██ In addition, a partial write-off is required if the company only has a reasonable and supportable basis to believe it will be able to recognize some, but not all, of its DTAs. ████████████████

Under GAAP, there is a rebuttable presumption that DTAs should be written off if a company's prior three years resulted in a cumulative loss. ████████████████ This is because a three-year cumulative loss is considered substantial negative evidence that the company may not be profitable enough in future years to benefit from the DTAs. ████████████████

████████ If the prior three years were all losses and if the trend showed those losses growing, the negative impact of the evidence is much greater. ████████████████ For example, a company with a $500 million loss in year one, followed by a profit of $100 million in year two, and a profit of $200 million in year three, would be viewed as much more likely to benefit from its DTAs, despite having a three-year cumulative loss, than a company with three years of consecutive and growing losses. ████████

Factors that are considered negative evidence when assessing the recoverability of DTAs under GAAP include further losses, growing losses, failure to meet forecasts, and unreliable forecasts. ████████████████████ ████████████████████ Factors that are considered positive evidence would include returning to profitability, meeting forecasts, or signing a new contract with a major customer. ████████████████

████████████████████ ██

The amount of positive evidence required to rebut the presumption of a write-off after a three year cumulative loss increases with each subsequent period of cumulative losses. ████████████

- 4 -

██████████████████████████████ The presumption is harder to rebut after four years of cumulative losses than after three, and more positive evidence is required. ██████████████ In performing a DTA analysis, GAAP places more weight on objectively verifiable evidence than subjective evidence. ████████████████ For example, while signing a new contract that will result in increased revenues requires future events to occur, it is more capable of objective verification because the contract can be confirmed. ██████████████ In contrast, a bare prediction that a company will become more profitable in the future than it has been in the past is subjective and entitled to less weight, absent verifiable support for the forecast. ██████████ ██████████████████████████ A forecasted return to profitability is particularly untrustworthy if the company has a history of failing to meet its forecasts, because less reliance can be placed on the company's forecasting process if it has historically proven to be unreliable. ████████████████████████

### B. Audits and Reviews

PwC conducted annual audits of Dana's financial statements based on calendar year-end results. PwC issued a "clean" audit opinion with regard to Dana's financial statements as of December 31, 2004, which were issued on March 8, 2005. ████████████████ ██████████████ In that opinion, PwC stated that Dana's financial statements were not materially misstated and they complied with GAAP. ████████████ ████ However, PwC was wrong, as it later acknowledged when it required Dana to restate its 2004 financial statements because they were, in truth, materially misstated and not in accordance with GAAP. ██████████████

PwC did not issue any written opinion with regard to Dana's 1Q05 and 2Q05 financial statements because it only conducted limited review procedures. ████████████

████████████████████████████████

██████████████████████ PwC never issued any opinion specific to Dana's DTAs, as its audits related to the financial statements as a whole.  ████████████

## C.    Dana's Growing DTAs

Dana had losses, and growing losses, in its U.S. operations in 2001, 2002, and 2003.  ██████████

██████████████████ As a result, its DTAs were growing substantially.  By the end of 2003, its DTAs were $378 million.  █████████████████

Although 2003 was the third consecutive and cumulative year of losses, thereby triggering the rebuttable presumption under GAAP that the DTAs should be written off, Lucas did not know what positive and objectively verifiable evidence Dana relied upon to avoid the write-off.  ████

██████████████ Burns was brought into Dana as its new CEO in early 2004 to return Dana to profitability.  Ex. 12 (Article February 2004).  However, Dana's U.S. losses continued, and in fact, grew in 2004.  ████████████████

During 2004, steel prices were rising and Dana was unable to pass them on to customers.  ██

████████████████████████████████████████

██████████  ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

███████████████████████████████████  ████

████████████████████████████████████████

████████████████████████████████████████

██████████  ██████████████████████████████

██████████████████████████████  ██████████

████████████  Ex. 8 (Report on Form 10-K 2004);  ██████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████  ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



1078148_1

[REDACTED]

**D.      Dana's Write-off of the DTAs**

Dana issued its 2Q05 financial statements on July 29, 2005. [REDACTED] The balance sheet showed DTAs of $741 million. *Id.* On September 15, 2005, Dana announced that it was likely to restate its previously issued financial statements. Ex. 28 (Press Release, Sept. 15, 2005). Dana also announced that in light of its worsening earnings outlook, it was looking into whether a write-off of its DTA was required. *Id.*; [REDACTED] Three weeks later, on October 10, 2005, Dana announced that it was writing off its DTA, effective September 30, 2015. Ex. 1 (Press Release, Oct. 10, 2005). Not one penny of the DTA was saved by any purported tax migration strategies. *See id.* [REDACTED]

- 9 -

██████████████████████████████████████████████████████

███████████████████████████████████████████ Moreover, the same negative

conditions blamed for the decision to suddenly write-off the entire asset in 3Q05 existed since the

start of the year.

    **E.**    **Plaintiffs' DTA Expert, Andrew Mintzer**

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████

    █████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████

    █████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

- 10 -

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

**F.**    **Defendants' DTA Expert Timothy Lucas**

████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████
██████████████████

██████████

██████████████████████████████████

██████████

███████████████████████████████████████████
█████████████

██████████

██████████████████████████████████████

██████████

████████████████████████████████████████████████

████████████████████████████

1078148_1

1078148_1

███████████████████████████████████████

███████

## III.   ARGUMENT

Lucas's proposed expert testimony is inadmissible.  For expert testimony to be admissible under Rule 702: (a) the witness must be qualified by "knowledge, skill, experience, training, or education"; (b) the witness's testimony must be reliable, *i.e.*, it must be "based on sufficient facts or data" and "the product of reliable principles and methods," which must be "reliably applied . . . to the facts of the case"; and (c) the witness's testimony must be relevant, *i.e.*, it must assist "the trier of fact to understand the evidence or to determine a fact in issue."  *See* Fed. R. Evid. 702; *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 323 (6th Cir. 2015).  Even where shortcomings in the proposed expert's factual basis or methodology may not independently warrant exclusion, the combination of flaws can "undermine the foundation of [the expert's] conclusions and render them unreliable."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 739 (N.D. Ohio 2014) (Boyko, J.).  The burden of proving admissibility rests on the proponent of the witness.  *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).  The Defendants cannot meet that burden here.

### A.   Lucas's Opinion Is Not Based on Reliable and Sufficient Data

Lucas's opinion is unreliable because it is based on materials cherry-picked by defense counsel and erroneous or incomplete data.  Rule 702 requires that an expert's opinion be based on "sufficient facts or data."  Fed. R. Evid. 702.  "'If an opinion is fundamentally unsupported, then it



offers no expert assistance to the jury.  Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible.'"  *Gibson Guitar Corp. v. Paul Reed Smith Guitars, L.P.*, 325 F. Supp. 2d 841, 846 (M.D. Tenn. 2004), *vacated on other grounds*, 423 F.3d 539 (6th Cir. 2005); *see also* Fed. R. Evid. 403.

### 1. Lucas Relied Solely on Data Cherry-Picked by Defense Counsel

Lucas is required to act as an objective expert, not an advocate for Defendants.  *See Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 435 (6th Cir. 2007) (emphasizing that expert testimony should be objective and affirming exclusion of "'quintessential expert for hire'").  Here, however, Lucas surrendered his objectivity by relying solely upon cherry-picked data provided by defense counsel that was incomplete and biased.  In doing so, Lucas acted as an advocate rather than an objective expert.

With regard to the selection of data, Lucas completely deferred to defense counsel without taking any steps to ensure the data he received was complete or representative rather than one-sided and biased:





Indeed, as set forth in ▮▮▮▮▮, there were many contradictory facts that Lucas failed to consider in relying on the data set provided by defense counsel.

Lucas's blind reliance on the data provided by counsel is analogous to that of the expert in *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383 (LAP), 2010 U.S. Dist. LEXIS 92511, at *45-*46 (S.D.N.Y. Aug. 31, 2010).  There, the court held that the expert's testimony "must be excluded" because the expert admitted that he (a) "only analyzed material provided and selected by the [party who retained him]," (b) "made no effort to ensure that the materials he reviewed were representative," and (c) "simply assumed the validity of the [materials]."  *Id*.  The court explained that "[r]elying solely on the information fed to him by the [party]" without performing any independent verification "undermine[d] the reliability of his analysis." *Id.* at *46.  Because Lucas's testimony establishes that the same is true here, his opinions should be excluded.

### 2.    Lucas Relied on Erroneous Facts Provided by Defense Counsel

Lucas's error in relying solely on the cherry-picked data from defense counsel is compounded by the fact that defense counsel provided inaccurate information.  The Sixth Circuit has explained that "[a]n expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000).

Lucas cannot rely upon facts asserted by counsel, as counsel cannot be a witness in a case in which they represent a party.  *See J.M. Smucker Co. v. Weston Firm, P.C.*, No. 5:13 cv 0488, 2013 U.S. Dist. LEXIS 98371, at *9 (N.D. Ohio July 15, 2013) (disqualifying attorney who was a necessary witness in the case).  More importantly, ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

Lucas's reliance on erroneous data supplied by the non-testifying defense attorneys makes his opinion unreliable and unhelpful to the jury.  *See Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (excluding expert who opined based on assumption that plaintiff did not have prior back injury, which was contrary to the facts); *Ashland Hosp. Corp. v. Affiliated FM Ins. Co.*, No. 11-16-DLB-EBA, 2013 U.S. Dist. LEXIS 88068, at *20 (E.D. Ky. June 24, 2013) (excluding expert who "effectively ignore[d] . . . inconvenient evidence" that was contrary to an important fact the expert had assumed to be true).

### 3.     Lucas Ignored Contrary Evidence

████████████████████████████████████████████████████

████████████████████████████████████████████████████  An essential function of the Court's gatekeeping role under *Daubert* is to ensure that a proposed expert "'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

- 18 -

expert in the relevant field.'" *Early v. Toyota Motor Corp.*, 277 Fed. App'x 581, 585 (6th Cir. 2008) (quoting *Kumho*, 526 U.S. at 142); *see also Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011) (expert must utilize the methods of relevant discipline).  Rather than apply the same intellectual rigor as an accountant in the field, Lucas acted as an advocate by accepting, without verification, management's purported reasoning while ignoring evidence that undercut his opinion.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████  ███████████  ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████▌  ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

      Lucas's failure to look beyond the bare conclusions offered by Defendants and into the actual

data is particularly troubling given many other contradictory facts.  ████████████████████

████████████████████████████████████████████████████

████████████████████████████  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████  ████████████  ██████████████████████████████

████████████████████████████████████████████████████

_____

▌  ████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

Lucas's acceptance of Defendants' counsel's representations as true and his failure to seek

out and consider contrary evidence is inapposite to the methodology applied by accountants in the

field and undermines the reliability of his opinions.  Therefore, his testimony should be excluded.

*See, e.g.*, *Ask Chems.*, 593 Fed. App'x at 510 (excluding expert whose "wholesale adoption of [the

party's] estimates, without revealing or apparently even evaluating the bases for those estimates . . .

cloak[ed] unexamined assumptions in the authority of expert analysis"); *Obrycka v. City of Chi.*, 792

F. Supp. 2d 1013, 1024-25 (N.D. Ill. 2011) (excluding expert who "did not interview" any of the

individuals involved, did not "conduct any independent research," and did not "investigate[] the

veracity of the materials Plaintiff's counsel provided to him, or request[] additional materials from

Plaintiff's counsel to further inform his opinion"); *EEOC*, 2010 U.S. Dist. LEXIS 92511, at *50-*53

(excluding expert who blindly credited and relied on the testimony of a manager of the defendant

company while rejecting testimony and evidence that contradicted the expert's opinions).

### 4.      Lucas Did Not Comply With Federal Rule of Civil Procedure 26(a)

Lucas did not keep track of or document all the materials he relied upon.  ██████████

██████████████████████████████████████████████████

-------------------

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████ ██████████████████████
█████████████████████████████

- 21 -

███████████████████████████████████████████████████████

████████████████████████ Lucas's failure to identify the materials he relied upon in forming his

opinion violates Federal Rule of Civil Procedure 26(a), which  requires all expert reports to contain

"a complete statement of all opinions the witness will express and the basis and reasons for them[,

and] the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a);

*see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (holding that

district court did not abuse its discretion in excluding testimony of expert who failed to adequately

explain the basis for opinions in his expert report).

### B.   Lucas Is Acting as a Mouthpiece for Defendants Rather than Employing a Reliable Methodology

A separate, but related reason that Lucas's DTA opinion is inadmissible is that he failed to

employ a reliable methodology.  An expert's opinion must be "the product of reliable principles and

methods" that have been "reliably applied . . . to the facts of the case."  Fed. R. Evid. 702.

Here, Lucas primarily just read a document discussing the DTA write-off and agreed with

███████████████████████████████████████████████████████

███████████████ Lucas did not analyze the relevant factors and reach an independent judgment as to

whether GAAP required a write-off of the DTA in 2Q05.

To get around this failing, Lucas limited his opinion by stating, ██████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████ But by

limiting his review to only the explanation for their decision, Lucas is simply acting as a mouthpiece

for Defendants.  It is clear that Lucas did not form an independent opinion based on the underlying

data (which contradicts the documentation of Defendants' judgment). ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

- 22 -



In order to assist the jury, Lucas needed to consider all relevant data, apply it to the relevant GAAP, and reach an opinion.  Lucas's opinion regarding the DTA should be excluded because it is not "the product of reliable principles and methods" that have been "reliably applied . . . to the facts of the case" as required by Rule 702.  *See Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 809 (6th Cir. 2005) ("'Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert.'"); *see Ask Chems.*, 593 Fed. App'x at 510 (holding that "[w]here an expert merely offers his client's opinion as his own, that opinion may be excluded"); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037 (PKC) (MHD), 2005 U.S. Dist. LEXIS 4566, at *47-*48 (S.D.N.Y. Feb. 14, 2005) (excluding expert who "simply based his opinions on estimates . . . supplied by the client" and "avoided meaningful inquiry into whether they had any basis in fact").  Indeed, Defendants can testify to their reasons to delay the write-off until 3Q05; they do not need Lucas to report them.  *See Spears v. Cooper*, No. 1:07-CV-58, 2008 U.S. Dist. LEXIS 107048, at *44-*45 (E.D. Tenn. Nov. 17, 2008) (excluding expert because his "testimony does not include any significant information beyond

- 23 -

what a jury could gather from" testifying witnesses).  Any additional testimony by Lucas about the "reasonableness" of Defendants' judgment would be improper, as an expert may not offer "opinion testimony as to the reasonableness of the Defendants' conduct."  *In re Heparin Prod. Liab. Litig.*, MDL No. 1953, 2011 U.S. Dist. LEXIS 36299, at *22-*23 (N.D. Ohio Mar. 21, 2011) (Carr, J.); *see also In re Longtop Fin. Techs. Sec. Litig.*, 32 F. Supp. 3d 453, 463 (S.D.N.Y 2014) (excluding accounting expert from testifying "that it was reasonable for [the defendant] to rely on [Deloitte's] audits").

### C.    Lucas's Opinion Will Confuse and Mislead the Jury Because He Used a Different Methodology than Defendants

Lucas's testimony will only confuse the jury because he used a different standard than Defendants purported to be using in determining whether a write-off was necessary.  To be admissible, expert opinions must assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  "This relevance requirement ensures that there is a 'fit' between the testimony and the issue to be resolved at trial." *Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 822 (N.D. Ohio 2011).  In addition, testimony that will only "confus[e] the issues, mislead[] the jury . . . [and] needlessly present[] cumulative evidence" should be excluded pursuant to Federal Rule of Evidence 403 ("Rule 403").  *United States v. Kinsella*, 530 F. Supp. 2d 356, 363 (D. Me. 2008).  *See also Bowman v. Corrs. Corp. of Am.*, 350 F.3d 537, 547 (6th Cir. 2003) (Rule 403 applies to expert testimony).





## IV.    CONCLUSION

For all the reasons set forth herein, Lucas's testimony will only serve to confuse, rather than assist the jury.  Because he relied on erroneous data supplied by the defense attorneys that is contrary to the testimony of the Defendants, and conducted no independent analysis, his opinions are unreliable, and he should be excluded from testifying at trial.

DATED:  October 2, 2015                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                           MICHAEL J. DOWD
                                           DEBRA J. WYMAN
                                           LAURIE L. LARGENT
                                           MAUREEN E. MUELLER

                                                    s/ Debra J. Wyman
                                              DEBRA J. WYMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

Lead Counsel for Plaintiffs

LANDSKRONER • GRIECO • MERRIMAN,
LLC
JACK LANDSKRONER (0059227)
1360 West 9th Street, Suite 200
Cleveland, OH  44113
Telephone:  216/522-9000
216/522-9007 (fax)

Liaison Counsel

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
4748 Wisconsin Avenue, N.W.
Washington, DC  20016
Telephone:  202/362-0041
202/362-2640 (fax)

Additional Counsel for Plaintiffs

- 26 -

CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 2, 2015.

s/ Debra J. Wyman
DEBRA J. WYMAN

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:debraw@rgrdlaw.com

# Mailing Information for a Case 3:05-cv-07393-JGC Plumbers & Pipefitters National Pension Fund, et al v. Burns, et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James E. Barz**
  jbarz@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph M. Callow , Jr**
  jcallow@kmklaw.com,ddaddesa@kmklaw.com

- **Michael J. Dowd**
  miked@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jack Landskroner**
  jack@lgmlegal.com,debra@lgmlegal.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Arthur S. Linker**
  arthur.linker@kattenlaw.com

- **Ann L. Lugbill**
  alugbill@murphypllc.com,lisajohnsoncincinnati@gmail.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Dean N. Razavi**
  dean.razavi@kattenlaw.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Keith W. Schneider**
  snichelson@ms-lawfirm.com

- **Scott D. Simpkins**
  sdsimp@climacolaw.com

- **Samantha A. Smith**
  e_file_sd@rgrdlaw.com

- **Joel W. Sternman**
  j.sternman@kattenlaw.com

- **Joseph P. Thacker**
  jthacker@tmlpa.com

- **Richard S. Walinski**
  walinski@tmlpa.com,dchiesa@tmlpa.com

- **Debra J. Wyman**
  debraw@rgrdlaw.com,hectorm@rgrdlaw.com,llargent@rgrdlaw.com,miked@rgrdlaw.com

- **David W. Zoll**
  david@toledolaw.com,angela@toledolaw.com,amy@toledolaw.com,emily@toledolaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Plumbers & Pipefitters National Pension Fund
Landskroner Grieco Madden, Ltd.
1360 West 9th Street, Ste. 200
Cleveland, OH 44113

SEIU Pension Plans Master Trust
Landskroner Grieco Madden Ltd
1360 West 9th Street, Ste. 200
Cleveland, OH 44077

Jovana               Vujovic
Katten Muchin Rosenman - New York
575 Madison Avenue
New York, NY 10022

West Virginia Laborers Pension Trust Fund
Landskroner Grieco Madden, Ltd.
1360 West 9th Street, Ste. 200
Cleveland, OH 44113
```